IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MANAGEDSTORAGE INTERNATIONAL, INC.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10368 (MFW)<br>(Jointly Administered) |

**RESPONSE OF VALENS OFFSHORE SPV II CORP. AND VALENS U.S. SPV I, LLC TO OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTION TO APPROVE INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POST- PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (II) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364, AND (IV) SCHEDULING THE FINAL HEARING PURSUANT TO <u>BANKRUPTCY RULE 4001</u>**

Valens Offshore SPV II Corp. and Valens U.S. SPV I, LLC (collectively, the "DIP Lender") hereby submit this response to the Objection (the "Objection") filed by the Official Committee of Unsecured Creditors (the "Committee") to Debtors' Motion (the "Motion") to Approve Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing pursuant to 11 U.S.C. § 364, (II) Authorizing the Debtors' Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (III) Granting Adequate Protection to Prepetition Lenders Pursuant to 11 U.S. C. §§ 361, 362, 363 and 364, and (IV) Scheduling the Final Hearing Pursuant to Bankruptcy Rule 4001, and respectfully represent:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, and their respective addresses, are: ManagedStorage International, Inc. (6252,) 12303 Airport Way, Suite 250, Broomfield, CO 80201; Incentra Solutions, Inc. (3960), 1140 Pearl Street, Boulder, CO 80302; Incentra Solutions of California, Inc. (3782), 4122 Sorrento Valley Blvd., Suite 102, San Diego, CA 92121; Network System Technologies, Inc. (8009), 2050-80 Finley Drive, Lombard, IL 60148; Incentra Solutions of the Northeast, Inc. (8372), 1140 Pearl Street, Boulder, CO 80302; Incentra Solutions of the Northwest, Inc. (8930), 9020 SW Washington Square Road, Suite 500, Portland, OR 97223; Sales Strategies, Inc. (0515), 6 Bridge Street, Unit 5, Metuchen, NJ 08840; and Incentra Solutions International, Inc. (1239), 15 Old Bailey, London EC4M 7EF, United Kingdom.

43520/0059-5392742v1

1. DIP Lender objects to the Committee's characterizations of the debtor-in possession financing and particularly the assertion that this case is being run solely for the benefit of DIP Lender, Arrow and Avnet. To the contrary, the DIP Facility insures that all budgeted administrative expenses are paid during the sale and marketing process and envisions the possibility that the Debtors' estates will benefit from the receipt of a higher or better offer than the stalking horse bid. Despite the "benefit" to DIP Lender, during the sale process, the Indebtedness owed to the Pre-Petition Lenders and the DIP Lender increases by nearly $7,000,000.00, and as the Committee observes in footnote 2 of its Objection, the "incremental financing" during the process is $6,000,000.00.

2. DIP Lender respectfully asserts that the financing is not overbearing and is much less onerous than many other DIP facilities approved in this District. The proposed Final DIP Order substantially complies with applicable local guidelines.

3. As set forth below, DIP Lender has agreed to certain concessions that are reflected in the proposed Final DIP Order. It is respectfully asserted that the proposed financing is fair, reasonable and beneficial to the estate. The DIP Lender has agreed to provide such financing only on the terms as set forth in the proposed Final Order.

4. The Preliminary Statement in the Objection consists largely of editorial comment which is not accurate. In paragraph 1, the characterization of DIP Lender as a "significant equity holder of the Debtors" is misleading. DIP Lender or its affiliates hold only 6.74% of the outstanding shares of common stock as a passive investor. Any warrants held by DIP Lender have language limiting its ability to convert such stock where the total ownership will exceed 9.9% of the Debtors' equity. DIP Lender has no control of the Debtors nor any board seat, and

never did. The DIP loan has been negotiated at arms-length without any self-dealing, undue influence or collusion of any nature.

5. In the Preliminary Statement and throughout the Objection, the Committee criticizes the length of the sale process. However, the sale and bid procedures have already been approved by the Court without objection from the Committee.

6. In paragraph 9, the Committee is incorrect that there is no set-aside for wind-down expenses. The DIP financing specifically provides for a $50,000.00 carve-out, in addition to any remaining portion of Professional Fees funded in the Approved Budget, to cover expenses after the occurrence of a Termination Date. (DIP Order, Paragraph 15).

7. The Committee objects to the maturity date of the DIP Financing although, as noted, the Court has already approved the bid and sale procedures which call for a sale hearing on March 31, 2009, which is three days before the April 3, 2009 maturity date referenced by the Committee. This objection therefore has no basis. Nevertheless, DIP Lender has agreed to extend the sale closing Termination Date from April 3, 2009 to April 10, 2009. This extension is consistent with the April 10, 2009 Termination Date defined in the APA between the Debtors and the stalking horse Purchaser.

8. In paragraph 24 of the Objection, and elsewhere, the Committee asserts that unreasonably high fees built into the DIP Loan are intended to chill bidding and insure that the DIP Lender is the successful Purchaser. To the contrary, the Pre-Petition Lenders and DIP Lender would be happy if the Debtors received an alternative cash offer and have no desire to chill bidding. Moreover, the stalking horse Purchaser has not requested an expense reimbursement nor break up fee in the event of an overbid. However, to allay the Committee's

3

concerns about the relatively modest $200,000.00 DIP Facility Payment, DIP Lender has agreed to waive such Payment (DIP Order Paragraph 5).

9. Paragraph 28 of the Objection asserts that the proposed Budget fails to address expenses which may arise after closing of any asset sale. If such closing occurs, there will either be sufficient proceeds from an overbid to fund such expenses or, in the case of a closing to the stalking horse credit bidder or a "short sale", there will be no assets in the estates left to administer other than Avoidance Actions. Nevertheless, to insure that sufficient funds are available to pay the minimal wind down expenses after a sale, the proposed final Order clarifies that $50,000.00 will be available for this purpose (DIP Order Par. 15(a)).

10. In paragraph 34 of the Objection, the Committee objects to the creeping "roll-up" feature of the DIP Facility. Such roll-ups are routinely permitted where there is a substantial amount of new credit extended by a DIP Lender as is the case here. DIP Lender respectfully asserts that the advantages of the DIP Financing justify the manner in which the proceeds are to be applied to the Pre-Petition and Post-Petition Indebtedness. The roll-up is consistent with the continuation of a pre-petition revolver facility where pre-petition and post-petition collateral will continue to be collected pursuant to the Debtors' existing cash management system, and identification and easy segregation of proceeds is not practical. For these and other reasons, this aspect of the DIP facility is appropriate under the circumstances of this case.

11. The Committee also objects to the DIP Lender being granted liens on Avoidance Actions and proceeds. As noted above, substantial new credit is being provided by the DIP Lender. In the event of an overbid, the Pre-Petition Lenders and DIP Lender would have no remaining claim and the Avoidance Actions will be available in full for the estate. In the event of a "short sale" the Lenders have agreed to waive any unsecured deficiency claim, and therefore

the same result would apply. Notwithstanding the foregoing, in the event that the Avoidance Actions and proceeds become relevant, DIP Lender has agreed to share such collateral on a 50/50 pari passu basis with the Debtors' estates.

12. In paragraphs 43-46 of the Objection, the Committee opposes waiver of the Debtors' right to surcharge collateral under Section 506(c) of the Bankruptcy Code. In light of the significant post-petition funding being provided by the DIP Lender, the Approved Budget designed to insure that all administrative expenses are paid while preserving the possibility of a cash overbid, the liberal carve-out for the estates' professionals, and other factors, DIP Lender respectfully submits that the customary 506(c) waiver is appropriate here.

13. The Committee also objects to the $30,000.00 carveout for its professionals. In addition to insuring that a $50,000.00 post-Termination Date carveout is available, DIP Lender has agreed to increase the amount for the Committee's professionals in the Approved Budget by $70,000.00.

14. In paragraphs 50-51, the Committee asserts that there is insufficient time to investigate the validity and enforceability of pre-petition liens. The Committee contends that 60 days from the date of its formation is insufficient time to conduct such investigation. However, such time frame is within the local guidelines in this District and the Committee provides no justification or reason as to why the guideline is insufficient. In the proposed Final DIP Order, DIP Lender has agreed to extend the challenge deadline in the Second Interim Order from April 20, 2009 to April 24, 2009, which is 70 days after the Committee's formation. It is submitted that this is more than sufficient time for the Committee to do its work.

15. In paragraph 52 of its Objection, the Committee asserts that it should be afforded standing to bring and prosecute the estates' causes of action. This was always the case and the

Committee's automatic standing is reflected in the initial and Second Interim DIP Orders. The proposed Final Order does not change the Committee's standing to bring such causes of action.

For the foregoing reasons, and those that will be demonstrated at the hearing to approve the DIP financing on a final basis, the DIP Lender requests that the Committee's Objection be overruled, the Final DIP Order be entered, and that Court afford such other relief as is just and proper.

Dated: March 4, 2009
       Wilmington, Delaware

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

_/s/ Stuart Komrower_
Stuart Komrower, Esq. (NJ No. 1642)
Patrick J. Reilley, Esq. (No. 4451)
1000 N. West Street
Wilmington, Delaware 19801
Telephone: (302)-652-3131
Facsimile: (302) 652-3117
skomrower@coleschotz.com
preilley@coleschotz.com

Counsel for DIP Lender