IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>MANAGEDSTORAGE INTERNATIONAL, INC.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10368 (MFW)<br>(Jointly Administered)<br><br>**Related Docket Nos. 14, 30 and 45** |

### FINAL ORDER (I) AUTHORIZING (A) SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 364(c) AND (d); (B) GRANTING SECURITY INTERESTS, SUPERPRIORITY CLAIMS AND ADEQUATE PROTECTION; AND (C) USE OF CASH COLLATERAL

Upon the motion (the "Motion") dated February 4, 2009 of the above captioned debtors and debtors-in-possession (the "Debtors"), (a) requesting entry of an order authorizing the Debtors pursuant to Sections 363(c), 364(c) and 364(d) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001(c) and (d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 4001-2, 4001-3, 9013-(G) and 9013-(H), inter alia, (i) to obtain post-petition financing (the "Post-Petition Financing") pursuant to the terms of the DIP Loan Documents (as defined below) from Valens Offshore SPV II Corp. and Valens U.S. SPV I, LLC (collectively, the "DIP Lender"), affiliates of the Debtors' pre-petition senior secured lenders, Laurus Master Fund Ltd.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, and their respective addresses, are: ManagedStorage International, Inc. (6252), 12303 Airport Way, Suite 250, Broomfield, CO 80201; Incentra Solutions, Inc. (3960), 1140 Pearl Street, Boulder, CO 80302; Incentra Solutions of California, Inc. (3782), 4122 Sorrento Valley Blvd., Suite 102, San Diego, CA 92121; Network System Technologies, Inc. (8009), 2050-80 Finley Drive, Lombard, IL 60148; Incentra Solutions of the Northeast, Inc. (8372), 1140 Pearl Street, Boulder, CO 80302; Incentra Solutions of the Northwest, Inc. (8930), 9020 SW Washington Square Road, Suite 500, Portland, OR 97223; Sales Strategies, Inc. (0515), 6 Bridge Street, Unit 5, Metuchen, NJ 08840; and Incentra Solutions International, Inc. (1239), 15 Old Bailey, London EC4M 7EF, United Kingdom.

(In Liquidation) ("Laurus") and Calliope Capital Corporation ("Calliope"), and all affiliates, successors, agents or assignees to whom Laurus and Calliope have assigned or may assign certain or all of their rights, including Valens U.S. SPV I, LLC, Valens Offshore SPV II, Corp., Valens Offshore SPV I, Ltd., PSource Structured Debt Limited and LV Administrative Services (all of the foregoing, hereinafter collectively referred to as the "Pre-Petition Lenders"), (ii) to grant DIP Lender, pursuant to Bankruptcy Code §§ 364(c) and 364(d), first priority and junior security interests in all of the Debtors' currently owned and after-acquired property to secure the Debtors' obligations under the Post-Petition Financing; and (iii) to grant DIP Lender priority in payment with respect to the obligations incurred in connection with the Post-Petition Financing over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than as described below; (b) seeking this Court's authorization to use the Pre-Petition Lenders' cash collateral within the meaning of Bankruptcy Code § 363(a) (the "Cash Collateral"), pursuant to Bankruptcy Code § 363(c) and to provide adequate protection, pursuant to Bankruptcy Code §§ 361, 363(e) and 364(d); (c) seeking a preliminary hearing (the "Preliminary Hearing") on the Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001 (the "Order") authorizing the Debtors to borrow under the Post-Petition Financing the amounts set forth in and limited by the Approved Budget (as defined below) upon the terms and conditions set forth in this Order pending the Final Hearing referred to below; and (d) requesting that a final hearing (the "Final Hearing") be scheduled by this Court to consider entry of a final order (the "Final Order") authorizing on a final basis, inter alia, the Post-Petition Financing and use of the Cash Collateral; and due and sufficient notice of the Motion under the circumstances having been given; and the Preliminary Hearing on the Motion having been held before this Court; and upon the Court's consideration of the matters presented to the Court at the

Preliminary Hearing including with respect to the Debtors' use of Cash Collateral in which

Arrow Electronics, Inc. ("Arrow") asserts an interest, and the extension of post-petition secured

trade terms by Arrow to the Debtors (the "Arrow DIP Facility"); and this Court having entered

its interim Order on the Motion on February 6, 2009; and a second preliminary hearing having

been held on February 10, 2009, to approve, among other things, an agreement with Arrow

concerning post-petition credit to be provided by Arrow as memorialized in a Stipulation (the

"Arrow Stipulation") attached as Exhibit B to the Second Interim Order (I) Authorizing

(A) Secured Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, and 364(c) and (d);

(B) Granting Security Interests, Superpriority Claims And Adequate Protection; and (C) Use Of

Cash Collateral and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(C) (the

"Second Interim Order") entered by the Court on February 10, 2009 (Docket No. 45) and the

Court having considered the matters presented at the Final Hearing held on March 5, 2009; and

upon the entire record made at the Final Hearing; and this Court having found good and

sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A.      Unless otherwise indicated herein, all capitalized terms used but not defined

herein shall have the meanings given in the Pre-Petition Loan Documents (as hereafter defined).

B.      On February 4, 2009 (the "Petition Date"), the Debtors filed petitions for relief

with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The

Debtors are continuing in possession of their property, and operating and managing their

business, as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  An

Official Committee of Unsecured Creditors consisting of five (5) members (the "Committee")

was formed and appointed by the Office of the Unites States Trustee on February 13, 2009.

C.      This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to

28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as

defined in 28 U.S.C. § 157(b)(2).

D.      The Pre-Petition Lenders assert that the Pre-Petition Lenders, the Debtors, and

certain affiliates of Debtors, are parties to, or have an interest in, one or more of the following

documents (collectively the "Pre-Petition Loan Documents"):  (1) Secured Revolving Note dated

February 6, 2006 (the "Revolving Note"); (2) Secured Term Note dated July 31, 2007 (the

"Term Note"); (3) Security Agreement dated February 6, 2006; (4) Stock Pledge Agreement

dated February 6, 2006; (5) Subsidiary Guaranty dated February 6, 2006; (6) Grant of Security

Interest in Patents and Trademarks dated February 6, 2006; (7) Omnibus Amendment to

Revolving Note dated June 18, 2007; (8) Master Security Agreement dated July 31, 2007; (9)

Grant of Security Interest in Patents and Trademarks dated July 31, 2007; (10) Stock Pledge

Agreement dated July 31, 2007; (11) Subsidiary Guaranty dated July 31, 2007; (12) Securities

Purchase Agreement dated July 31, 2007; (13) Amended and Restated Term Note dated

December 28, 2007; (14) Reaffirmation and Ratification Agreement dated December 28, 2007;

(15) Assignment and Amendment Agreement dated December 28, 2007; (16) Omnibus

Amendment to Revolving Note dated November 28, 2008; (17) Omnibus Amendment to Term

Note dated November 28, 2008; (18) Reaffirmation and Ratification Agreement dated December

19, 2008; and (19) Overadvance Side Letter dated December 19, 2008, and all related and

ancillary documents executed in connection with the foregoing.

E.      The Pre-Petition Lenders assert that pursuant to the Pre-Petition Loan Documents,

all obligations of the Debtors to Pre-Petition Lenders of any kind or nature under the Pre-Petition

Loan Documents are secured by a first priority blanket security interest (the "Pre-Petition

Liens") in substantially all of the Debtors' assets including, <u>without limitation</u>, equipment, inventory, goods, fixtures, general liabilities, accounts, accounts receivable, deposit accounts (including without limitation bank accounts and all funds on deposit therein), instruments, chattel paper, general intangibles, tax refunds, contracts, letter of credit rights, intellectual property, commercial tort claims, if any, stock, documents of title, tangible and intangible personal and investment property, money, cash and all cash equivalents, and all cash held as cash collateral, books and records, all supporting obligations, and the proceeds and products of all of the foregoing, all as more particularly described in the Pre-Petition Loan Documents (the "<u>Pre-Petition Collateral</u>").

       F.     Arrow and the Debtors, and certain affiliates of Debtors, are parties to, or have an interest in, one or more of the following documents (collectively the "<u>Arrow Documents</u>"): (1) Volume Rebate Agreement (Cumulative) entered into as of December 2, 2008; (2) Letter of Corporate Guarantee dated as of August 31, 2007; and (3), Security Agreements for each of the Debtors entered into as of one of the following dates (depending on the identity of the Debtor party) (i) February 20, 2007, April 16, 2007, August 14, 2007, or August 31, 2007, and all related and ancillary documents executed in connection with the foregoing.

       G.     Pursuant to the Arrow Documents, Arrow asserts that the obligations of the Debtors to Arrow are secured by security interests (the "<u>Arrow Pre-Petition Liens</u>") in certain of the Debtors' assets including, <u>without limitation</u>, inventory, documents, instruments, general intangibles, chattel paper, accounts and contract rights, and the proceeds thereof, all as more particularly described in the Arrow Documents (the "<u>Arrow Pre-Petition Collateral</u>"). As of the Petition Date, Arrow alleges it was owed the sum of $10,921,964 (the "<u>Arrow Pre-Petition Indebtedness</u>").

H.      Pursuant to certain Intercreditor Agreements and all other documents relating

thereto (collectively, the "Arrow Intercreditor Agreement") between one or more of the Pre-

Petition Lenders, on the one hand, and Arrow, on the other hand, Arrow agreed, among other

things, to subordinate its liens and claims against the Debtors to the liens and claims of Laurus

and Pre-Petition Lenders, and all of the Arrow Pre-Petition Indebtedness and Arrow's liens,

claims and interests in and to all assets of the Debtors is subordinated to the liens, claims and

interests of the Pre-Petition Lenders.  The Debtors, their estates, and any person or entity

claiming through them, possess no rights under the Arrow Intercreditor Agreement, which is

enforceable pursuant to section 510(a) of the Bankruptcy Code.

I.      Without prejudice to the rights of the Committee (but subject to the limitations

described in ordering paragraphs 23 and 25 below), the Debtors admit that the Debtors are truly

and justly indebted to the Pre-Petition Lenders under the Pre-Petition Loan Documents, without

defense, counterclaim or offset of any kind, and that as of January 29, 2009 such liability to Pre-

Petition Lenders was, including interest, fees and charges, in the aggregate amount of

approximately (but not less than) $35,756,407.30 with respect to the Revolving Note and the

Term Note (plus attorneys' fees, costs, expenses, and fees, including any default fees and

acceleration payment, unpaid thereon) (the "Pre-Petition Indebtedness").  As of the Petition

Date, the Debtors, in consideration of the Post-Petition Financing to be made available under the

terms of this Order and the Final Order, waive and release any and all causes of action and

claims against Pre-Petition Lenders and their respective affiliates agents, representatives, assigns

and successors.  The provisions of this paragraph H constitute a stipulation by the Debtors and

shall become a finding by the Court, subject to the provisions of ordering paragraphs 23 and 25

of this Order.

J.      Without prejudice to the rights of the Committee (but subject to the limitations described in ordering paragraphs 23 and 25 below), the Debtors further admit that by reason of the Pre-Petition Loan Documents, (i) the Pre-Petition Indebtedness is secured by valid, properly perfected, enforceable and non-avoidable liens and security interests granted by the Debtors to Pre-Petition Lenders upon and in all of the Pre-Petition Collateral, and (ii) the liens held by Pre-Petition Lenders securing the Pre-Petition Indebtedness are senior to all other security interests in the Pre-Petition Collateral subject only to any Permitted Liens (as defined in paragraph 7(b) below).  The provisions of this paragraph J constitute a stipulation by the Debtors and shall become a finding of the Court, subject to the provisions of ordering paragraphs 23 and 25 of this Order.

K.      Without prejudice to the rights of the Committee (but subject to the limitations described in ordering paragraphs 23 and 25 below), the Debtors admit that the Debtors are truly and justly indebted to Arrow under the Arrow Documents, without defense, counterclaim or offset of any kind, and that as of February 3, 2009 such liability to Arrow was, including interest, fees and charges, in the aggregate amount of $10,921,964.  As of the Petition Date, the Debtors, in consideration of the Arrow DIP Facility provided under the Arrow Stipulation, waive and release any and all causes of action and claims against Arrow and their assigns and successors with respect to the Arrow Pre-Petition Indebtedness.  The provisions of this paragraph K constitute a stipulation by the Debtors and shall become a finding by the Court, subject to the provisions of ordering paragraphs 23 and 25 of this Order.

L.      Without prejudice to the rights of the Committee (but subject to the limitations described in ordering paragraphs 23 and 25 below), the Debtors further admit that by reason of the Arrow Documents, (i) the Arrow Pre-Petition Indebtedness is secured by valid, properly

perfected, enforceable and non-avoidable liens and security interests granted by the Debtors to Arrow upon and in all of the Arrow Pre-Petition Collateral, and (ii) the liens held by Arrow securing the Arrow Pre-Petition Indebtedness are senior to all other security interests in the Arrow Pre-Petition Collateral subject only to the senior liens of the Pre-Petition Lenders and any Permitted Liens (as defined in paragraph 7(b) below). The provisions of this paragraph L constitute a stipulation by the Debtors and shall become a finding of the Court, subject to the provisions of ordering paragraphs 23 and 25 of this Order.

M.     Given the Debtors' current financial condition, the Debtors are unable to operate by using only Cash Collateral and are unable to provide Pre-Petition Lenders or Arrow with adequate protection for the use of Cash Collateral. Moreover, the Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense. Financing on a post-petition basis is not otherwise available without the Debtors granting, pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in §§ 503(b) and 507(b) of the Bankruptcy Code and securing such indebtedness and obligations with the security interests in and the liens upon the property described below pursuant to §§ 364(c) and 364(d) of the Bankruptcy Code. The Post-Petition Financing offered by DIP Lender, and the Arrow DIP Facility offered by Arrow, constitute the best financing available under the circumstances.

N.     Notice of the Final Hearing, the relief requested in the Motion, and the entry of the Arrow Stipulation has been given to (i) the Office of the United States Trustee, (ii) the creditors holding the 35 largest unsecured claims against the Debtors; (iii) known holders of pre-petition liens against the Debtors' property; and (iv) proposed counsel for the Committee.

O.      Based on the record presented to this Court by the Debtors, it appears that the

Post-Petition Financing and use of Cash Collateral have been negotiated in good faith and at

arm's-length among the Debtors and Pre-Petition Lenders and DIP Lender, and any credit

extended and loans made to the Debtors by DIP Lender pursuant to this Order shall be deemed to

have been extended, issued or made, as the case may be, in good faith as required by, and within

the meaning of, Section 364(e) of the Bankruptcy Code and DIP Lender shall have all of the

protections thereunder.

P.      Based on the record presented to this Court by the Debtors, it appears that the

Arrow DIP Facility and use of Cash Collateral have been negotiated in good faith and at arm's-

length among the Debtors and Arrow, and any credit extended and loans made to the Debtors by

Arrow pursuant to this Order and the Arrow Stipulation shall be deemed to have been extended,

issued or made, as the case may be, in good faith as required by, and within the meaning of,

Section 364(e) of the Bankruptcy Code and Arrow shall have all of the protections thereunder.

Q.      Based on the record before this Court, it appears that the terms of this Order,

including, without limitation, the terms of the Post-Petition Financing, the Arrow DIP Facility,

the Arrow Stipulation, and use of Cash Collateral, are fair and reasonable, reflect the Debtors'

exercise of prudent business judgment consistent with their fiduciary duties, and are supported

by reasonably equivalent value and fair consideration.

R.      The permission granted herein to use Cash Collateral and obtain the Post-Petition

Financing and the Arrow DIP Facility on a final basis is necessary to avoid immediate and

irreparable harm to the Debtors.  This Court concludes that entry of this Order is in the best

interests of the Debtors' estates and creditors as their implementation will, among other things,

allow for the flow of supplies and services to the Debtors necessary to sustain the Debtors'

business operations and enhance the Debtors' prospects for a successful completion of the

Chapter 11 Cases.

Based upon the foregoing findings and conclusions, and upon the record made before this

Court at the Final Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED DETERMINED AND DECREED** that:

1.    Motion Granted. The Motion is granted on a final basis, on the terms and

conditions set forth in this Order, and all objections to the Motion are overruled. Entry of this

Order also constitutes the Court's making the findings set forth with respect to, and approval on

a final basis of, the Arrow DIP Facility. The Arrow Stipulation previously approved by the

Court is incorporated herein in full by reference (except that (a) all references therein to the

"Second Interim Order" shall be read to refer to this Final Order and (b) any provision therein

regarding a lien on or security interest in Avoidance Actions (as defined below) or proceeds

thereof shall be deemed deleted and of no effect), including the liens, claims and other lender

protections set forth this Order and the Arrow Stipulation.

2.    Authorization. The Debtors are expressly authorized and empowered to (i) obtain

the Post-Petition Financing, use Cash Collateral, and perform their obligations strictly pursuant

to the provisions of this Order; (ii) perform their obligations under the Pre-Petition Loan

Documents as such documents are, or may be, amended and modified pursuant to the terms of

this Order; and (iii) enter into such other agreements, instruments and documents as may be

necessary or required to evidence the obligations to DIP Lender and Pre-Petition Lenders, to

consummate the terms and provisions of the Motion and this Order and to evidence perfection of

the liens and security interests to be given to DIP Lender and Pre-Petition Lenders (the Pre-

Petition Loan Documents as modified by this Order shall hereinafter be referred to as the "DIP

Loan Documents"). DIP Lender's advances of the Post-Petition Financing shall be pursuant to

the same terms as the Pre-Petition Loan Documents, as modified by this Order, without the need

for further execution or documentation, and all advances and borrowings by DIP Lender shall be

under the Revolving Note. The borrowing(s) made under the credit facility maintained under the

DIP Loan Documents (the "DIP Facility") and all other indebtedness and obligations incurred on

or after the Petition Date with respect to loans, advances and any other indebtedness or

obligations, contingent or absolute, pursuant to this Order and the DIP Loan Documents which

may now or from time to time hereafter be owing by the Debtors, and each of them, to DIP

Lender (including principal, accrued and unpaid interest, and fees costs and expenses, including

without limitation attorneys' fees and expenses) are referred to herein as the "DIP Indebtedness,"

and, together with the Pre-Petition Indebtedness, as the "Indebtedness." The Debtors and DIP

Lender may enter into nonmaterial amendments of or modifications to the DIP Loan Documents

without the need of further notice and hearing or order of this Court. Authorization for the

Debtors to obtain the Arrow DIP Facility is hereby granted as set forth in the Arrow Stipulation

on the terms set forth therein.

      3.    <u>Borrowing; Use Cash Collateral and Continuation of Debtors' Accounts</u>. Subject

to the Approved Budgets (as defined in paragraph 17 below) and solely in compliance therewith

and subject further to the terms and conditions of this Order and the DIP Loan Documents,

(a) Pre-Petition Lenders hereby consent to, and the Court approves, the Debtors' limited use of

Cash Collateral to be applied on account of the Pre-Petition Indebtedness, and (b) DIP Lender

will provide the DIP Facility, on a revolving basis in accordance with the terms of the DIP Loan

Documents, the Approved Budgets and this Order. The Debtors shall continue to use their pre-

Petition Date bank accounts and cash management system, and DIP Lender shall be a party to the pre-petition lock box arrangements between Debtors and the Pre-Petition Lenders.

    4.    <u>Application of Proceeds</u>.

    (a)    Proceeds or payments received by Pre-Petition Lenders and/or DIP Lender with respect to the Pre-Petition Collateral and DIP Facility Collateral shall be applied as follows: (x) first, to the Pre-Petition Indebtedness consisting of accrued and accruing interest, fees, costs and expenses; (y) next, to the Pre-Petition Indebtedness consisting of principal; and (z) next, to the outstanding balance of the DIP Facility, the first of which to all accrued and accruing interest, fees, costs and expenses, and then to principal.  If the source of any such proceeds or payments is not clearly identifiable as attributable to the Pre-Petition Collateral or the DIP Facility Collateral, such proceeds or payments shall be deemed to be proceeds from the Pre-Petition Collateral.

    (b)    The automatic stay under Section 362(a) of the Bankruptcy Code shall be, and it hereby is, modified to the extent necessary to permit Pre-Petition Lenders to retrieve, collect and apply payments and proceeds in respect of the Pre-Petition Collateral and the DIP Facility Collateral (defined in paragraph 7 below) in accordance with the terms and provisions of this Order and the DIP Loan Documents.

    5.    <u>Interest, Fees, Costs and Expenses</u>.  The Pre-Petition Indebtedness shall bear interest at the applicable rates set forth in the Pre-Petition Loan Documents.  The DIP Indebtedness shall bear interest at the rate of 15%.  DIP Lender and Pre-Petition Lenders shall be entitled to recover all of their reasonable attorneys' fees and other professional fees as well as all costs and expenses incurred in connection with the Indebtedness and these Chapter 11 Cases.  In consideration for providing the DIP Facility, DIP Lender shall be paid all fees specified in the DIP Loan Documents in accordance with the terms therein for such payment and in the Second

Interim Order.  Notwithstanding the foregoing, DIP Lender waives the $200,000 Facility

Payment referenced in paragraph 5 of the Second Interim Order.

      6.     <u>Termination of the DIP Facility and Use of Cash Collateral</u>.  DIP Lender's

agreement to provide the DIP Facility in accordance with the DIP Loan Documents and Pre-

Petition Lenders' consent to the use of the Cash Collateral shall immediately and automatically

terminate (except as DIP Lender and/or Pre-Petition Lenders may otherwise agree in writing in

their sole discretion), and all Indebtedness shall be immediately due and payable in cash upon the

earliest to occur of any of the following upon DIP Lender providing written notice to Debtors by

email addressed to MRichman@Incentra.com, and email addressed to Debtors' counsel,

jpomerantz@pszjlaw.com, (each, a "<u>Termination Date</u>"):

      (i)     the date of final indefeasible payment and satisfaction in full in cash of the Indebtedness;

      (ii)     the effective date of any confirmed plan of reorganization in the Chapter 11 Cases;

      (iii)     the consummation of the sale or other disposition of all or substantially all of the assets of the Debtors;

      (iv)     the occurrence of any breach by the Debtors of this Order (including, but not limited to, the Debtors' failure to adhere to the Approved Budgets as set forth in ordering paragraph 17 of this Order or violation of any of the covenants provided for in ordering paragraph 19 of this Order) or the Final Order, or under any of the DIP Loan Documents;

      (v)     the dismissal of one or more of the Chapter 11 Cases or the conversion of one or more of the Chapter 11 Cases into case(s) under Chapter 7 of the Bankruptcy Code;

      (vi)     upon and following the entry of an order authorizing the appointment in the Debtors' Chapter 11 Cases of a trustee or an examiner with enlarged powers (beyond those set forth in § 1106(a)(3) and (4) of the Bankruptcy Code), relating to the operation of the business of the Debtors without the prior written consent of DIP Lender (which consent may be withheld, or, if given revoked, by DIP Lender in its sole discretion), or if any

Debtors apply for, consent to, or acquiesce in, any such appointment without the prior written consent of DIP Lender (which consent may be withheld in its sole discretion);

(vii)    this Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of DIP Lender (which consent may be withheld in its sole discretion);

(viii)    the Court enters an order granting a party relief from the automatic stay with respect to any portion of the Pre-Petition Collateral or the DIP Facility Collateral provided that the value of the relevant collateral is more than $50,000.

(ix)    this or any other Court enters an order or judgment in the Chapter 11 Cases modifying, limiting, subordinating or avoiding the priority of the Indebtedness, or the perfection, priority or validity of Pre-Petition Lenders' or DIP Lender's Pre-Petition or DIP Facility Liens or imposing, surcharging or assessing against Pre-Petition Lenders, DIP Lender or their claims or any Pre-Petition Collateral or DIP Facility Collateral, any fees, costs or expenses, whether pursuant to § 506(c) of the Bankruptcy Code or otherwise; or

(x)    if the Court has not entered an order approving the Asset Sale in a form acceptable to Pre-Petition Lenders and DIP Lender (the "Sale Order") by March 31, 2009;

(xi)    if the Asset Sale acceptable to Pre-Petition Lenders and DIP Lender has not closed by April 10, 2009 unless extended by DIP Lender;

(xii)    if the Debtors do not reasonably cooperate in the disclosure of information reasonably requested by the Pre-Petition Lenders, DIP Lender or any consultant retained by either of them;

(xiii)    the Debtors' failure to comply with their reporting obligations under paragraph 18 of this Order;

(xiv)    the resignation or termination of any of Debtors' executive officers without DIP Lender's written consent and retention of a replacement acceptable to DIP Lender, which consent shall not be unreasonably withheld; and

(xv)    the occurrence of a Termination Date under the Arrow Stipulation.

7.    <u>Liens to Secure the DIP Indebtedness</u>.  Except for causes of action to avoid and recover preferences, fraudulent conveyances, and other avoidance power claims and recoveries

under Section 542, 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and the proceeds

thereof (collectively, the "Avoidance Actions") as security for the DIP Indebtedness, DIP Lender

is hereby granted the following liens (the "DIP Facility Liens") in all currently owned or

hereafter acquired property and assets of the Debtors of any kind or nature, whether real or

personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising

and all proceeds, products, rents and profits thereof, including, without limitation, all cash,

goods, accounts receivable, inventory, cash in advance deposits, general intangibles, goodwill,

investment property (including, without limitation, ownership interests in corporations,

partnerships, and limited liability companies), deposit accounts, real estate, intellectual property,

machinery, leasehold interests, equipment, vehicles, trademarks, trade names, licenses, the Pre-

Petition Collateral, actions and recoveries thereon against third parties, tax refund claims,

commercial tort claims and insurance proceeds, and the proceeds, products, rents and profits of

all of the foregoing (all of the foregoing, the "DIP Facility Collateral"), subject only to, in the

event of the termination of the DIP Facility and the payment of the Carve-Out (as defined in

paragraph 15):

   (a) Pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first

priority senior security interest in and lien upon all property of the Debtors, whether existing on

the Petition Date or thereafter acquired, that, as of the Petition Date, is not subject to valid,

perfected and non-avoidable liens;

   (b) Pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected security

interest in and lien upon all property of the Debtors, including the DIP Facility Collateral,

whether existing on the Petition Date or thereafter acquired, that is subject to valid, perfected and

unavoidable liens in existence as of the Petition Date, which liens are senior to those of Pre-Petition Lenders under applicable non-bankruptcy law (the "Permitted Liens");

(c)    Pursuant to Section 364(d)(1) of the Bankruptcy Code, perfected first priority senior priming liens (the "Priming Liens") as to the Pre-Petition Lenders and Arrow on all of the DIP Facility Collateral, and the Pre-Petition Collateral, which shall be senior to all other security interests and liens in property of the Debtors' estates except only Permitted Liens; and

(d)    In addition, except to the extent otherwise expressly set forth in this Order, or in a written instrument, agreement or other document executed by DIP Lender, neither the Pre-Petition Liens (subject to paragraphs 23 and 25 of this Order) nor the DIP Facility Liens shall be subject to subordination to any other liens, security interests or claims under Section 510 of the Bankruptcy Code, or otherwise. Any security interest or lien upon the Pre-Petition Collateral or the DIP Facility Collateral which is avoided or otherwise preserved for the benefit of the Debtors' estates under Section 551 or any other provision of the Bankruptcy Code shall be subordinate to the Pre-Petition Liens, the DIP Facility Liens and the Adequate Protection Liens (defined in paragraph 8 below).

8.    Adequate Protection Liens. Except with respect to Avoidance Actions and the proceeds thereof, as adequate protection of Pre-Petition Lenders' interests in the Pre-Petition Collateral, including use of the Cash Collateral, pursuant to §§ 361, 363 and 552(b) of the Bankruptcy Code, Pre-Petition Lenders are hereby granted valid, binding, enforceable and perfected additional and replacement liens (the "Adequate Protection Liens") in all property of the Debtors' estates, including the DIP Facility Collateral to the extent of any decrease in the value of Pre-Petition Lenders' interests in the Pre-Petition Collateral occurring subsequent to the

Petition Date, with such decrease in value to include decreases resulting from the Debtors' use (if any) of Cash Collateral, the depreciation, use, sale, loss, decline in value or market price of the Pre-Petition Collateral, or otherwise. The Adequate Protection Liens shall enjoy the same validity and extent as the liens Pre-Petition Lenders held on the Petition Date. The Adequate Protection Liens are (a) subject only to (i) the Permitted Liens; (ii) the Carve-Out (as defined in paragraph 15); and (iii) the DIP Facility Liens.

9.    Section 507(b) Priority Administrative Claims.  If, notwithstanding the provision of the Adequate Protection Liens, such Adequate Protection Liens do not provide adequate protection of Pre-Petition Lenders' interests in the Pre-Petition Collateral, Pre-Petition Lenders shall (i) have a claim allowed under §§ 507(a)(2) and 507(b) of the Bankruptcy Code (the "507(b) Claim"), and, except with respect to being subordinated to the Carve-Out, such 507(b) Claim shall be entitled to priority over every other claim allowable under such § 507(a)(2); and (ii) notwithstanding anything herein to the contrary, be entitled to seek further adequate protection of their interests and such further relief as is consistent therewith. Notwithstanding the foregoing, the 507(b) Claim pursuant to this paragraph shall not attach to the Avoidance Actions or the proceeds thereof.

10.    Superpriority Claims.  Subject to the Carve-Out described in ordering paragraph 15 below, all of the DIP Indebtedness shall have the highest administrative priority under § 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Chapter 11 Cases or any successor cases, including a Chapter 7 case), and shall at all times, except to the extent of the Carve Out, be senior to the

rights of the Debtors, any successor trustee or estate representative in the Chapter 11 Cases or any successor case (the "Superpriority Claims").  Notwithstanding the foregoing, the DIP Lender's Superpriority Claims pursuant to this paragraph shall not attach to the Avoidance Actions or the proceeds thereof.  Nothing in this Order or the Approved Budgets (as defined in paragraph 17 below) shall constitute the consent by DIP Lender or Pre-Petition Lenders to the imposition of any costs or expense of administration or other charge, fees, liens, assessment or claim (including, without limitation, any amounts set forth in the Approved Budgets) against DIP Lender or Pre-Petition Lenders, their claims or collateral (including the Pre-Petition Collateral and the DIP Facility Collateral) under § 506(c) of the Bankruptcy Code or otherwise, all of which rights have been waived pursuant to the terms of this Order.

      11.    <u>Perfection of DIP Facility Liens and Adequate Protection Liens</u>.  The DIP Facility Liens and the Adequate Protection Liens shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; <u>provided</u>, <u>however</u>, that notwithstanding the provisions of § 362 of the Bankruptcy Code, (i) DIP Lender may, at its sole option, file or record or cause the Debtors to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtors' expense, any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as DIP Lender may require, and (ii) DIP Lender may require the Debtors to deliver to DIP Lender any chattel paper, instruments or securities evidencing or constituting any DIP Facility Collateral, and the Debtors are directed to cooperate and comply therewith.  If DIP Lender, in their sole discretion, shall elect for any reason to cause

to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such security interests and liens, or if DIP Lender, in accordance with the DIP Loan Documents or this Order, elects to take possession of any DIP Facility Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in this Chapter 11 Cases as of the commencement of this Chapter 11 Cases but with the priorities as set forth herein. DIP Lender and Pre-Petition Lenders may (in their sole discretion), but shall not be required to, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which the Debtors have real or personal property and such filing or recording shall be accepted and shall constitute further evidence of (a) DIP Lender's interest in the DIP Facility Collateral and (b) Pre-Petition Lenders' interest in the Pre-Petition Collateral.

12.    <u>Waiver by Debtors of Liens and Other Matters</u>. The Debtors and their estates (and any party in interest acting on behalf of the Debtors or their estates) hereby irrevocably waive, and are barred from asserting or exercising any right (a) without Pre-Petition Lenders' or DIP Lender's prior written consent (which may be withheld in their sole discretion) or (b) without prior indefeasible payment and satisfaction in full of all of the Indebtedness: (i) to grant or impose, or request that the Court grant or impose, under § 364 of the Bankruptcy Code, or otherwise, liens on or security interests in any DIP Facility Collateral, which are <u>pari passu</u> with or senior to the DIP Facility Liens or the Adequate Protection Liens; (ii) to return goods pursuant to § 546(h) of the Bankruptcy Code to any creditor of the Debtors or to consent to any creditor taking any setoff against any of such creditor's pre-petition indebtedness based upon any such return pursuant to § 553(b)(1) of the Bankruptcy Code or otherwise; (iii)  to seek a surcharge of

the DIP Facility Collateral or the Pre-Petition Collateral under § 506(c) of the Bankruptcy Code; (iv) to seek non-consensual use of Cash Collateral under § 363 of the Bankruptcy Code; (v) to modify or affect any of the rights of Pre-Petition Lenders or the DIP Lender under this Order or any DIP Loan Documents by any order entered in the Chapter 11 Cases or any successor cases; or (vi) propose a plan of reorganization or liquidation, or seek an extension of the exclusive right to file a plan or solicit acceptances with respect to any plan of reorganization or liquidation without the written consent of the DIP Lender and Pre-Petition Lenders.

13.    <u>Sale Out of the Ordinary Course of Business</u>.  The Debtors may not propose a sale of any of their assets outside the ordinary course of business without DIP Lender's written consent.  All proceeds realized from any Court-approved sale shall be transferred to DIP Lender and/or Pre-Petition Lenders as their respective interests appear, for immediate application in reduction of the Indebtedness (unless otherwise agreed to in writing by Pre-Petition Lenders and DIP Lender), in the manner set forth in this Order and until such time as the Indebtedness shall have been satisfied in full.  Such sale proceeds shall not be permitted to be used by the Debtors under any circumstances except as otherwise provided by this Order, and any sale application or procedure involving all or any portion of the Debtors' assets that are subject to the Pre-Petition Liens of Pre-Petition Lenders or the DIP Facility Liens shall expressly provide that the Pre-Petition Lenders and DIP Lender may exercise their rights to credit bid their indebtedness under § 363(k) of the Bankruptcy Code.

14.    <u>Modification of Automatic Stay; Other Remedies</u>.

(a)    Except as set forth in subparagraph (b) of this paragraph which deals with the occurrence of a Termination Date, the automatic stay pursuant to § 362 of the Bankruptcy Code is hereby vacated as to Pre-Petition Lenders and DIP Lender to permit each of them to

perform in accordance with, and exercise, enjoy and enforce their respective rights, benefits

privileges and remedies pursuant to this Order and the DIP Loan Documents without further

application or motion to, or order from, the Court, and regardless of any change in circumstances

(whether or not foreseeable), and neither Section 105 of the Bankruptcy Code nor any other

provision of the Bankruptcy Code, or any other law, shall be utilized to prohibit Pre-Petition

Lenders or DIP Lender from the exercise, enjoyment and enforcement of any of such rights,

benefits, privileges and remedies.  Pre-Petition Lenders and DIP Lender are hereby granted leave

to receive and apply payments to the Indebtedness from collections on and proceeds of the Pre-

Petition Collateral and the DIP Facility Collateral in the manner specified in this Order and the

DIP Loan Documents.  In addition, Pre-Petition Lenders and DIP Lender are, as their interests

may appear, hereby granted leave to, among other things, to (a) file or record any financing

statements, mortgages or other instruments or other documents to evidence the Adequate

Protection Liens or the DIP Facility Liens, (b) to charge and collect any interest, fees, costs, and

expenses and other amounts accruing at any time under the DIP Loan Documents or this Order

as provided therein, (c) to give the Debtors any notice provided for in any of the DIP Loan

Documents or this Order, and (d) upon the occurrence of a Termination Date, and without

application or motion to, or order from the Court or any other court, (i) terminate the DIP

Facility and the DIP Loan Documents, (ii) declare all Indebtedness immediately due and

payable, and (iii) revoke the Debtors' rights, if any, under this Order and/or the other DIP Loan

Documents to use Cash Collateral.

        (b)     Upon the occurrence of a Termination Date, the Pre-Petition Lenders or

DIP Lender may, after five (5) business days' written notice to the Debtors and the Committee,

exercise all of their rights and remedies under the Pre-Petition Loan Documents, the DIP Loan

Documents, this Order and applicable law, including foreclosing or otherwise enforcing their liens on any or all of the Pre-Petition Collateral, and the DIP Facility Collateral, and the Debtors shall cooperate with the Pre-Petition Lenders and DIP Lender in connection with any enforcement action by such parties by, among other things, (i) providing access to their premises to representatives of the Pre-Petition Lenders and DIP Lender, (ii) providing the Pre-Petition Lenders and DIP Lender or their designees access to the Debtors' books and records, (iii) performing all other obligations set forth in the Pre-Petition Loan Documents, this Order and/or the other DIP Loan Documents, and (iv) taking reasonable steps to safeguard and protect the Pre-Petition Collateral and the DIP Facility Collateral until the Pre-Petition Lenders and DIP Lender can make adequate provision to protect and safeguard the Pre-Petition Collateral and the DIP Facility Collateral, and the Debtors shall not otherwise interfere or encourage others to interfere with enforcement of the rights of the Pre-Petition Lenders or DIP Lender.  If the Debtors dispute that a Termination Date has occurred, then the Debtors may file a motion with the Court, within the notice period set forth above, contesting the occurrence of a Termination Date and provided such motion was timely filed, the Court shall conduct a hearing on an expedited or emergency basis.  The only issue that may be raised by such motion, addressed at such hearing, or asserted in opposition to granting stay relief is whether the Termination Event has occurred.

      15.   <u>Carve-Out</u>.

      (a)    Subject to the remaining provisions of this paragraph, all liens and claims of the Pre-Petition Lenders or DIP Lender and/or Arrow, including, but not limited to the Adequate Protection Liens, the DIP Facility Liens, the Superpriority Claims, the 507(b) Claim, the Pre-Petition Liens, the Arrow Replacement Liens and the Arrow Pre-Petition Liens shall be subject to (a) the payment of any unpaid fees payable pursuant to 28 U.S.C. § 1930 (including,

without limitation, fees under 28 U.S.C. § 1930(a)(6)), (b) the fees due to the Clerk of the Court

(c) the actual fees and expenses incurred by professionals (including the claims agent), for the

period prior to the occurrence of a Termination Date (for which written email notice has been

provided to the Debtors and Debtors' counsel), provided such professionals were retained by an

order of the Court entered pursuant to Sections 327 or 1103(b) of the Bankruptcy Code, and

provided such fees and expenses are within the amounts set forth in the Approved Budgets and

are subsequently allowed by the Bankruptcy Court under Sections 330 and 331 of the

Bankruptcy Code, and (d) the payment, following the occurrence of any Termination Date which

is not waived by DIP Lender, and for which DIP Lender has provided written notice, of allowed

professional fees and disbursements incurred after notice of such Termination Date by all

Professionals retained in this proceeding, pursuant to Sections 327, 328 or 1103(a) of the

Bankruptcy Code, in an aggregate amount not to exceed $50,000, provided that such amounts are

(i) allowed by the Court; (ii) not otherwise payable from any unused portion of any retainers or

unused amounts for payments to Professionals set forth in the Approved Budgets and (iii) not

otherwise payable from available cash assets of the estates or the proceeds to be realized from

the reasonably prompt liquidation thereof (the "Carve-Out").  Prior to receiving written notice of

a Termination Date, the Debtors shall be authorized to pay the estates' professionals their

incurred fees and expenses (subject to the Approved Budgets and allowance, but whenever

allowed) from cash collateral and the Post-Petition Financing.  On a weekly basis, from the

Petition Date until the Termination Date, the Debtors shall:  (i) to the extent the Debtors do not

have sufficient cash on hand to pay the Professional Expenses set forth for such week in the

Approved Budget (the "Weekly Professional Expenses Amount"), include as part of their request

for funding under the terms of this Order, a request for borrowing in the amount of the Weekly

Professional Expenses Amount and (ii) transfer sufficient cash (which may either be cash on hand or financing received pursuant to this Order) to satisfy the Weekly Professional Expenses Amount to the Pachulski Stang Ziehl & Jones LLP Client Trust Account (the "Professional Expenses Reserve") to be applied to Professional Expenses pursuant to one or more orders of the Bankruptcy Court. Pachulski Stang Ziehl & Jones LLP shall treat the funds in the Professional Expenses Reserve with the same degree of care as it treats its own property.

   (b) Notwithstanding anything to the contrary in this Order or the DIP Loan Documents, no proceeds of any Pre-Petition Collateral or Post-Petition Collateral of the Pre-Petition Lenders or Arrow (including any pre-petition retainer funded by the Pre-Petition Lenders, or proceeds thereof), nor any Pre-Petition Collateral of the Pre-Petition Lenders or Arrow or DIP Facility Collateral (or proceeds thereof) or Arrow DIP Facility Collateral nor any portion of the Carve-Out may be used to pay any claims for services rendered by any of the Debtors' professionals, any other entity, or the Committee's professionals in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief (x) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Indebtedness or the liens and security interests of the Pre-Petition Lenders or DIP Lender in the Pre-Petition Collateral or in the DIP Facility Collateral; or (y) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the Pre-Petition Lenders or DIP Lender of any of their rights and remedies under the Pre-Petition Loan Documents, this Order and/or the DIP Loan Documents or Pre-Petition Lenders' or DIP Lender's enforcement or realization upon any of the liens on or security interests in any Pre-Petition Collateral or DIP Facility Collateral;

provided, however, that the foregoing limitations shall not apply to claims (i) to contest whether a Termination Date has occurred and (ii) for services rendered by the professionals retained by the Committee within the time provided in paragraph 25 of this Order in connection with the investigation of the validity, extent, priority, avoidability or enforceability of the Pre-Petition Indebtedness or the Pre-Petition Liens of the Pre-Petition Lenders.  The Pre-Petition Lenders and DIP Lender shall retain their rights as parties in interest to object to any fee applications or other claims of any entity, including but not limited to the professionals for the Debtors and the Committee.

(c)    So long as no Termination Date has occurred as to which notice of same has been provided to the Debtors, the Debtors are authorized to use the proceeds of the  DIP Facility and the Cash Collateral in accordance with and limited to the amounts in the Approved Budget to pay such compensation and expense reimbursements of professional persons retained by the Debtors (the "Debtors' Professionals") and the Committee (the "Committee Professionals") as may be awarded by the Court pursuant to Section 328, 330 or 331 of the Bankruptcy Code (the "Professional Expenses").  The Debtors' Professionals and the Committee Professionals shall be permitted to submit to the Debtors, with copies to counsel for the DIP Lender, periodic statements (but no more frequently than on a monthly basis) for services rendered and reimbursable expenses incurred by them (the "Conditional Professional Expenses").  Nothing in this subparagraph shall prejudice or impair the rights of either the Debtors' Professionals or the Committee Professionals to request an award of compensation in excess of the amounts set forth in the Approved Budget (the "Unbudgeted Professional Expenses") or the rights of the DIP Lender, Pre-Petition Lenders or Arrow to object to the amount or reasonableness of the Conditional Professional Expenses, the Professional Expenses

or the Unbudgeted Professional Expenses. In no event, however, shall the Pre-Petition Lenders or DIP Lender be responsible for the payment of Unbudgeted Professional Expenses or any amounts in excess of the amounts in the Approved Budgets and Carve-Out.

16. <u>Cash Collection Procedures</u>. From and after the date of the entry of this Order all collections and proceeds of any DIP Facility Collateral or services provided by the Debtors and all other cash or cash equivalents which shall at any time come into the possession or control of the Debtors, or to which the Debtors shall become entitled at any time, shall be deposited in the same bank accounts into which the collections and proceeds of the Pre-Petition Collateral were deposited under the Pre-Petition Loan Documents (or in such other accounts as agreed to by the Debtors, the Pre-Petition Lenders and DIP Lender from time to time), and shall be applied against the Indebtedness as provided in this Order and the DIP Loan Documents. In the event the Debtors intend to open any new bank accounts that would affect the right and ability of Pre-Petition Lenders and DIP Lender to receive any proceeds as contemplated by this Order, the Debtors shall first obtain a "lock box agreement" or other written confirmation to the satisfaction of the Pre-Petition Lenders and the DIP Lender from the relevant banking institution recognizing the rights of the Pre-Petition Lenders and the DIP Lender as provided for in this Order. All cash and cash equivalents of the Debtors currently in any account of the Debtors or otherwise in the possession or control of the Debtors constitute proceeds of the Pre-Petition Collateral and shall be applied to the Indebtedness as provided for in this Order. All financial institutions in which any lockboxes, blocked accounts or other accounts of the Debtors are located are hereby authorized and directed to comply with any request of the Pre-Petition Lenders and DIP Lender to turnover to the Pre-Petition Lenders and DIP Lender all funds therein without offset or deduction of any kind.

17.    Budget; Use of Cash Collateral and DIP Facility Proceeds.

(a)    Attached as Exhibit A hereto and incorporated herein by reference is a budget (which has been approved by DIP Lender) setting forth by line item all projected cash receipts, sales and cash disbursements for the time period from January 30, 2009 through April 3, 2009 (the "Initial Approved Budget"). The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which the Pre-Petition Lenders and DIP Lender agree in their sole discretion (each such additional budget, a "Supplemental Approved Budget"), so long as such modification or supplement does not alter the amount of the Professional Fee Expenses set forth on any Approved Budget without the consent of the Debtors' Professionals and Committee Professionals. The aggregate of all items approved by DIP Lender and the Pre-Petition Lenders in the Initial Approved Budget and any and all Supplemental Approved Budgets (acceptable to the Pre-Petition Lenders and DIP Lender in their sole discretion) shall constitute an "Approved Budget."

(b)    Debtors may use Cash Collateral and the proceeds of the DIP Facility exclusively to pay for the expenses incurred by the Debtors as provided for in the Approved Budget. Debtors represent and warrant that (a) the expenditures set forth in the Approved Budget constitute all of Debtors' projected expenses during the period of the Approved Budget, and (b) the Cash Collateral and the sums to be advanced by DIP Lender pursuant to the DIP Facility are sufficient to pay all of the expenses set forth in the Approved Budget. Debtors' sales and cash receipts shall not be less than as set forth in the Approved Budget and Debtors' disbursements shall not exceed those set forth in the Approved Budget, in all cases subject to the Approved Billing Variance, the Approved Cash Receipts Variance, and the Approved

Disbursements Variance (all as defined below, collectively referred to as the "Approved

Variances"). Notwithstanding the foregoing, DIP Lender shall have no obligation to provide the

DIP Facility if the Debtors exceed the disbursement amounts provided in the Approved Budgets.

As used herein, the Approved Variances include, and are defined and calculated as follows:

      (i)    "Approved Billing Variance" means a negative variance of less than 10%, between Debtors' actual billings and Debtors' projected billings measured (a) on a bi-weekly basis commencing at the end of the second week covered by the Approved Budget on a bi-weekly basis, and (b) cumulatively from the commencement of the Chapter 11 Cases concluding with the week during which the variance is being calculated;

      (ii)    "Approved Cash Receipts Variance" means a negative variance of less than 8%, between Debtors' actual cash receipts and Debtors' projected cash receipts measured (a) on a bi-weekly basis commencing with the end of the second week covered by the Approved Budget, and (b) cumulatively from the commencement of the Chapter 11 Cases concluding with the week during which the variance is being calculated;

      (iii)    "Approved Disbursements Variance" means a positive variance of less than 7% of the Debtors' actual disbursements and Debtors' projected disbursements, on a cumulative basis, each measured (a) on a weekly basis commencing with the end of the first week covered by the Approved Budget and each week thereafter, and (b) cumulatively from the commencement of the Chapter 11 Cases concluding with the week during which the variance is being calculated

    18.    Financial Reporting. In addition to all of the financial reports the Debtors are

required to provide to the Pre-Petition Lenders, pursuant to the Pre-Petition Loan Documents,

which financial reports the Debtors shall continue to provide timely in accordance therewith, the

Debtors shall also provide the following reports to DIP Lender: (i) no later than 5:00 p.m.

(Eastern Time) each business day, a written report setting forth the previous day's disbursements

and collections; (ii) no later than 5:00 p.m. (Eastern time) each Wednesday, a comparison of the

items in the Budget for the preceding week to the Debtors' actual performance that includes a

narrative summary of any material variances from the Budget for the preceding week; (iii) no later than 5:00 p.m. (Eastern time) each Monday, a detailed report from the Debtors' investment banker that summarizes the status of the Debtors' efforts to sell substantially all of their assets as a going concern, which report shall include (w) a tracking chart reflecting what communications, if any, the investment banker had with interested parties during the prior week; (x) copies of expressions of interest or letters of intent received by the Debtors from third parties; (y) a summary of the due diligence activities conducted by interested parties in the preceding week; and (z) a time table for execution of definitive agreements with potential parties and the filing of pleadings with the Court seeking approval of the sale; and (iv) no later than the 10th day of each month, beginning February 10, 2009, the Debtors' financial statements (including detail by operating division and consolidated balance sheets, income statements and cash flow statements) for the immediately preceding month in the same format as the Debtors have been providing to the Pre-Petition Lenders prior to the Petition Date, and (v) any other reports requested by DIP Lender.

19.    Covenants.  Subject to the next sentence, the Debtors shall timely comply with all of the representations, warranties and covenants set forth in the Pre-Petition Loan Documents, which are incorporated by this reference into the DIP Loan Documents and are given for the benefit of the DIP Lender and its assigns.  DIP Lender may not send notice of a Termination Date for any defaults for a violation or breach of the representations, warranties and covenants set forth in the Pre-Petition Loan Documents to the extent such breaches or defaults arise from or relate to (a) breaches or violations that are first in existence prior to the Petition Date; or (b) breaches or violations which are directly caused, directly result from or are directly related to the

commencement of Debtors' Chapter 11 Cases. The Debtors shall also comply with this Order and the DIP Loan Documents.

20.    <u>Application of Proceeds</u>. Neither the Debtors nor any other party shall have the right to direct or seek an order directing the manner of application of any payments to DIP Lender or the Pre-Petition Lenders or any other receipts by DIP Lender or Pre-Petition Lenders of proceeds of any of the Pre-Petition Collateral or DIP Facility Collateral other than in the manner set forth in this Order and the Pre-Petition Loan Documents and the DIP Loan Documents.

21.    <u>DIP Lender and Pre-Petition Lenders Reservation of Rights</u>. DIP Lender and the Pre-Petition Lenders do not waive, and expressly reserve, any and all claims, defenses, rights and remedies they have pursuant to any or all of the Pre-Petition Loan Documents, the DIP Loan Documents, the Bankruptcy Code and/or other applicable law against the Debtors and any officer, director, employee, agent or other representative of the Debtors. In addition, the rights and obligations of the Debtors and the rights, claims, liens, security interests and priorities of DIP Lender and the Pre-Petition Lenders arising under this Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtors, in their pre-petition capacity, under the Pre-Petition Loan Documents.

22.    <u>Order Binding on Successors</u>. The provisions of this Order shall be binding upon and inure to the benefit of DIP Lender, Pre-Petition Lenders and the Debtors and their respective successors and assigns (including any trustee or other estate representative appointed as a representative of the Debtors' estates or of any estate in any successor case). No third parties are

intended to be or shall be deemed to be third party beneficiaries of this Order or the DIP Loan Documents.

23.    <u>Releases and Validation of Pre-Petition Indebtedness and Pre-Petition Liens;</u> <u>Allowance of Pre-Petition Indebtedness as Fully Secured Claim; Releases and Validation of</u> <u>Arrow Indebtedness and Arrow Pre-Petition Lens; Allowance of Arrow Indebtedness as a Fully</u> <u>Secured Claim</u>. The release, discharge, waivers and agreements set forth in this ordering paragraph will be deemed effective upon the entry of this Order, subject only to the rights of the Committee as set forth in paragraph 25 below. Subject to the rights of the Committee acting on behalf of the estate pursuant to paragraph 25, below, the Debtors and their estates, hereby:

(a)    (i) release and discharge Pre-Petition Lenders and DIP Lender, together with all of their affiliates, agents, attorneys, officers, directors and employees from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Pre-Petition Loan Documents, any aspect of the pre-petition relationship between Pre-Petition Lenders on the one hand, and the Debtors on the other hand, or any other acts or omissions by Pre-Petition Lenders in connection with any of the Pre-Petition Loan Documents, or Pre-Petition Lenders' pre-petition relationship with the Debtors; (ii) waive any and all claims, defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, subordination and avoidability (under §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 of the Bankruptcy Code or otherwise) of the Pre-Petition Indebtedness and the security interests in and liens on the Pre-Petition Collateral in favor of Pre-Petition Lenders; and (iii) agree, without further Court order and without the need for the filing of any proof of claim, to the allowance of the pre-petition claims of Pre-Petition Lenders

pursuant to §§ 502 and 506 of the Bankruptcy Code on account of the Pre-Petition Indebtedness, as fully secured claims; and

        (b)     (i) release and discharge Arrow, together with all of its agents, attorneys, officers, directors and employees from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Arrow Documents, any aspect of the pre-petition relationship between Arrow on the one hand, and the Debtors on the other hand, or any other acts or omissions by Arrow in connection with any of the Arrow Documents, or Arrow's pre-petition relationship with the Debtors; (ii) waive any and all claims, defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, subordination and avoidability (under §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 of the Bankruptcy Code or otherwise) of the Arrow Indebtedness and the security interests in and liens on the Arrow Pre-Petition Collateral in favor of Arrow; and (iii) agree, without further Court order and without the need for the filing of any proof of claim, to the allowance of the pre-petition claims of Arrow pursuant to §§ 502 and 506 of the Bankruptcy Code on account of the Arrow Pre-Petition Indebtedness, as fully secured claims.

       24.    <u>No Liability to Third Parties</u>.  Neither DIP Lender nor Arrow shall (i) have liability to any third party nor shall it be deemed to be in control of the operations of the Debtors or to be acting as a "controlling person", "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, the Unites States Comprehensive, Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), or owe any fiduciary duty to the Debtors, their creditors or their estate, and (ii) neither DIP Lender's nor

Arrow's relationship with the Debtors shall constitute nor be deemed to constitute a joint venture or partnership with the Debtors.

25.    Objections by Parties in Interest.  Except as set forth below in this paragraph 25, all of the provisions of this Order shall be final and binding on the Debtors (including, without limitation, their successors and assigns), the Debtors' shareholders, and all creditors and other parties in interest, including any Chapter 11 or Chapter 7 trustee hereinafter appointed.  The Committee (which shall be deemed to have standing) or any other party in interest including a Chapter 7 Trustee hereinafter appointed, that establishes that it has standing, shall have until April 24, 2009, within which to file, on behalf of the Debtors, and to serve upon counsel for Pre-Petition Lenders, DIP Lender and Arrow objections or complaints respecting (a) the claims, causes of actions and defenses released by the Debtors pursuant to ordering paragraph 23 above or (b) the validity, extent, priority, avoidability, or enforceability of the Pre-Petition Indebtedness and the Pre-Petition Liens in the Pre-Petition Collateral, and  the Arrow Pre-Petition Indebtedness and the Arrow Pre-Petition Liens, including seeking to subordinate any liens or claims of the Pre-Petition Lenders or Arrow under Section 510 of the Bankruptcy Code, or otherwise.  In the event that no objections or complaints are filed with this Court by any party with standing or the Committee and served upon counsel for the Pre-Petition Lenders and DIP Lender, or counsel for Arrow, as the case may be, within the time period set forth above, the provisions of this Order including, without limitation, paragraph 23 and the Debtors' Stipulations in this Order shall become final and binding for all purposes and upon all parties.  For purposes of this paragraph, provided that any trustee is appointed or elected by April 24, 2009, such trustee shall have standing to assert the challenges set forth herein.  If a challenge is timely commenced and is pending, and any trustee is thereafter elected or appointed, such trustee shall

be empowered to prosecute such challenge and shall be deemed to be a party "other than the debtors" and shall not, for purposes of such litigation, be bound by the acknowledgments, admissions and confirmations of the Debtors in this Order.

26.  Effect of Modification of Order.  The Debtors shall not, without DIP Lender's prior written consent (which shall be given or refused in its sole discretion), seek to modify, vacate or amend this Order or any DIP Loan Documents.  If any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any obligation outstanding immediately prior to the effective time of such stay, modification or vacatur, the manner of application of proceeds to the Indebtedness as set forth herein, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such obligations.  Notwithstanding any such stay, modification or vacatur, any obligation outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Order, and Pre-Petition Lenders and DIP Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, with respect to all such obligations.

27.  Safe Harbor.  The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtors to obtain credit on the terms and conditions upon which the Debtors and DIP Lender have agreed.  Thus, each of such terms and conditions constitutes a part of the authorization under § 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in § 364(e) of the Bankruptcy Code.

28.    Service of Order. The Debtors shall promptly serve a copy of this Order (including the Arrow Stipulation), by regular mail upon (i) the United States Trustee; (ii) all affected state and federal taxing authorities; (iii) the creditors holding the 35 largest unsecured claims against each of the Debtors, (iv) counsel for the Committee, Robert M. Hirsch, Esq., Arent Fox LLP, 1675 Broadway, New York, NY 10019, and Rafael X. Zahralddin-Aravena, Elliott Greenleaf, 1105 Market Street, Suite 1700, Wilmington, DE 19801; and (v) any other party which theretofore has filed in the Chapter 11 Cases a request for special notice with this Court and served such request upon Debtors' counsel.

29.    Objections Overruled or Withdrawn. All objections to the entry of this Order have been withdrawn or are hereby overruled.

30.    Controlling Effect of Order. To the extent any provisions in this Order conflict with any provisions of the Motion, any of the Pre-Petition Loan Documents or any DIP Loan Document, the provisions of this Order shall control.

31.    Order Effective. This Order shall be effective as of the date of signature by the Court or "so ordered" ruling from the bench.

32.    Non Waiver. No omission or delay by the Pre-Petition Lenders or DIP Lender in exercising any right or powers under this Order, the Pre-Petition Loan Documents or DIP Loan Documents, or any related agreement, will impair such right or power or be construed to be a waiver of any default or breach or an acquiescence therein, and any single or partial exercise of any such right or power will not preclude other or further exercise thereof or the exercise of any other right, and no waiver will be valid unless in writing and signed by all Pre-Petition Lenders or the DIP Lender and then only to the extent specified. Moreover, nothing in this Order shall be deemed to constitute a waiver by the Pre-Petition Lenders, the DIP Lender or Arrow to share in

the proceeds of Avoidance Actions as a general unsecured creditor of the Debtors' estates under 11 U.S.C. § 506(a) or otherwise.

33.    <u>Pagemill Carveout</u>.    All liens and claims of the Pre-Petition Lenders, the DIP Lender and Arrow, including but not limited to the Adequate Protection Liens, the DIP Facility Liens, the Superpriority Claims, the 507(b) Claim, the Pre-Petition Liens, the Arrow Replacement Liens and the Arrow Pre-Petition Liens shall be subject to the Success Fee, Engagement Fee and Expenses payable by the Debtors to Pagemill Partners, LLC ("<u>Pagemill</u>") as set forth in the engagement letter between the Debtors and Pagemill dated January 31, 2009 (the "<u>Pagemill Letter</u>").    Any fee owed to Pagemill under the Pagemill Letter relating to a Transaction (as such term is defined in the Pagemill Letter), provided such fee is approved by the Court, shall be paid directly from the sale proceeds of such Transaction.    Notwithstanding anything to the contrary in the Pagemill Letter, a Transaction shall not include the sale of the Debtors' assets by credit bid to the Pre-Petition Lenders, the DIP Lender or any of their affiliates, successors, assigns or nominees (the "<u>Credit Bidders</u>") unless such credit bid is in response to a Qualified Bid by a third party.    The obligations of Pre-Petition Lenders, DIP Lender and Arrow under this paragraph shall be binding and shall not be modified at any time and shall survive any modification of the Post-Petition Financing or this Order.    Within three business days of receiving an invoice from Pagemill after a Termination Date, and upon Court approval, the DIP Lender shall pay to Pagemill all reasonable fees and expenses provided for in the Pagemill Letter that have actually accrued but have not been paid before the Termination Date, provided, however, that any such payment on account of expenses shall be capped at $20,000.00. Notwithstanding the foregoing, if the cash sale proceeds paid by a Qualified Bidder other than the Credit Bidders exceeds the amount of the Indebtedness as defined in paragraph 2 of this

Order, but is insufficient to pay any fee owed to Pagemill, then DIP Lender shall pay Pagemill any shortfall.

34.    Payment of Accrued and Unpaid Expenses.  Notwithstanding anything to the contrary contained in this Order, in the event the Debtors consummate a sale of substantially all of their assets to the Purchaser (as defined in and pursuant to the terms of that certain Asset Purchase Agreement dated on or about February 4, 2009 (the "Agreement"), or to a third party purchaser on terms and conditions acceptable to DIP Lender and Pre-Petition Lenders, then, upon closing of the sale contemplated by the Agreement (the "Closing"), DIP Lender shall advance to the Debtors an amount sufficient to cover any actually accrued but unpaid and valid expenses provided for and limited to the amounts set forth in the Approved Budget existing as of the closing of such sale, unless there are sufficient proceeds from the sale to satisfy such expenses.

The Honorable Mary F. Walrath
United States Bankruptcy Judge

DATED: March 23 2009