UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| MANAGED STORAGE INTERNATIONAL, | : | Case Number 09-10368 (MFW) |
| INC. *et al.,* | : | |
| | : | Jointly Administered |
| Debtors | : | Hearing Date: 7/19/10 at 3:00 p.m. |
| | : | Objection Deadline: 7/15/10 |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR APPROVAL
OF SETTLEMENT AGREEMENT PURSUANT TO 11 U.S.C. § 105 AND
FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(a)(D.I. 408)**

In support of her Objection to the Motion of the Official Committee of Unsecured Creditors for Approval of a Settlement Agreement Pursuant to 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 9019(a) (the "Motion"), Roberta A. DeAngelis, United States Trustee for Region 3 ("U.S. Trustee"), by undersigned counsel, avers as follows:

**Introduction**

1. This Court has jurisdiction to hear this Objection.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3. In furtherance of her case supervisory responsibilities, as well as pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to raise and be heard on this Objection.

4. The Debtors filed these jointly administered Chapter 11 cases on February 4, 2009 (the "Petition Date").

5. On the Petition Date, the Debtors obtained an interim financing order authorizing them to obtain debtor-in-possession financing from pre-petition lender Laurus Master Fund, Ltd. (In Liquidation) ("Laurus") pursuant to 11 U.S.C. § 364 and to use cash collateral pursuant to 11 U.S.C. § 363. A second interim debtor-in-possession financing order was entered on February 10, 2009.

6. On the Petition Date, the Debtors also moved for the entry of an order approving bidding procedures for the sale of certain assets of the Debtors, with Laurus designated as the stalking horse bidder (the "Sale Motion").

7. The U.S. Trustee appointed an official committee of unsecured creditors ("Committee") on February 13, 2009. The committee selected the law firms of Arent Fox LLP and Elliott Greenleaf as its counsel, and Weiser LLC as its financial advisor (collectively, the "Committee Professionals").

8. On February 25, 2009, the Committee objected to the Sale Motion.

9. On March 3, 2009, the Committee filed its objection to the entry of a final debtor-in-possession financing order.

10. On March 23, 2009, after a contested hearing, the Court entered a Final debtor-in-possession financing order ("Final DIP Order"), overruling the Committee's objections thereto.

11. The Final DIP Order authorized payment of the fees and expenses of Committee Professionals up to the amount set forth in an Approved Budget, *viz.* a total of $100,000, subject to this Court's approval of such fees and expenses, without prejudice to the right to apply for fees and expenses in excess of the Approved Budget, provided that neither the pre-petition lenders nor the DIP lenders would be responsible for payment of professional fees or expenses in excess of the amounts set forth in the Approved Budget.

12. Under the terms of the Final DIP Order, the Debtors waived, released and discharged all claims, causes of action and defenses against the pre-petition lenders and the DIP lender (the "Debtors' stipulations"), subject to the right of the Committee or any other party in interest to assert such claims, causes of action or defenses not later than April 23, 2009.

13. Neither the Committee nor any other party in interest asserted any claims, causes of action or defenses against the pre-petition lenders or DIP lender during the challenge period established by the Final DIP Order, and the Debtors' Stipulations became binding for all purposes upon all parties pursuant to the express terms of the Final DIP Order.

14. By order dated April 2, 2009, the Court approved the Sale Motion, and Laurus acquired substantially all of the Debtors' assets pursuant to a credit bid.

15. The Debtors' estates are administratively insolvent, and these jointly administered cases are ripe for dismissal or conversion to cases under Chapter 7. Indeed, recognizing that there is no Chapter 11 plan in prospect and that they have no further function in these cases,

Elliott Greenleaf and Weiser have filed final applications for compensation and reimbursement of expenses, and Arent Fox is expected to do so shortly.[1]

16. The Motion indicates that the Committee Professionals requested fees and expenses of $369,586.78 for the months of February, March and April 2009 alone, and are now owed a total of $415,125.51 of unpaid fees and expenses for the period from February 13, 2009 to January 31, 2010.

17. The Motion states that Laurus "raised an informal objection to the funding of any amount of fees and expenses sought by the Committee Professionals in excess of the Court-approved Carve-Out . . . of $100,000." The alleged "informal objection" by Laurus would be consistent with the express and unambiguous language of the Final DIP Order, which provides that Laurus shall not be responsible for payment of any professional fees or expenses in excess of the amounts set forth in the Approved Budget.

18. The Motion indicates that Laurus and the Committee have negotiated a "settlement" under which Laurus will fund up to $315,000 of additional Committee Professionals' fees and expenses (subject to the Court's allowance of such fees and expenses) for a total of up to $415,000, and will also fund the sum of $25,000 on account of accrued but unpaid fees owed to the U.S. Trustee and to claims and noticing agent Epiq Systems.

    (a) Under the terms of the purported settlement, the Committee will ratify and reaffirm its prior release of Laurus, which release arose from the Committee's failure to

---

[1] Elliott Greenleaf has filed a final application for compensation and reimbursement of expenses of $156,433.50 and $12,065.66, respectively; Weiser has filed a final application requesting $63,487.50 and 424, respectively. Although Arent Fox has not yet filed its final application, the sums of Arent Fox's monthly applications for compensation and reimbursement of expenses through January 31, 2010 are $297,888 and $3,920.04, respectively.

assert any claims, causes of actions or defenses against Laurus prior to the April 24, 2009 deadline set forth in the Final DIP Order.

(b)     Under the terms of the purported settlement, no member of the constituency for whom the Committee serves as a fiduciary will receive any of the consideration to be tendered by Laurus. Instead, almost 93% of that consideration – $315,000 – is earmarked solely for the benefit of Committee Professionals, primarily the very counsel who negotiated the purported settlement. The balance is allegedly earmarked for fees owed to the U.S. Trustee and Epiq.

(c)     Under the terms of the purported settlement, general unsecured creditors, priority creditors, creditors holding claims entitled to administrative priority under 11 U.S.C. § 503(b)(9), landlords, and all other providers of post-petition goods and services will receive nothing, while Arent Fox, Elliot Greenleaf and Weiser will receive significantly more than *pro rata* payment of their administrative claims.

## ARGUMENT

### A.  The Committee Lacks Standing to Seek Approval of the Purported Settlement.

19.     FED.R.BANKR.P. 9019(a) provides in relevant part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." On its face, this language grants authority to seek approval of a compromise or settlement to a trustee or, by virtue of 11 U.S.C. § 1107(a), a debtor-in-possession.

20.     Under appropriate circumstances, a bankruptcy court may authorize an entity other than a trustee or debtor-in-possession to pursue and settle claims which belong to the bankruptcy estate, but such authority is not unlimited. *In re Guy F. Atkinson Co. of Calif.*, 242

B.R. 497, 502 (9th Cir. B.A.P. 1999). As the court noted in *Guy F. Atkinson Co. of Calif., supra*, two prerequisites must be met before an entity other than the trustee or debtor-in-possession may pursue or settle estate claims:

> (a) First, there must be "sufficient reason," such as
>
>> (i) the entity is pursuing interests common to all creditors;
>>
>> (ii) the entity party has been appointed to enforce a confirmed plan;
>>
>> (iii) the trustee or debtor-in-possession has no economic incentive to pursue a claim; or
>>
>> (iv) the trustee or debtor-in-possession has failed to fulfill the duty to prosecute actions on behalf of the estate.

*Id.* (citations omitted).

> (b) Second,
>
> [T]he entity's interests and incentives in settling the claims must be consistent with maximizing the estate for all creditors. At its base, the approval of a settlement turns on the question of whether the compromise is in the best interest of the estate. *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986); *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. PA. 1986). The trustee and debtor in possession, as fiduciaries on behalf of the creditors of the estate, *see In re Martin*, 91 F.3d 389, 394 (3d Cir. 1996), have the obligation and are in the best position to negotiate settlements that will best serve the interests of all the creditors. *See* § 704 (duties of trustee). An entity that is authorized to act in the trustee's stead in negotiating and proposing settlement should have similar loyalties and duties.

242 B.R. at 502-03.

21. Here, neither prerequisite is met. There exists no "sufficient reason" for the Committee to pursue claims, causes of action or defenses against Laurus, and the Committee's incentives are not consistent with maximizing the estate for all creditors.

22. With respect to "sufficient reason" for the Committee to pursue and settle claims, causes of action or defenses against Laurus, the Committee was authorized to do so under the terms of the Final DIP Order until April 24, 2009. However, the Committee failed to act by that date, and any claims, causes of action or defenses that the Committee might otherwise have asserted against Laurus on behalf of the estate have been extinguished. Query on what basis the Court might find "sufficient reason" to pursue and settle claims, causes of action or defenses which, pursuant to the Final DIP Order that this Court signed on March 23, 2009, simply do not exist.

23. With respect to the second prerequisite, the Committee's interests and incentives in purporting to "settle" alleged claims, causes of action or defenses against Laurus are not consistent with maximizing the estate for all creditors. On the contrary, the Committee's interests and incentives are in maximizing the payments to Committee Professionals, while leaving all other estate constituencies begging.

24. Because neither prerequisite is satisfied, the Court should find that the Committee does not have standing to propose any "settlement" under FED.R.BANKR.P. 9019(a), and deny the Motion.

**B.  The Settlement is Not in the Paramount Interest of Creditors.**

25. In the Motion, the Committee correctly recites the four criteria set forth in *In re Martin*, 91 F.3d 389 (3d Cir. 1996) to be considered by a court in evaluating the fairness of a proposed settlement:

> (a) the probability of success in litigation;
>
> (b) the likely difficulties in collection;
>
> (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
>
> (d) the paramount interest of the creditors.

91 F.3d at 393.

26. The fourth *Martin* factor is critical.  A trustee, debtor-in-possession or third party seeking to act in the stead of either of them "has a fiduciary relationship with *all* creditors of the estate," and is obligated to act in a manner that maximizes the value of the estate. *Martin, supra*, 91 F.3d at 394 (emphasis in original, citations omitted).

27. Here, the Committee – or more accurately, its counsel who negotiated the "settlement" with Laurus – is not acting consistent with its fiduciary relationship with all creditors of the estate, and is not seeking to maximize the value of the estate. Instead, the Committee – or again, more accurately, Committee counsel – is acting in the interest of the Committee Professionals only, forsaking the interests of the estate and breaching the fiduciary obligation of a trustee, debtor-in-possession or third party acting in their stead to maximize the value of the estate for the benefit of all creditors.

28. This self-dealing by the Committee – or agin, more accurately, Committee counsel – is the antithesis of "the paramount interest of the creditors," and the purported "settlement" should not be approved.

WHEREFORE, the U.S. Trustee requests that this Court deny the Motion.

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**ACTING UNITED STATES TRUSTEE**


Dated: July 14, 2010          BY: /s/ Mark S. Kenney
                              Mark S. Kenney
                              Trial Attorney
                              Office of the United States Trustee
                              J. Caleb Boggs Federal Building
                              844 King Street, Suite 2207, Lockbox 35
                              Wilmington, DE 19801
                              (302) 573-6491
                              (302) 573-6497 (Fax)