**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MANAGEDSTORAGE INTERNATIONAL, INC., *et al.*,[1]<br><br>　　　　　　　　　Debtors. | Chapter 7<br><br>Case No. 09-10368 (MFW)<br><br>(Jointly Administered)<br><br>Objection Deadline: March 9, 2015 at 4:00 p.m.<br>Hearing Date: March 18, 2015 at 2:00 p.m. |

**MOTION OF AVNET, INC., PURSUANT TO FED. R. BANKR. P. 9019
TO APPROVE STIPULATION AND RELEASES AMONG THE DEBTORS,
SECURED CREDITOR AVNET, INC., AND LAURUS RELATED PARTIES
REGARDING PURCHASE MONEY SECURITY INTEREST IN COLLATERAL
[DOCKET NO. 399] RESOLVING MOTION OF SECURED CREDITOR AVNET, INC.,
TO ENFORCE SALE ORDER TO SPECIFICALLY EXCLUDE AVNET PMSI
COLLATERAL FROM SALE ASSETS AND TO COMPEL LAURUS MASTER FUND,
LTD., VALENS OFFSHORE SPV I, LTD., VALENS OFFSHORE SPV II, CORP.,
VALENS U.S. SPV I, LLC, AND/OR PSOURCE STRUCTURED DEBT LIMITED, TO
TURN OVER AVNET COLLATERAL [DOCKET NO. 371]**

Avnet, Inc. ("**Avnet**"), a secured creditor in the above-captioned cases, by and through its undersigned counsel, moves the Court pursuant to FED. R. BANKR. P. 9019[2] to enter an order approving a settlement, as described in this Motion, and a stipulation and release between Avnet, the Debtors and Laurus Master Fund, Ltd., Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, and/or PSource Structured Debt Limited, (collectively "**Laurus**"), resolving the dispute raised in the *Motion Of Secured Creditor Avnet, Inc., To*

---

[1] The debtors ("**Debtors**") in these cases, along with the last four digits of each Debtor's federal tax identification number, and their respective addresses, are: ManagedStorage International, Inc. (6252), 12303 Airport Way, Suite 250, Bromfield, CO 80201; Incentra Solutions, Inc. (3960), 1140 Pearl Street, Boulder, CO 80302; Incentra Solutions of California, Inc. (3782), 4122 Sorrento Valley Blvd., Suite 102, San Diego, CA 92121; Network System Technologies, Inc. (8009), 2050-80 Finley Drive, Lombard, IL 60148; Incentra Solutions of the Northeast, Inc. (8372), 1140 Pearl Street, Boulder, CO 80302; Incentra Solutions of the Northwest, Inc. (8930), 9020 SW Washington Square Road, Suite 500, Portland, OR 97223; Sales Strategies, Inc. (0515), 6 Bridge Street, Unit 5, Metuchen, NJ 08840, and Incentra Solutions International, Inc. (1239), 15 Old Bailey, London EC4M 7EF, United Kingdom.

[2] Avnet, as an entity whose rights are implicated by the Sale Order, the Motion to Compel, and the Stipulation and Release, has rights to move for approval of a settlement under Fed. R. Bankr. P. 9019. *See In re TSIC, Inc.*, 393 B.R. 71, 77-78 (Bankr. D. Del. 2008).

BOS 47604758v4

*Enforce Sale Order To Specifically Exclude Avnet PMSI Collateral From Sale Assets And To Compel Laurus Master Fund, Ltd., Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, And/Or Psource Structured Debt Limited, To Turn Over Avnet Collateral* (the "**Motion to Compel**"). [Docket No. 371]. The parties reached that agreement on May 19, 2010 and it was approved by the Court on the same date, a copy of which is attached hereto as <u>Exhibit A</u> (the **"Stipulation and Release"**) [Docket No. 399].

Based upon the Stipulation and Release, Avnet sought dismissal of the Chapter 7 Trustee's preference claims brought in the case styled *Burtch v. Avnet, Inc.*, United States Bankruptcy Court for the District of Delaware Adversary Proceeding No. 12-50026-MFW. This court dismissed the Trustee's claims, which dismissal was appealed to the United States District Court for the District of Delaware (the "**District Court**"). The District Court reversed this Court's dismissal and remanded with the following instruction, "the Bankruptcy Court should reassess the Stipulation and Release by the standards of *In re Martin*." *Burtch v. Avnet*, -- B.R. --, 2015 WL 243183 at *5 (D. Del. January 16, 2015).

Notably, however, this Court's Order approving the Stipulation and Release was never appealed, never subject to a motion to reconsider, nor could it be. [Docket No. 400]. Furthermore, that Order was not before the District Court. The Order approving the Stipulation and Release is final and is not subject to collateral attack. *In re Continental Airlines*, 203 F.3d 203, 208-09 (3d Cir. 2000) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 177, 59 S.Ct. 134, 83 L.Ed. 104 (1938) (holding that party may not collaterally attack the jurisdiction of a court when that question already has been decided); *In re Szostek,* 886 F.2d 1405, 1414 (3d Cir.1989) (declining to reverse confirmation of chapter 13 plan when appellant failed to object to confirmation order); *Monarch Life Ins. Co. v. Ropes and Gray*, 65 F.3d 973, 983 (1st Cir.1995) ("the issue of the bankruptcy court's power to enter its so-called 'incidental' injunction was precluded, having

2

been conclusively resolved in the confirmation order which Monarch Life neither opposed nor appealed.... The proper recourse for addressing these questions was by direct appeal from the order of confirmation"); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1052-1054 (5th Cir.1987) (holding that Republic's cause of action for enforcement of the guaranty was barred by confirmation order that Republic did not appeal)). *See also Espinosa,* 130 S.Ct. at 1380 (where "a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify Rule 60(b) [ ] relief"). The Supreme Court has affirmed this principle that a party who does not appeal a final order is precluded from collaterally attacking that order in another proceeding. *Celotex Corp. v. Edwards,* 514 U.S. 300, 313, 115 S.Ct. 1493, 1501, 131 L.Ed.2d 403 (1995). *See also In re RNI Wins Down Corporation*, 2010 WL 17030 (3d Cir. 2010) (by not objecting to confirmation order and appealing that order to district court, party lost right to collaterally attack order by challenging court-approved settlement that was essential part of plan).

The remand instruction of the District Court in the adversary proceeding asking this Bankruptcy Court to re-review an order from the main case that was never appealed or challenged creates a procedural conundrum. However, in an effort to resolve this matter once and for all, but without waiving this argument, Avnet respectfully requests that this Court reaffirm the Stipulation and Release pursuant to FED. R. BANKR. P. 9019. In support of its Motion, Avnet respectfully states as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 157.

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

3

**BACKGROUND**

4. Avnet and certain Debtors were parties to two valid and perfected purchase money security interests dated October 24, 2008 and December 17, 2008 (the "**October Avnet PMSI,**" the "**December Avnet PMSI,**" and collectively the "**Avnet PMSIs**") covering certain products the Debtors purchased from Avnet (the "**Avnet Products**"). Collateral for the Avnet PMSIs included the Avnet Products, the Debtors' accounts receivable related to the sale of the Avnet Products (the "**Avnet PMSI AR**"), and the proceeds received on account of the Avnet PMSI AR (collectively the "**Avnet PMSI Collateral**"). True and accurate copies of the Avnet PMSIs and the UCCs are attached hereto as Exhibit B. At the time Avnet filed its Motion to Compel, there was an outstanding amount of $1,312,980.63 the Debtors owed Avnet under the Avnet PMSIs, of which $1,270,814.47 was undisputed. Exhibit C.

5. On February 4, 2009 (the **"Petition Date"**), each of the Debtors filed a voluntary petition for relief with this Court under Chapter 11 of the United States Bankruptcy Code (the **"Bankruptcy Code"**).

*The Debtors' Bid Procedures Motion*

6. On or about February 4, 2009, the Debtors filed Debtors' *Motion For An Entry Of An Order (A) Approving Bid Procedures For The Sale Of the Debtors' Assets, (B) Scheduling An Auction And Hearing To Consider The Sale And Approve The Form And Manner Of Notice Related Thereto; (C) Establishing Procedures Relating To The Assumption And Assignment Of Certain Contracts, Including Notice of Proposed Cure Amounts, and (D) Granting Related Relief* (the "**Bid Procedures Motion**") [Docket No. 15]. In the Bid Procedures Motion, the Debtors acknowledged the Avnet PMSIs and stated "[t]he Debtors presently intend to either (a) exclude the property subject to the Avnet PMSI for the Assets being sold, or (b) sell such property

4

subject to the Avnet PMSI." Bid Procedures Motion, p. 9, n.6.

7. On February 26, 2009, this Court held a hearing on the Bid Procedures Motion. At that hearing, counsel for Avnet appeared and made clear for the record that the Avnet PMSIs covered not only the Avnet Products, but also the Avnet PMSI AR and proceeds related thereto. The transcript of that hearing, in pertinent part, reads as follows:

> MR. GROHSGAL: I defer to Ms. Counihan. I'll mention then to Mr. Hirsh all that's happened.
>
> MS. COUNIHAN: Good morning, Your Honor. Victoria Counihan on behalf of Avnet, Inc. Your Honor, we don't have an objection to the bid Procedures but we did want to raise an issue with the Court. Avnet has a purchase money security interest in certain products that it sold to the Debtor and also a security interest in the receivables that are generated from that sale. The Bid Procedures Motion does note, in a footnote, it's footnote 6 on page 9 that acknowledges the purchase money security interest and says that the Avnet products will either be excluded from the sale or will be sold subject to that PMSI, but it doesn't specifically mention -- it only mentions the products and doesn't specifically mention that we also have a security interest in the receivables so we just wanted to make it abundantly clear for any purchaser out there that not only are the products subject to the PMSI but also the receivables.
>
> We also thought, you know, although this may really just be a sale issue, we did want to raise it now because theoretically it's possible that all of the accounts receivable of the Debtor may be sold for a lump sum and it may not be parsed out as to which amounts of money being paid are for the accounts receivable that relate to Avnet's products and which amounts of money are being paid for the accounts receivable that don't relate to Avnet's products. So we just wanted to point that out so that when the Debtor is negotiating its sale, they can keep that in mind since the portion of the sale price for any accounts receivable that relate to Avnet products, Avnet's entitled to be paid, so we would need to know what amount that is.
>
> THE COURT: The footnote is in the Bid Procedures?
>
> . . .

5

> MS. COUNIHAN: Oh, it's in both. It looks like it's page 9 of the Bid Procedures, footnote 6.
>
> MR. GROHSGAL: And, Your Honor, for the record, the Debtors acknowledge the reservation of rights by Avnet with respect to the ownership issues, as well as any allocation issue that may arise.
>
> THE COURT: Okay. I don't see it in the Bid Procedures.
>
> MR. GROHSGAL: Page 9 of the Motion itself.
>
> THE COURT: Oh, of the Motion?
>
> MR. GROHSGAL: Yes.

February 26, 2009 Hearing Transcript pp. 12-15. Counsel for Laurus was present at this hearing and raised no objection to the points raised by Avnet. February 26, 2009 Hearing Transcript pp. 1-3.

***The Debtors' Sale Motion and Avnet's Objection Thereto***

8. On February 4, 2009, the Debtors filed Debtors' *Motion For An Order: (I) Approving Asset Purchase Agreement And Authorizing The Sale Of Certain Of Its Assets Outside The Ordinary Course Of Business To Laurus Master Fund, Ltd. (In Liquidation) Or A Higher And Better Bidder; (II) Authorizing The Sale Of Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests Pursuant To Sections 363(a), (f) And (m) Of The Bankruptcy Code, (III) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (IV) Granting Related Relief* (the "**Sale Motion**") [Docket No. 16]. Again, in the Sale Motion, the Debtors specifically stated that they will either (a) exclude the Avnet PMSI Collateral from the assets being sold or (b) will sell the Avnet PMSI Collateral subject to the Avnet PMSI. Sale Motion, p. 10 footnote 6. At that time, the Asset Purchase Agreement ("**APA**") had yet to take final form so the treatment of the Avnet PMSI Collateral was unclear.

9. Accordingly, on March 24, 2009, Avnet filed the *Limited Objection Of Secured Creditor Avnet, Inc., To Debtor's Motion For An Order: (i) Approving Asset Purchase Agreement And Authorizing The Sale Of Certain Of Its Assets Outside The Ordinary Course Of Business To Laurus Master Fund, Ltd. (In Liquidation) Or A Higher And Better Bidder; (ii) Authorizing The Sale Of Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests Pursuant To Sections 363(a), (f) And (m) Of The Bankruptcy Code, (iii) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (iv) Granting Related Relief* (the "**Avnet Limited Objection**") [Docket No. 145].

10. On April 2, 2009, the Debtors, the Official Committee of Unsecured Creditors (the "**Committee**") and Avnet entered into and filed the *Stipulation Between Debtors, The Official Committee of Unsecured Creditors, and Secured Creditor, Avnet., Inc., Regarding Purchase Money Security Interest Funds* (the "**Stipulation**") [Docket No. 195], attached hereto as <u>Exhibit D</u>. On April 14, 2009, the Court entered an Order approving the Stipulation [Docket No. 213]. Pursuant to the Stipulation, "[t]he Debtors agree[d] that they will maintain any and all funds they receive from accounts receivable that are subject to the December PMSI in a segregated account (the '**Debtor PMSI Account**')." Further, the Stipulation provides, "[t]he Debtors agree that they will not use the funds contained in the Debtor PMSI account." It was Avnet's understanding that, based on the Stipulation, Debtors were segregating Avnet PMSI Collateral into a separate account which was maintained by the Debtors.

11. On April 2, 2009, this Court held a hearing on the Sale Motion (the "**Sale Hearing**"). Avnet appeared at that hearing to make it clear for the record that all Avnet PMSI Collateral, not just Avnet Products, was to be excluded from the Purchased Assets as Avnet has a perfect security interest in the Avnet PMSI Collateral superior to all creditors. The transcript of that hearing, in pertinent part, reads as follows:

7

| | |
|---|---|
| MR. GROHSGAL: | (Con't.)  With respect to Avnet, which is the objection filed at the Docket Number 145, -- |
| THE COURT: | Yes. |
| MR. GROHSGAL: | --there's a stipulation that was submitted to the Court resolving the Avnet deal which sets forth the agreement reached among Avnet, the Debtors and the Committee at the Final Cash Collateral Financing Hearing.  It was held several weeks ago.  In addition, <u>I'm stating on the record that the Debtors are not purporting or attempting to assign any of the assets in which Avnet asserts a security interest at this time.</u>  And to the extent that we might need to further amend the schedules to the Asset Purchase Agreement, I've agreed with Avnet's counsel that will do that if necessary.  That being said, we would be submitting, today, an order attaching the signed Avnet Purchase Agreement as was filed last night with a couple of revisions, which I'll also walk the court through, which has the revised schedules that we filed last night, and ask the Court to enter that Order.  Again, understanding that if there's an issue of clarification that's require [sic] with respect to the Avnet asset, that we will make that by amendment to the APA or to the schedules.  And that is acceptable to Avnet's counsel. |

. . .

| | |
|---|---|
| THE COURT: | All right.  Anybody else? |
| MR. MELORO: | Good afternoon, Your Honor.  Dennis Meloro from Greenberg, Traurig on behalf of Avnet, Inc.  We're in agreement with what Mr. Grohsgal said.  I just wanted to make one minor clarification to avoid an ambiguity down the road.  Mr. Grohsgal stated that they're not seeking to assign any assets of Avnet.  <u>What I think he meant to say is just that they're not seeking to sell any assets of Avnet</u> so-- |
| THE COURT: | Okay. |
| MR. GROHSGAL: | <u>I confirm that, Your Honor.  We're not seeking to transfer, dispose, sell, assign, etcetera.  Thank you</u>. |
| MR. MELORO: | That's fine.  I understood that, Your Honor.  I just wanted to make that clear.  Thank you. |

April 2, 2009 Hearing Transcript, pp. 13, 23 (emphasis added).  Counsel for Laurus was present at this hearing and raised no objection to the Debtors' statement that the Avnet PMSI Collateral was excluded from the Purchased Assets.  *See* April 2, 2009 Hearing Transcript, p. 1.  On that

8

same day, this Court entered the Sale Order.

12. The Sale Order Provides: "The Sale Motion is GRANTED by this Order and all objections thereto which have not been waived, withdrawn, or settled as reflected on the Docket of these cases or the record of the Sale Hearing are hereby overruled." Sale Order ¶ 1. The Avnet Limited Objection was one such objection that was settled on the record of the Sale Hearing where the Debtor clearly acknowledged that the Purchased Assets were to exclude all Avnet PMSI Collateral. Furthermore, the Sale Order provides:

> This Court shall retain exclusive jurisdiction to implement and effectuate the provisions of this Order and the APA and to resolve any issue or dispute concerning the interpretation, implementation or enforcement of this Order and the APA and any subsequent agreement as required to be entered into between the Debtors and the Purchaser pursuant to this Order, or the rights and duties of the parties hereunder or thereunder, including, without limitation, any issue or dispute concerning the transfer of the Purchased Assets free and clear of liens, claims, interest or encumbrances.

Sale Oder ¶26.

13. On April 16, 2009, counsel for Avnet transmitted changes to the APA to counsel for the Debtors. These changes were intended to clarify the APA so that the term Purchased Assets did not include Avnet PMSI Collateral. Contrary to the assurances made by the Debtors at the April 2, 2009 hearing, the changes requested by Avnet were never made to the APA.

*Avnet's Motion to Compel*

14. Between October and December 2009, representatives of Avnet and representatives of the Debtors communicated about: (a) reconciling the amounts owed to Avnet pursuant to the Avnet PMSIs; and (b) transferring the Avnet PMSI Collateral to Avnet. Through those communications, Avnet learned that the Avnet PMSI Collateral: (a) was never segregated into the Debtor PMSI Account as required by the Stipulation; and (b) was apparently transferred to Laurus as part of the Purchased Assets in the Sale of the Debtors' estates, in contravention of the agreement with Avnet set forth on the record at the Sale Hearing.

9

15. Thereafter, in January and February 2010, counsel for Avnet and counsel for Laurus traded communications in an attempt to resolve this matter and have the Avnet PMSI Collateral returned to Avnet. Avnet provided copies of the PMSI documentation, hearing transcripts, relevant pleadings and email correspondence, and copies of the reconciliation of the amounts due to Avnet to counsel for Laurus.

16. On February 24, 2010, Avnet filed its Motion to Compel after Laurus failed to return the Avnet PMSI Collateral to Avnet.

17. On March 27, 2010, Laurus filed its *Objection of Laurus Master Fund, Ltd., Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, And/Or Psource Structured Debt Limited To Motion Of Secured Creditor Avnet, Inc., To Enforce Sale Order To Specifically Exclude Avnet PMSI Collateral From Sale Assets And To Compel Laurus Master Fund, Ltd., Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, And/Or Psource Structured Debt Limited, To Turn Over Avnet Collateral* (the "**Laurus Objection**"). [Docket No. 379].

18. The hearing on Avnet's Motion to Compel was continued several times to May 19, 2010. *In re Managed Storage*, 2012 WL 5921723 at *1, 6 (Bankr. D. Del. November 26, 2012).

*The Stipulation and Release*

19. On May 17, 2010, the *Notice of Agenda of Matters Scheduled for Hearing on May 19, 2010* (the "**Agenda**") "was served on all parties in interest, including the Committee." *Id.* at *6. The only contested matter scheduled as going forward at that hearing was Avnet's Motion to Compel. *Id*. The Agenda clearly stated that Avnet's counsel had circulated a proposed stipulation which the parties were attempting to finalize prior to the hearing on Avnet's Motion to Compel. *Id.*

20. Pursuant to the Stipulation and Release, Laurus agreed to pay Avnet the reduced sum of $975,000 and Laurus, Avnet and the Debtors granted each other mutual general releases. Specifically, the Stipulation contained the following release:

> Debtors for themselves and their respective heirs, executors, administrators, representatives, officers, directors, agents, attorneys, subsidiaries, affiliates, divisions, parents, predecessors, successors and assigns hereby:
>
> (a) release and discharge Avnet and each of its heirs, representatives, officers, directors, employees, agents, attorneys, subsidiaries, affiliates, parents, predecessors, successors and assigns, from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, executions, claims and demands relating to the Debtors and their Chapter 11 cases only, in law or equity, including but not limited to any claims relating to the Avnet PMSI collateral; and

Stipulation and Release ¶4.

21. On May 19, 2010, he Debtors served an *Amended Notice of Agenda of Matters Scheduled for Hearing on May 19, 2010* (the "**Amended Agenda**") "on all parties in interest." *In re Managed Storage*, 2012 WL 5921723 at *6. The Amended Agenda stated that the parties were submitting a stipulation resolving the matter under certification of counsel and that the hearing had been cancelled as a result. *Id.* Avnet filed a certification of counsel attaching the Stipulation and Release which requested that the Court enter the proposed form of Order approving the Stipulation and Release. *Id.*

22. That same day, this Court entered the Order approving the Stipulation. *Id.* [Docket No. 400]. According to the affidavit of service, the Order was served on all parties in interest, including the Committee on May 20, 2010. *Id.* No one appealed or otherwise challenged the Order approving the Stipulation and Release.

### *Conversion of the Debtors' Cases to Chapter 7 and the Trustee's Adversary Proceeding Against Avnet*

23. On November 3, 2010, this Court converted the Debtors' cases to Chapter 7 of the

11

Bankruptcy Code and appointed Jeoffrey L. Burch as the Chapter 7 Trustee (the "**Trustee**").

24. Despite the fact that the Debtors had released Avnet from any and all claims "relating to the Debtors and their Chapter 11 cases," Stipulation and Release ¶4, on January 12, 2012, the Trustee filed an adversary proceeding to avoid and recover $5,444,541.11, allegedly paid to Avnet within 90 days of the Debtors' bankruptcy filing, as a preference pursuant to Sections 547 and 550 of the Bankruptcy Code, in the case styled *Burtch v. Avnet, Inc.*, United States Bankruptcy Court for the District of Delaware Adversary Proceeding No. 12-50026-MFW. *See* Adversary Complaint ¶¶ 15-34 and Exhibit A thereto.

25. On March 16, 2012, counsel for Avnet sent correspondence and left a telephone message for counsel for the Trustee, informing him of the Stipulation and Release, and in the interest of avoiding unnecessary cost associated with motion practice, requesting that the adversary proceeding be dismissed. Counsel for Avnet received no response.

26. On March 30, 2012, Avnet moved to dismiss the Adversary Complaint based on the releases contained in the Stipulation and Release pursuant to FED. R. CIV. P. 12(b)(6). The Trustee filed his opposition to Avnet's Motion to Dismiss on April 4. 2012.

27. On November 26, 2012, this Court granted Avnet's Motion to dismiss and ruled that: (1) the Stipulation and Release was binding on the Trustee; (2) the release covered preference claims under Sections 547 and 550 of the Bankruptcy Code; and (3) there was nothing defective in the notice pursuant to which this Court issued its order approving the Stipulation and Release. *In re Managed Storage*, 2012 WL 5921723 at * 3-8.

28. On December 10, 2012, the Trustee appealed this Court's decision to the United States District Court for the District of Delaware (the "**District Court**"). The parties completed appellate briefing in the District Court on August 13, 2013.

29. On January 16, 2015, the District Court issued its decision reversing and

remanding the adversary proceeding back to this Court. The District Court affirmed this Court's conclusions that: (1) the Trustee is bound by the terms of the Stipulation and Release, and (2) and that the release included preference actions under Sections 547 and 550 of the Bankruptcy Code. *Burtch v. Avnet*, 2015 WL 243183 at *4-5. However, the District Court ruled that this Court "committed clear error of fact" and "legal error" [because …] and ordered that this Court "assess the Stipulation and Release by the standards of *In re Martin*, [91 F.3d 389, 393 (3d Cir. 1996)]." *Id.*

30. Accordingly, on remand, Avnet re-presents the Stipulation and Release to this Court and respectfully requests that it be approved pursuant to FED. R. BANKR. P. 9019 and the factors set forth in *In re Martin*.

## RELIEF REQUESTED AND BASIS THEREFOR

I. **THIS COURT SHOULD APPROVE THE STIPULATION AND RELEASE AND REINSTATE ITS DISMISSAL OF THE ADVERSARY PROCEEDING AGAINST AVNET.**

   A. **LEGAL STANDARD.**

31. FED. R. BANKR. P. 9019(a) provides, in pertinent part, that "[o]n motion . . . and after notice and a hearing, the court may approve a compromise or settlement." Settlement agreements are generally favored in a bankruptcy setting because they minimize litigation and expedite the administration of the bankruptcy estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (*citing* 9 Lawrence P. King, Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). The decision to approve the compromise is within the discretion of the Court and is warranted where the settlement is found to be reasonable and fair in light of the particular circumstances of the case. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). The settlement does not need to be the best that could have been achieved, but need only fall within the reasonable range of litigation

13

possibilities. The settlement merely must not be the lowest point in the range of reasonableness. *See In re Exide Technologies*, 303 B.R. 48, 68 (Bankr. D. Del. 2003).

32. The District Court instructed this Court to consider the following *Martin* factors in its re-evaluation of the Stipulation and Release, which are: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin,* 91 F.3d. at 393. As this Court previously determined, consideration of these factors clearly supports approval of the Stipulation and Release.

### B. THE SETTLEMENT IS IN THE BEST INTERESTS OF THE DEBTORS' ESTATES

#### 1. Probability Of Success In Litigation.

33. There is little doubt as to Avnet's probability of success in any litigation seeking to enforce the Sale Order and/or for contempt against the Debtors for failing to comply with this Court's order requirement them to segregate Avnet's PMSI Collateral. Avnet had a valid purchase money security interest securing certain collateral of the Debtors. Exhibit B. The Debtors did not dispute this, but rather agreed to be bound by an order requiring them to segregate Avnet's PMSI Collateral and specifically excluded it from the assets that the Debtors were selling. [Docket Nos. 195, 213]. It is also undisputed that the Debtors failed to comply with this Court's order requiring the segregation, and instead transferred Avnet's PMSI Collateral to Laurus. Accordingly, this factor weights in favor of approval of the Stipulation and Release which eliminated the need for this litigation that would subject the estates to extensive costs and potential damages beyond Avnet's secured claim.

34. As it relates to the adversary proceeding, although the Trustee alleges $5.4 million in recoverable preferences, the exposure is actually significantly less after the application of new value and/or other defenses. Avnet, the Debtors and Laurus extensively negotiated the terms of

14

the Stipulation and Release including the amount that would be paid to Avnet and general releases among the parties. *See* Exhibits A, E. A general release is what Avnet specifically bargained for. The Debtors considered the implications of a general release and properly decided it was in the best interests of the estates to include it in the Stipulation and Release. Accordingly, there is no reason to disturb the resolution of the Motion to Compel to which the Debtors, Avnet and Laurus agreed.

### 2.     Difficulties In Collection.

35.     Difficulties in collection were and are paramount. Since the Debtors violated this Court's order requiring segregation, Avnet presumes that its PMSI collateral was comingled with assets sold to Laurus. At the time of filing its Motion to Compel Avnet's ability to collect those funds from a Cayman Island and a Guernsey entity was severely impaired, as the ability to compel disgorgement is limited by international legal authority. Chances of collection now are virtually nil. Of the various buyers, the Laurus Master Fund, Ltd., is in (and may have completed) voluntary liquidation in the Cayman Islands. Kitty Hawk, Inc., SEC Schedule 13G, December 31, 2008, p. 2. Furthermore, PSource Structured Debt Limited is in (and may have completed) voluntary windup in Guernsey, U.K. Biovest International, Inc., SEC Schedule 13D, July 18, 2013, p. 11. At this late date, it would be impossible for Avnet to find, let alone collect, the total of its PMSI Collateral under these circumstances. This factor, too, weighs in favor of approval of the Stipulation and Release.

### 3.     Complexity, Expense, Inconvenience and Delay.

36.     Pursuing litigation to enforce the Sale Order and/or seeking contempt against the Debtors for their willful violation of this Court's order, engenders unnecessary expense, extreme inconvenience and unnecessary delay. In addition to attorneys' fees and costs associated with litigating the Debtors' failure to segregate Avnet's PMSI Collateral, additional expense will be

incurred in collection attempts, as the Debtors are no longer a going concern, and that least two of the buyers that received the PMSI Collateral are in the process of liquidation. Delay creates an entirely new level of complexity. If this Court does not approve the Stipulation and Release, it would be impossible to restore Avnet to the position it held as of May 19, 2010 and allow it to litigate its Motion to Compel. The settlement has been "substantially consummated" making the settlement approval ostensibly equitably moot.[3] Over five years have elapsed since these secured claims became due and owing, which no one disputes. This factor also weighs in favor of approval of the Stipulation and Release.

### 4. Paramount Interests Of The Creditors.

37. The creditors are well served by the approval of the Stipulation and Release. Avnet had a $1.4 million secured claim which took top priority. Avnet agreed to compromise that claim close to two thirds of its value. But for the compromise, the Debtors' estates would also face contempt charges for willful violation of a Court order, which further increases the potential liability of the estates. The general release protected the estates from the litany of claims the Debtors could have faced, from Avnet and Laurus, as a consequence of their failure to segregate the Avnet PMSI Collateral. Furthermore, the value of the preference claim that the Debtors compromised was far less than alleged, and would not significantly affect the creditors. Therefore, all *Martin* factors weigh in favor of approving the Stipulation and Release.

---

[3] Although not directly applicable, equitable mootness is relevant by analogy. Equitable mootness is a doctrine applicable to appeals that are taken post-confirmation. *In re Semcrude, L.P.*, 728 F.3d 314, 317 (3d Cir. 2013) ("equitable mootness comes into play in bankruptcy . . . after a plan of reorganization is approved"). "In general terms. Equitable mootness dictates that an appeal should be dismissed. Even if a court has jurisdiction and is in a position to grant relief, if 'implementation of that relief would be inequitable.'" *In re Zenith Electronics Corp.*, 329 F.3d 338, 343 (3d Cir. 2003). In the present case, the Trustee never appealed the order approving the Stipulation and Release nor did he ever seek to stay the consummation of the resolution of the Motion to Compel. Moreover, if the Stipulation and Release are not approved, at this date, it would be virtually impossible for Avnet to litigate its Motion to Compel and contempt against the Debtors. Avnet's PMSI Collateral was improperly transferred to Laurus and now some of those Laurus entities are liquidating and/or have completed that process. There is simply no telling where the Avnet PMSI Collateral is now, if it even exists, and, accordingly, it is very difficult to fashion a remedy to address the Debtors' failure to abide by this Court's order.

BOS 47604758v4

38. Avnet therefore submits that the Stipulation and Release represents a fair and reasonable resolution of the disputes regarding its Motion to Compel. For the foregoing reasons, Avnet submits that the Debtors properly exercised their business judgment in the negotiation and execution of the Stipulation and Release, the settlement falls well within the range of reasonableness required for approval of the Stipulation and Release, and that approval of the Stipulation and Release is and was in the best interests of the Debtors' estates. Avnet therefore requests that this Court affirm its order approving the Stipulation and Release in all respects.

## NOTICE

39. Notice of this Motion has been given to (i) the Chapter 7 Trustee, (ii) the United States Trustee for the District of Delaware; (iii) counsel to Laurus; and (iv) parties who have entered an appearance and request for service of papers pursuant to FED. R. BANKR. P. 2002. In light of the nature of the relief requested herein, Avnet submits that no other or further notice is required.

## CONCLUSION

WHEREFORE, Avnet respectfully requests that this Court grant the relief requested in this Motion and such other and further relief as the Court deems just and proper.

Dated: February 23, 2015                    GREENBERG TRAURIG, LLP

/s/ Dennis A. Meloro
Dennis Meloro (DE Bar No. 3488)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360

Email: melorod@gtlaw.com

-and-

Annapoorni R. Sankaran, *pro hac vice*
1000 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
Email:sankarana@gtlaw.com

Counsel for Avnet, Inc.

BOS 47604758v4