## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| ManagedStorage International, Inc. *et al.,*[1] | ) | Case No. 09-10368 (MFW) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | **Objection Deadline: March 11, 2015 @ 4:00 p.m.** |
| | ) | **by agreement of counsel** |
| | ) | **Hearing Date: March 18, 2015 at 2:00 p.m.** |

## OBJECTION OF CHAPTER 7 TRUSTEE TO AVNET, INC.'S RULE 9019 MOTION TO APPROVE STIPULATION AND RELEASES AMONG THE DEBTORS, SECURED CREDITOR AVNET, INC., AND LAURUS RELATED PARTIES

Jeoffrey L. Burtch, Chapter 7 trustee for the bankruptcy estates (the "Estates") of

ManagedStorage International, Inc., et al., hereby objects (the "Objection") to *Rule 9019 Motion*

*To Approve Stipulation And Releases Among The Debtors, Secured Creditor Avnet, Inc., And*

*Laurus Related Parties* (the "Avnet Motion") [D.I. 663] and in support of the Objection

respectfully represents that:

### JURISDICTION

1.     This Court has jurisdiction to consider the Avnet Motion pursuant to 28 U.S.C.

§1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this district is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, and their respective addresses, are: ManagedStorage International, Inc. (6252,) 12303 Airport Way, Suite 250, Broomfield, CO 80201; Incentra Solutions, Inc. (3960), 1140 Pearl Street, Boulder, CO 80302; Incentra Solutions of California, Inc. (3782), 4122 Sorrento Valley Blvd., Suite 102, San Diego, CA 92121; Network System Technologies, Inc. (8009), 2050-80 Finley Drive, Lombard, IL 60148; Incentra Solutions of the Northeast, Inc. (8372), 1140 Pearl Street, Boulder, CO 80302; Incentra Solutions of the Northwest, Inc. (8930),9020 SW Washington Square Road, Suite 500, Portland, OR 97223; Sales Strategies, Inc. (0515), 6 Bridge Street, Unite 5, Metuchen, NJ 08840; and Incentra Solutions International, Inc. (1239), 15 Old Bailey, London EC4M 7EF, United Kingdom.

## BACKGROUND

2.      On February 4, 2009, Managed Storage International, Inc. and its related affiliates (the "Debtors") filed voluntary petitions pursuant to Chapter 11 of the Bankruptcy Code. [D.I. 1].

3.      On March 5, 2009, a hearing was held regarding the DIP financing (the "March 5 Hearing").

4.      At the March 5 Hearing, the Bankruptcy Court denied certain parties' request to split the proceeds of the avoidance action fifty-fifty, stating:

> I do, however, have a problem with a lien on avoidance actions. Given the situation today, there's no assurance that unsecured are going to get anything.  I think the sale process as it currently states [*sic*], although I'm gratified to see that it appears to be going very successfully and there's hope that there will be a very active auction, I think that where I am today there's no guarantee that there will be anything for the unsecured and, therefore, I'm not prepared to grant any lien on avoidance actions to either of the lenders . . . if the lien on avoidance actions is eliminated, I would be prepared to grant the DIP lending on a final basis.

*March 5 Hearing Transcript*, p. 119-120. [D.I. 135].

5.      On April 2, 2009, the Debtors, the Creditors' Committee and Avnet, Inc. ("Avnet") entered into and filed a *Stipulation Between Debtors, The Official Committee of Unsecured Creditors, and Secured Creditor, Avnet, Inc., Regarding Purchase Money Security Interest* (the "PMSI Stipulation" [D.I. 195].   On April 14, 2009, the Court entered an order approving the PMSI Stipulation [D.I. 213].

6.      The PMSI Stipulation included the following provisions:

> 1.      Avnet agrees to maintain any and all funds it receives from accounts receivable that are subject to the December PMSI in a second segregated internal Avnet account (the "December PMSI Account").

> 3.      Avnet agrees that it will not apply or otherwise use the funds in the October and December PMSI Accounts until its dispute with the Committee has been resolved.

>    4.    The Debtors agree that they will maintain any and all funds they receive from accounts receivable that are subject to the December PMSI in a segregated account (the "Debtor PMSI Account").
>
>    5.    The Debtors agree that they will not use the funds contained in the Debtor PMSI Account.
>
>    . . .

*PMSI Stipulation*, p. 2-3.

7.    On February 24, 2010, *Avnet filed its Motion Of Secured Creditor Avnet, Inc., To Enforce Sale Order To Specifically Exclude Avnet PMSI Collateral From Sale Assets And To Compel Laurus Master Fund, Ltd., Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, And/Or Psource Structured Debt Limited, To Turn Over Avnet Collateral* (the "Avnet Enforcement Motion") [D.I. 371].

8.    The Avnet Enforcement Motion sought to compel the Laurus Parties to turn over the collateral subject to Avnet's purchase money security interest (the "Avnet PMSI Collateral") to Avnet. [D.I. 371]. The Avnet Enforcement Motion did not request that any action be taken by the Debtors as the Debtors were no longer in possession of the Avnet PMSI Collateral. [D.I. 371].

9.    The Avnet Enforcement Motion was resolved by the parties via the submission to the Bankruptcy Court of the *Stipulation and Releases Among Debtors, Secured Creditor, Avnet, Inc., and Laurus Related Parties Regarding Purchase Money Security Interest Collateral* (the "Stipulation and Release").

10.    Regarding the release granted by the Debtors to Avnet, the Stipulation and Release reads as follows:

>    the Debtors for themselves and their respective heirs, executors, administrators, representatives, officers, directors, agents, attorneys, subsidiaries, affiliates, divisions, parents, predecessors and assigns hereby: (a) release and discharge Avnet and each of its heirs, representatives,

officers, directors, employees, agents, attorneys, subsidiaries, affiliates, parents, predecessors, successors and assigns, from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, executions, claims and demands relating to the Debtors and their Chapter 11 cases only, in law or equity, including but not limited to any claims relating to the Avnet PMSI collateral.

*Stipulation and Release*, ¶ 4(a).

11.     On November 3, 2010, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order converting the Debtors' cases to cases under Chapter 7 of the Bankruptcy Code. [D.I. 453].

12.     On November 4, 2010, Jeoffrey L. Burtch was appointed as interim chapter 7 trustee of the Debtors' estates, and following the conclusion of the meeting of creditors under Section 341 on January 18, 2011, continues to serve as chapter 7 trustee pursuant to Section 702(d) of the Bankruptcy Code. [D.I. 479]

13.     On January 12, 2012, the Trustee initiated an Adversary Proceeding 12-50026 (MFW) (the "Adversary Proceeding") by filing his complaint (the "Complaint") against Avnet, Inc. seeking to avoid and recover $5,444,541.11 under Sections 547 and 550 of the Bankruptcy Code (the "Preference Claims"). [AP D.I. 1]

14.     On March 30, 2012, Avnet filed its Motion to Dismiss the Adversary Proceeding (the "Motion to Dismiss") and brief in support thereof, inappropriately asserting the affirmative defense of release. [AP D.I. 5]. Avnet's "release" defense was based upon its assertion that the Stipulation and Release, entered into among the Laurus Parties, Avnet, and the Debtors, included the Preference Claims despite such a release not being disclosed to the Bankruptcy Court.

15.     On November 26, 2012, the Bankruptcy Court entered its opinion (the "Motion to Dismiss Opinion") and Order (the "Dismissal Order") granting Avnet's Motion to Dismiss. [AP D.I. 18].

16.     On December 10, 2012, the Trustee appealed the Dismissal Order to the United States District Court for the District of Delaware (the "District Court").

17.     On January 16, 2015, the District Court issued its Memorandum Order reversing and remanding the Dismissal Order back to the Bankruptcy Court due to the fact that 1) "no notice was provided of the terms of the Stipulation and Release," and 2) the Bankruptcy Court did not evaluate the propriety of the compromises made in the Stipulation and Release under the standards set forth in *In re Martin*. *See Burtch v. Avnet, Inc.*, 2015 WL 243183 (D. Del. January 16, 2015) (hereinafter referred to as the "Memorandum Order").

18.     On February 23, 2015, Avnet filed the Avnet Motion seeking approval of the alleged compromises contained in the Stipulation and Release. [D.I. 663].

19.     The Memorandum Order was docketed in this Bankruptcy Court on February 24, 2014. [AP D.I. 33].

## THE OBJECTION AND REASONS THEREFOR

### A.      AVNET DOES NOT HAVE STANDING TO FILE A 9019 MOTION

Avent asserts their right to file the Avnet Motion as a party in interest pursuant to *In re TSIC, Inc.*, 393 B.R. 71, 77-78 (Bankr. D. Del. 2008).  *See Avnet Motion* at fn.2.  Avnet's reliance on that case is misplaced.  In *In re TSIC*, the Official Committee of Unsecured Creditors entered into a settlement agreement with the purchaser of the Debtor's assets resolving the Committee's objection to the auction process and the sale.  The Committee subsequently filed a motion to approve the settlement agreement under § 105(a) of the Bankruptcy Code and Fed. R. Bankr. P. 9019. The Debtor did not object to the Committee's motion or settlement. The Bankruptcy Court, without any legal analysis, over the objection of the United States Trustee, determined that the Committee had standing to seek approval of the settlement, because "[i]n

other cases addressing the substantive issue here, [approval of general unsecured creditors' trusts,] particularly *World Health,* the committee sought its settlement pursuant to Rule 9019."[2] *Id.* at 78. The Bankruptcy Court further stated, "[m]oreover, as discussed below, the Settlement is in the best interest of the Debtor's estate as well as the general unsecured creditors." *Id.* In the instant case, the Avnet Motion is not brought by the Creditor's Committee, and as discussed *infra*, the Stipulation and Release is not in the best interest of the Debtors' Estates or the general unsecured creditors.

Fed. R. Bankr. P. 9019(a) provides in relevant part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." On its face, this language grants authority to seek approval of a compromise or settlement to a trustee or, by virtue of 11 U.S.C. § 1107(a), a debtor-in-possession. Only in "extraordinary situations" will a party in interest other than a trustee be permitted to seek approval over the objections of a trustee. 10 COLLIER ON BANKRUPTCY ¶ 9019.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)

While certain courts have held that under extraordinary circumstances, a bankruptcy court may authorize an entity other than a trustee to pursue and settle claims which belong to the bankruptcy estate, such authority is not unlimited. *In re Guy F. Atkinson Co. of Calif.*, 242 B.R. 497, 502 (9th Cir. B.A.P. 1999). As the court noted in *Guy F. Atkinson Co. of Calif.*, *supra*, two prerequisites must be met before an entity other than the trustee or debtor-in-possession may pursue or settle estate claims:

---

[2] *In re World Health Alternatives, Inc.,* 344 B.R. 291 (Bankr.D.Del.2006) involved the <u>Debtor's</u> Motion to approve a settlement agreement among the Official Committee of Unsecured Creditors, the Debtors, and CapitalSource Finance, LLC. (emphasis added).

(a)     First, there must be "sufficient reason," such as

    (i)      the entity is pursuing interests common to all creditors;

    (ii)     the entity has been appointed to enforce a confirmed plan;

    (iii)    the trustee  or debtor-in-possession has no economic incentive to pursue a claim; or

    (iv)    the trustee or debtor-in-possession has failed to fulfill the duty to prosecute actions on behalf of the estate.

*Id.* (citations omitted).

(b)     Second,

> [T]he entity's interests and incentives in settling the claims must be consistent with maximizing the estate for all creditors.  At its base, the approval of a settlement turns on the question of whether the compromise is in the best interest of the estate. *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986); *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. PA. 1986).  The trustee and debtor in possession, as fiduciaries on behalf of the creditors of the estate, *see In re Martin*, 91 F.3d 389, 394 (3d Cir. 1996), have the obligation and are in the best position to negotiate settlements that will best serve the interests of all the creditors.  *See* § 704 (duties of trustee).  An entity that is authorized to act in the trustee's stead in negotiating and proposing settlement should have similar loyalties and duties.

242 B.R. at 502-03.  *See also*, *Smart World Technologies, LLC v. Juno Online Servs., Inc.* (*In re Smart World Technologies, LLC*), 423 F. 3d 166, 180 (2d Cir. 2005) ("As a general matter, other parties to a bankruptcy proceeding have interests that differ from those of the estate and thus are not suited to act as the estate's legal representatives."), *accord Liani v. Baker (In re Baker)*, 374 B.R. 498 (Bankr. E.D.N.Y. 2007).

In filing the Avnet Motion, Avnet is unquestionably acting in its own interests, and not on behalf of the bankruptcy estate or all creditors, to pursue the approval of the Stipulation and Release that contains a release of liability for the Preference Claims.  As a result, Avnet lacks standing to file the Avnet Motion pursuant to Bankruptcy Rule 9019.

**B.      THE ORDER APPROVING THE STIPULATION AND RELEASE IS VOID.**

In its Memorandum Order, the District Court determined that "it appears that no notice was provided of the terms of the Stipulation and Release, and particularly of the broad language used in the general release provision" and that "the record fails to demonstrate that there was any notice[.]" *Memorandum Order*, at *5. Avnet did not appeal these determinations and instead seeks to have the Bankruptcy Court approve the Stipulation and Release. Thus, there is no dispute that adequate notice was not provided.[3]

A judgment obtained without proper notice is void. *See Hacienda Heating & Cooling, Inc. v. United Artists Theatre Circuit, Inc. (In re United Artists Theatre Company)*, 406 B.R. 643, 648 (Bankr.D.Del. 2009) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (noting that "[d]ue process requires that the defendant be given adequate notice of the suit" and that "[a] judgment rendered in violation of due process is void")). A void judgment may be attacked at any time, regardless of statute of limitations and other deadlines. *See, e.g., United States v. One Toshiba Color TV.*, 213 F.3d 147, 157 (3d Cir.2000) (noting that if a final judgment is void, "no passage of time can transmute [it] into a binding judgment" and further stating that "a court may always take cognizance of a judgment's void status whenever a Rule 60(b) motion is brought").

Therefore, the order approving the Stipulation and Release is void.

**C.      THE TRUSTEE IS NOT BOUND BY THE STIPULATION AND RELEASE**

Avnet also misstates the District Court's holding in the Memorandum Order as it relates to the binding effect of the Stipulation and Release. Avnet states that "[t]he District Court

---

[3] Furthermore, it should be noted that Avnet only served notice of the Avnet Motion on the Trustee, the United States Trustee for the District of Delaware, counsel to Laurus, and the parties on the Rule 2002 service list. In light of the requirements of Rules 9019 and 2002, the Trustee questions whether this notice is sufficient considering Avnet's previous failure to notice the parties in interest of the Stipulation and Release.

affirmed this Court's conclusions that: (1) the Trustee is bound by the terms of the Stipulation and Release, and (2) and [*sic.*] that the release included the preference actions under Sections 547 and 550 of the Bankruptcy Code." *Avnet Motion*, ¶ 29 (citing *Memorandum Order,* at *4-5.) The District Court's actual determination regarding the binding effect of the Stipulation and Release as to the Trustee was simply that "the Trustee is not freed from the binding effect of the Stipulation and Release <u>based on lack of consideration</u>[.]" *Memorandum Order* at *3 (emphasis added).

The District Court continues, however, that it "finds merit, nonetheless, in the Trustee's contentions that adequate notice was not provided. The Trustee contends that the Stipulation and Release is invalid because it was not approved pursuant to Bankruptcy Rule 9019 and the standards set forth in *In Re Martin*." *Memorandum Order* at *4. Further in its analysis, the District Court states "[o]n the record before the Court, it appears that no notice was provided of the terms of the Stipulation and Release, and particularly of the broad language used in the general release provision." *Memorandum Order* at *5. Thus, the District Court agrees with the Trustee that the Stipulation and Release is invalid, not for lack of consideration, but because there was no notice and the Bankruptcy Court was not offered a chance to, and therefore did not, analyze the Stipulation and Release under the standards set forth in *In Re Martin*.

The Trustee is not bound by the Stipulation and Release as Bankruptcy Court approval was never obtained pursuant to Fed. R. Bankr. P. 9019. Furthermore, until the Avnet Motion, Bankruptcy Court approval pursuant to Fed. R. Bankr. P. 9019 was never pending.

The courts are divided on the issue of whether an agreement is binding on the parties pending approval by the Bankruptcy Court. *In re Filene's Basement, LLC, et al.*, 2014 WL 1713416, *6 (Bankr.D.Del. 2014) (citing *Pineo v. Turner (In re Turner)*, 274 B.R. 675, 679

(Bankr.W.D.Pa. 2002) (in turn citing to the collection of cases in *In re Frye*, 216 B.R. 166, 173-74 (Bankr.E.D.Va. 1997)) (emphasis added). The Court of Appeals for the Third Circuit specifically indicated in *Martin* and *Northview Motors* that it was not deciding that particular issue. *See In re Turner*, 274 B.R. at 679. However, an analysis of those cases is instructive.

In *Northview Motors, Inc. v. Chrysler Motors Corp.*, the Third Circuit states that the trustee's authority is limited as a matter of law to agreeing to settle subject to bankruptcy court approval. *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 352 (3d Cir. 1999). The trustee's act of agreeing to settle claims constitutes a sale of that claim, thus notice, hearing and bankruptcy court approval are required. *Id.* at 350-51. The Third Circuit in *Northview* stated that "we may assume, without deciding, that an agreement . . . is effective on execution subject to conditions subsequent –notice, a hearing, and a Court determination that the agreement is in the best interests of the estate." *Id.* at 351. It is therefore implied that without the "conditions subsequent" the agreement is not effective.

In *In re Martin*, the Third Circuit states that a trustee is prohibited from acting unilaterally and the trustee's actions are subject to complete disclosure and review by the Bankruptcy Court. *See In re Turner*, 274 B.R. at 679 (citing *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996)). The *Martin* trustee did not violate an agreement by allowing a trial of the underlying issues to proceed pending bankruptcy court approval of the settlement, nor did the trustee breach an agreement by not arguing in favor of the settlement in light of changed circumstances. *Id.*

The court in *In re Frye*, which provides the collection of cases cited in the *In re Turner* case, does note one distinguishing factor regarding the cases that have held that a settlement agreement was not binding absent bankruptcy court approval: the parties failed to give notice of

a motion to compromise a claim. *See In re Frye*, 216 B.R. at 173-74 (Bankr.E.D.Va. 1997); *See e.g In re Leslie Fay Cos., Inc.*, 168 B.R. 294, 305 (Bankr.S.D.N.Y. 1994) (parties failed to give notice of motion to interested parties); *In re Rothwell*, 159 B.R. 374, 379 (Bankr.D.Mass. 1993) (as there was no compliance with Rule 9019, from the point of view of the bankruptcy estate the settlement agreement is without effect) ; *In re Lloyd, Carr and Co.*, 617 F.2d 882, 885 (1st Cir. 1980) (contract alleged to be entered into was not approved pursuant to Rule 919 and the provisions of the Bankruptcy Act and was therefore not effective); *In re Pugh*, 167 B.R. 251, 253 (Bankr.M.D.Fla. 1994) (trustee did not make a motion to approve the compromise); *Rinehart v. Stroud Ford, Inc. (In re Stroud Ford, Inc.)*, 205 B.R. 722, 726-27) (Bankr.M.D.Pa. 1996) (finding that binding the estate to an agreement would only be fair after notice and a hearing as required by the Code).

Accordingly, Avnet's failure to file (or cause to be filed) a motion under Fed. R. Bankr. P. 9019 is fatal to its argument that the Stipulation and Release is binding on the Trustee.

## D. THE STIPULATION AND RELEASE MUST BE APPROVED UNDER FED. R. BANKR. P.  9019.

Assuming *arguendo* that Avnet does have standing to bring forth the Stipulation and Release for approval by the Bankruptcy Court, Avnet has certainly failed to meet the standards set forth in *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

As referenced above, Fed. R. Bankr. P. 9019(a) provides in relevant part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This Court may approve a settlement that is "fair and equitable." *See Protective Comm. For Indep. Stockhodlers of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968); *In re Nutraquest, Inc.*, 434 F.3d 639, 644, 646 (3d Cir. 2006).

In determining the fairness and equity of a compromise in bankruptcy, the Third Circuit requires a bankruptcy court to "apprise [ ] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimate [   ] the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." *In re Capmark Financial Group Inc.*, 438 B.R. 471, 514 (Bankr. D.Del. 2010) (citing *In re Penn Cent. Transp. Co.*, 596 F.2d 1127, 1146 (3d Cir. 1979). The ultimate inquiry is whether the compromise is fair, reasonable, and in the interest of the estate. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D.Del. 1998) (citing *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997)). "Under the 'fair and equitable' standard, [the court looks] to the fairness of the settlement to the other persons, i.e. the parties who did not settle." *In re Nutraquest, Inc.*, 434 F.3d at 645.

When considering the best interest of the estate, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal. *In re Martin*, 91 F.3d at 393 (citing *TMT Trailer Ferry*, 390 U.S. at 424-25.) In striking this balance, the Bankruptcy Court should consider: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interests of the creditors." *In re Martin*, 91 F.3d at 393 (citations omitted).

When considering the fairness, reasonableness and adequacy of a settlement, the Bankruptcy Court should examine the *Martin* factors in light of the present circumstances. *See Fry's Metals, Inc. v. Trustee for the Estate of RFE Industries, Inc. (In RFE Industries, Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002). For example, if there are no creditors involved then the Bankruptcy Court should substitute the paramount interests of the shareholders for the interests of the

creditors. *Id.* Likewise, the Bankruptcy Court should give less deference to the judgment of a former trustee (or debtor-in-possession) if the debtor is no longer in bankruptcy. *See Id; See also In re Filene's Basement, LLC*, 2014 WL 1713416, at *7, fn. 9. (Bankr. D.Del. 2014); *In re Turner*, 274 B.R. at 681 ("Where the situation has changed since the Settlement was negotiated, the Bankruptcy Court should examine the *Martin* factors in light of the present circumstances"). Accordingly, the Bankruptcy Court should looks at the fairness, reasonableness and adequacy of the Stipulation and Release as it currently impacts the Debtors' estates.

## E.    THE STIPULATION AND RELEASE CANNOT MEET THE MARTIN STANDARDS.

As set forth above, the Bankruptcy Court should look at the four *Martin* factors in the current circumstances. Accordingly, the Trustee will address each factor focusing on the impact on the chapter 7 estates currently. The Trustee will then address the issues raised by Avnet, if necessary.

### (1) The Probability of Success in Litigation.

The only litigation at stake currently is the Adversary Proceeding and the Preference Claims. Thus, the Bankruptcy Court should consider the Trustee's probability of success as it relates to the Adversary Proceeding. The probability of success in litigation favors rejection of the Stipulation and Release and allowing the Adversary Proceeding to move forward. The only support that Avnet provides under the present circumstances that purports to favor approval of the Stipulation and Release is an unsupported statement that the claims in the Adversary Proceeding are not worth as much as alleged.

As an initial matter, Avnet has refused to exchange any information regarding the Adversary Action. Despite offering no proof, formally or informally, to the Bankruptcy Court or the Trustee, Avnet makes baseless assertions that "the exposure is actually significantly less after

the application of new value and/or other defenses." *Avnet Motion*, ¶ 14. Avnet has not even provided the scope of what "significantly less" implies. The Bankruptcy Court should take note of the fact that the Preference Claims against Avnet total more than $5.4 million. The Bankruptcy Court cannot even begin to analyze the merits and potential success of the Trustee in the Adversary Proceeding until fulsome discovery has occurred and the Adversary Proceeding has progressed towards judgment or an appropriate settlement agreement.[4] This alone requires that the Stipulation and Release be rejected as it pertains to the Preference Claims.

Addressing the issues raised and assertions made in the Avnet Motion Section (I)(A)(1), the Trustee responds as follows:[5]

Avnet claims that there is little doubt as to Avnet's probability of success in any litigation seeking to enforce the Sale Order and/or contempt against the Debtors. As an initial matter, no contempt claims were filed against the Debtors, and no contempt claims are implicated against the Estates. Nor has Avnet described what those contempt claims would even resemble. Avnet asserts that "it is also undisputed that the Debtors failed to comply with this Court's order requiring the segregation [of the PMSI Collateral], and instead transferred Avnet's PMSI Collateral to Laurus." *Avnet Motion*, ¶ 33. While the Debtor ultimately conceded that the PMSI Collateral was transferred to the Laurus Parties, Avnet provides no evidence of how or why this happened.

---

[4] In light of the lack of evidentiary record relating to most or all of Avnet's assertion, including the underlying value of the Preference Claims and the extent of the Debtors' liability for contempt, the Trustee intends to serve discovery requests upon Avnet in conjunction with this Objection. The Trustee further requests that the Bankruptcy Court permit full discovery on the issues raised herein.

[5] Avnet's claims that the Stipulation and Release eliminated substantial litigation is further addressed in Section E(4), *infra*.

Avnet incorrectly states that it is undisputed that the Debtors failed to comply with the Bankruptcy Court's order requiring segregation. In fact, the Laurus Parties, in their objection (the "Laurus Objection") to the Avnet Enforcement Motion filed against the Laurus Parties only, stated quite clearly: "the collateral at issue appears to have been inadvertently used in the Debtors' operations and thereafter transferred to the purchaser subject to Avnet's liens notwithstanding the parties' intention to exclude the assets from the sale and escrow the cash proceeds of Avnet's collateral. *See Laurus Objection*, ¶ 2. [D.I. 379].

Laurus further asserted that the "[Laurus Parties] concede that Avnet, the Committee and the Debtor entered into an escrow arrangement pursuant to which the proceeds of Avnet's collateral were to be set aside pending the resolution of Avnet's purported liens and claims. . . Upon information and belief, however, all of the proceeds of Avnet's collateral had already been collected by the Debtors before the escrow arrangement was entered into on April 1, 2009 and thereafter approved by the Court. Accordingly, to the extent the proceeds of Avnet's collateral were received and used in the Debtors' operations there were no proceeds available to escrow." *Laurus Objection*, ¶12. The Laurus Parties iterate several times that the transfer of the Avnet PMSI Collateral was inadvertent or happened prior to the agreement to escrow. *See Laurus Objection*, ¶¶ 13-15, 20. Thus, the only explanation on record of why the PMSI Collateral was transferred to the Laurus Parties is that it was either done by mistake, or that the PMSI Collateral was disposed of prior to the agreement to escrow the PMSI Collateral proceeds.

Despite its claims that Avnet, the Debtors, and Laurus "extensively negotiated the terms of the Stipulation and Release including the amount that would be paid to Avnet and general release among the parties[,]" Avnet provides no evidence of these extensive negotiations. In fact, the <u>Exhibit E</u> attached to the Avnet Motion only shows that the Laurus Parties and Avnet reached

a settlement agreement on 7:52 A.M. on April 13, 2010, and that less than four hours later Avnet

had spoken with Debtor's counsel and expressed Avnet's desire to have the Debtors join the

Avnet-Laurus settlement. *Avnet Motion*, ¶ 34, Exhibit E. Avnet has not provided any evidence as

to the positions of Laurus, Avnet, or the Debtors as to why Avnet agreed to take a lesser amount,

or even if Avnet was not entitled to all or part of the Avnet PMSI Collateral as Avnet alleged.

    **(2) Difficulties in Collection.**

    Similar to the first factor, the only relevant considerations for the Bankruptcy Court as it

relates to the present Avnet Motion is whether or not the Trustee or the Estates will have

difficulty in collecting any judgment in the Adversary Proceeding. The difficulties that Avnet

may have now, or might have had contemporaneously with Stipulation and Release, are

irrelevant. Should the Trustee succeed in the Adversary Proceeding, the difficulties in collecting

would be non-existent. Avnet is a publicly traded company with a market capitalization of

approximately $6 billion. Furthermore, Avnet has made no claim that the chapter 7 estates would

have any difficulties in collecting.

    However, in order to address the issues raised and assertions made in the Avnet Motion

Section (I)(A)(2), the Trustee responds as follows:

    Avnet has not provided any evidence of difficulties in collecting from the Laurus Parties.

Avnet did not provide any information that suggests that all of the relevant members of the

Laurus Parties are currently judgment-proof or liquidated and instead only identifies one relevant

party that may have liquidated. Furthermore, the Avnet Enforcement Motion was filed strictly

against the Laurus Parties, and in the end the Laurus Parties paid $975,000.00 in order to settle

Avnet's claims. Avnet was able to collect most of the monies Avnet claims it was owed from the

Laurus Parties. Ultimately, the difficulties of Avnet are irrelevant with regard to approval under

Fed. R. Bankr. P. 9019. Thus, should the Bankruptcy Court consider the difficulties Avnet might have had in collecting from the Laurus Parties, either then or now, Avnet has still failed to show how it is relevant or favors approval of the Stipulation and Release as it pertains to the Preference Claims.

### (3 ) The Complexity Of The Litigation

The *Nutraquest* Court noted that "[i]t is axiomatic that settlement will almost always reduce the complexity and inconvenience of litigation. The balancing of the complexity and delay of litigation with the benefits of settlement is related to the likelihood of success in that litigation." *Nutraquest*, 434 F.3d at 646. Accordingly, the Bankruptcy Court should look at the nature of the Adversary Proceeding and the complexities associated therewith, discussed in Section E(1) *supra*. Until such time as the Adversary Proceeding advances, the Bankruptcy Court cannot be provided with any details as to the complexities and expenses associated therewith. Thus, the Bankruptcy Court must reject the Stipulation and Release as it pertains to the Preference Claims and permit the Trustee to proceed with the Adversary Proceeding.

Again Avnet asserts its own difficulties in collecting and pursuing litigation and collection. This, while possibly unfortunate for Avnet, is irrelevant as to the ultimate approval of the Stipulation and Release. Furthermore, rejection of the Stipulation and Release as it relates to the general release does not necessarily require that Avnet disgorge the $975,000.00 received from the Laurus Parties. It simply means that the waiver and release of the Preference Claims is rejected and that the Adversary Proceeding may proceed. These issues are discussed in further detail in Section E(1) *supra*. and Section E(4) *infra*.

**(4) The Paramount Interests of the Creditors.**

In order to establish the paramount interests of the creditors, the Bankruptcy Court must analyze the impact of the Stipulation and Release under the current circumstances. Until proven otherwise, Avnet is liable to the Estates for the Preference Claims amounting to more than $5 million. As explained in further detail below, if Avnet were to press its illusory contempt claim against the Debtors, and succeeded in those claims, Avnet would be entitled to no more than an unsecured claim against the Estates. Avnet's prospective "damages" can be no more than the approximately $350,000 that Avnet allegedly compromised on the Avnet PMSI Collateral. Thus, there is no question that the creditors of the Estates, exchanging a potential $350,000 unsecured claim against the Estates for $5 million, would benefit from the rejection of the Stipulation and Release as it relates to the Preference Claims.

Although the Bankruptcy Court should look at the current circumstances in determining the *Martin* factors, a review of the history is instructive.

The Avnet Enforcement Motion reflected a dispute between two parties: Laurus and Avnet. The Debtors and the Laurus Parties agreed through the PMSI Stipulation that the Avnet PMSI Collateral, including any proceeds received by the Debtors from the Avnet PMSI Collateral, would be segregated for the benefit of Avnet. Ultimately, the Laurus Parties took possession of the Avnet Collateral and refused to remit payment to Avnet pursuant to the PMSI Stipulation. The Avnet Enforcement Motion sought no relief from the Debtors and was limited to a request that the Laurus Parties turnover what Avnet asserted was rightfully Avnet's property. Inexplicably, according to Avnet, a resolution of this limited dispute solely between the Laurus Parties and Avnet resulted in a stipulation containing a release of the Preference Claims asserted by the Trustee.

The Debtors sold their assets to the secured lenders via credit bid. At the time of conversion, and at the time of the entry into the Stipulation and Release, the Debtors had no money. The preference claims under Section 547 of the Bankruptcy Code were specifically preserved for the benefit of the unsecured creditors. The Bankruptcy Court identified the avoidance actions as the sole potential means of recovery to the unsecured creditors. *See March 5 Hearing Transcript*, p. 119-120; *see also* ¶ 4 *supra*.

Thus, at the time that the Stipulation and Release was entered, the Debtors and Estates had nothing except the avoidance actions, of which the Preference Claims were, and continue to be, the largest. Such information highlights the disparity in the Stipulation and Release.

Assuming that Avnet did pursue the so-called contempt claims, what value would these contempt claims possess?

First, Avnet cites that the Stipulation and Release protected the Estates from the litany of claims the Debtors could have faced as a consequence of the Debtors failure to segregate the Avnet PMSI Collateral. *Avnet Motion*, ¶ 37. Yet, Avnet has not once provided this litany of claims that the Debtors would face. Nor has Avnet provided any evidence that it would succeed in pursing these yet-to-be-presented claims. In fact, all evidence on the record shows that either a) the proceeds were transferred inadvertently or b) the proceeds were transferred prior to the PMSI Stipulation. These are hardly suggestive of a litany of contempt claims.

Second, even if Avnet pursued these contempt claims, and won despite not providing any evidence in support of actual contempt or a willful violation of the Bankruptcy Court's order, what would Avnet's victory entail? The Debtors had no money. Pursuing a claim against the Debtors would have only cost Avnet real money in pursuit of an unsecured claim against the Estates. Avnet's only avenue for relief was to pursue the Laurus Parties.

Third, from the perspective of the Debtors, a contempt claim was equally as irrelevant. At the time of the Avnet Enforcement Motion, the Debtors were headed for conversion to a case under chapter 7 of the Bankruptcy Code. The only events that occurred in this Bankruptcy Case after the Stipulation and Release and prior to conversion were final fee applications of the professionals and Committee's counsel seeking its fees, to the extent incurred above the DIP carve-out, from the Laurus Parties [*See e.g* D.I. 408]. Thus, the Debtors had no cause or incentive to even defend the contempt claims. Furthermore, the Debtor-in-possession has a duty to the creditors, not itself, and cannot dispose of the estate's largest asset in order to avoid being accused of contempt.

The paramount interests of the unsecured creditors, in fact the only interest of the unsecured creditors, both contemporaneous with the Stipulation and Release and currently, should have been the preservation of the avoidance actions, especially the Avnet Preference Claims. Therefore, under any circumstance, the Stipulation and Release violates the paramount interests of the creditors.

## CONCLUSION

The Bankruptcy Court does not have to be convinced that the settlement is the best possible compromise. Rather, the Bankruptcy Court must conclude that the settlement is within the reasonable range of litigation possibilities. *See In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D.Del. 2006) (internal quotations omitted). The Bankruptcy Court need only to consider the reasonableness of the compromise as it relates to the Estates. As it stands right now, the Estates receive no benefit from the Stipulation and Release and never did.

The Estates should not be penalized for the Laurus Parties' seizure of Avnet's property.  Nor should the Estates be penalized for Avnet's failure to notice the Bankruptcy Court

and any interested parties of its intent to be released from the Preference Claims. Applying the Stipulation and Release to the Preference Claims is a severe penalty on the unsecured creditors based on the conduct of a third party, and results in a windfall to Avnet.

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court:

(i) deny the Avnet Motion and decline to approve the Stipulation and Release; or in the alternative

(ii) set the matters raised in the Avnet Motion for an evidentiary hearing after the completion of discovery between the Parties; and

(iii) for such other relief that the Bankruptcy Court may order.

COOCH AND TAYLOR, P.A.

*/s/ R. Grant Dick, IV*
Susan E. Kaufman (DSB # 3381)
R. Grant Dick, IV (DSB #5123)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
(302) 984-3800
(302) 984-3939 Fax

Counsel for Jeoffrey L. Burtch, Chapter 7 Trustee

Dated: March 11, 2015