## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| MANAGEDSTORAGE INTERNATIONAL, INC., *et al.*,[1] | Case No. 09-10368 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: April 21, 2017 at 4:00 p.m.**<br>**Hearing Date: April 26, 2017 at 2:00 p.m.** |

## MOTION OF AVT TECHNOLOGY SOLUTIONS LLC TO COMPEL TRUSTEE TO DESIGNATE WITNESSES AND APPEAR FOR DEPOSITION

Pursuant to FED. R. BANKR. P. 7037 and FED. R. CIV. P. 37(a)(3)(B)(ii), made applicable by FED. R. BANKR. P. 9014, Avnet, Inc., now known as AVT Technology Solutions LLC[2] ("**Avnet**"), a secured creditor in the above-captioned cases, hereby moves this Court to compel Jeoffrey L. Burtch, the Chapter 7 Trustee of the Debtors' Estates (the "**Trustee**" or "**Plaintiff**"), to designate witnesses pursuant to FED. R. CIV. P. 30(b)(6) and make them available for deposition. In support of this motion Avnet states that the Trustee, who stepped into the shoes of the Debtors, is now attempting to invalidate a settlement and release to which the Debtors are a party, which was approved by this Court in 2010 by an order which was never appealed. Despite the fact that Debtors are parties to the agreement The Trustee now contends that it was not fair,

---

[1] The debtors ("**Debtors**") in these cases, along with the last four digits of each Debtor's federal tax identification number, and their respective addresses, are: ManagedStorage International, Inc. (6252), 12303 Airport Way, Suite 250, Bromfield, CO 80201; Incentra Solutions, Inc. (3960), 1140 Pearl Street, Boulder, CO 80302; Incentra Solutions of California, Inc. (3782), 4122 Sorrento Valley Blvd., Suite 102, San Diego, CA 92121; Network System Technologies, Inc. (8009), 2050-80 Finley Drive, Lombard, IL 60148; Incentra Solutions of the Northeast, Inc. (8372), 1140 Pearl Street, Boulder, CO 80302; Incentra Solutions of the Northwest, Inc. (8930), 9020 SW Washington Square Road, Suite 500, Portland, OR 97223; Sales Strategies, Inc. (0515), 6 Bridge Street, Unit 5, Metuchen, NJ 08840, and Incentra Solutions International, Inc. (1239), 15 Old Bailey, London EC4M 7EF, United Kingdom.

[2] On February 27, 2017, Tech Data acquired the Technology Solutions business from Avnet, Inc., the creditor in this case. The entity which owns and operates the former Avnet, Inc., technology solutions business in the United States is called AVT Technology Solutions LLC.

reasonable and in the best interests of the Debtors' estates.  Furthermore, the Trustee is making an alarming claim that the Debtors were not authorized to enter into the agreement and did not participate in its negotiation.  Avnet is entitled to the evidence that supports these allegations. However, the Trustee is refusing to designate a witness in response to Avnet's FED. R. CIV. P. 30(b)(6) notice of deposition.  FED. R. CIV. P. 30 and 37 simply do not permit the Trustee to evade properly propounded discovery on the most germane issue of the dispute between the parties.  This Court should compel the Trustee to designate witness(es), provide dates for deposition(s), and any other such relief as this Court deems appropriate.[3]

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 157.

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

4.      Avnet and certain Debtors were parties to two valid and perfected purchase money security interests dated October 24, 2008 and December 17, 2008 (the "**October Avnet PMSI,**" the "**December Avnet PMSI,**" and collectively the "**Avnet PMSIs**") covering certain products the Debtors purchased from Avnet (the "**Avnet Products**").  Collateral for the Avnet PMSIs included the Avnet Products, the Debtors' accounts receivable related to the sale of the Avnet Products (the "**Avnet PMSI AR**"), and the proceeds received on account of the Avnet PMSI AR (collectively the "**Avnet PMSI Collateral**").  Both Debtors and Avnet agreed that the Debtors owed at least $1,270,814.47 under the Avnet PMSIs.

5.      On February 4, 2009 (the "**Petition Date**"), each of the Debtors filed a voluntary

---

[3] FED. R. CIV. P. 37(a)5 provides for the payment of expenses to the party whose motion to compel is granted and FED. R. CIV. P. 37(d)(1)(A) permits a court to sanction a party for failing to attend its own deposition,

petition for relief with this Court under Chapter 11 of the United States Bankruptcy Code (the **"Bankruptcy Code"**).

### The Debtors' Bid Procedures Motion

6.      On or about February 4, 2009, the Debtors filed Debtors' *Motion For An Entry Of An Order (A) Approving Bid Procedures For The Sale Of the Debtors' Assets, (B) Scheduling An Auction And Hearing To Consider The Sale And Approve The Form And Manner Of Notice Related Thereto; (C) Establishing Procedures Relating To The Assumption And Assignment Of Certain Contracts, Including Notice of Proposed Cure Amounts, and (D) Granting Related Relief* (the "**Bid Procedures Motion**") [Docket No. 15].  In the Bid Procedures Motion, the Debtors acknowledged the Avnet PMSIs and stated "[t]he Debtors presently intend to either (a) exclude the property subject to the Avnet PMSI for the Assets being sold, or (b) sell such property subject to the Avnet PMSI."  Bid Procedures Motion, p. 9, n.6.

### The Debtors' Sale Motion and Avnet's Objection Thereto

8.      On February 4, 2009, the Debtors filed Debtors' *Motion For An Order: (I) Approving Asset Purchase Agreement And Authorizing The Sale Of Certain Of Its Assets Outside The Ordinary Course Of Business To Laurus Master Fund, Ltd. (In Liquidation) Or A Higher And Better Bidder; (II) Authorizing The Sale Of Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests Pursuant To Sections 363(a), (f) And (m) Of The Bankruptcy Code, (III) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (IV) Granting Related Relief* (the "**Sale Motion**") [Docket No. 16]. Again, in the Sale Motion, the Debtors specifically stated that they will either (a) exclude the Avnet PMSI Collateral from the assets being sold or (b) will sell the Avnet PMSI Collateral subject to the Avnet PMSI.  Sale Motion, p. 10 footnote 6.

9.      Accordingly, on March 24, 2009, Avnet filed the *Limited Objection Of Secured Creditor Avnet, Inc., To Debtor's Motion For An Order: (i) Approving Asset Purchase Agreement And Authorizing The Sale Of Certain Of Its Assets Outside The Ordinary Course Of Business To Laurus Master Fund, Ltd. (In Liquidation) Or A Higher And Better Bidder; (ii) Authorizing The Sale Of Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests Pursuant To Sections 363(a), (f) And (m) Of The Bankruptcy Code, (iii) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (iv) Granting Related Relief* (the "**Avnet Limited Objection**") [Docket No. 145].

10.     On April 2, 2009, the Debtors, the Official Committee of Unsecured Creditors (the "**Committee**") and Avnet entered into and filed the *Stipulation Between Debtors, The Official Committee of Unsecured Creditors, and Secured Creditor, Avnet., Inc., Regarding Purchase Money Security Interest Funds* (the "**Stipulation**") [Docket No. 195].   On April 14, 2009, the Court entered an Order approving the Stipulation [Docket No. 213].   Pursuant to the Stipulation, "[t]he Debtors agree[d] that they will maintain any and all funds they receive from accounts receivable that are subject to the December PMSI in a segregated account (the '**Debtor PMSI Account**')."   Further, the Stipulation provides, "[t]he Debtors agree that they will not use the funds contained in the Debtor PMSI account."   It was Avnet's understanding that, based on the Stipulation, Debtors were segregating Avnet PMSI Collateral into a separate account which was maintained by the Debtors.

11.     On April 2, 2009, this Court held a hearing on the Sale Motion (the "**Sale Hearing**").   Avnet appeared at that hearing to make it clear for the record that all Avnet PMSI Collateral, not just Avnet Products, was to be excluded from the Purchased Assets as Avnet has a perfect security interest in the Avnet PMSI Collateral superior to all creditors.   The transcript of

that hearing, in pertinent part, reads as follows:

| | |
|---|---|
| MR. GROHSGAL: | (Con't.) With respect to Avnet, which is the objection filed at the Docket Number 145, -- |
| THE COURT: | Yes. |
| MR. GROHSGAL: | --there's a stipulation that was submitted to the Court resolving the Avnet deal which sets forth the agreement reached among Avnet, the Debtors and the Committee at the Final Cash Collateral Financing Hearing. It was held several weeks ago. In addition, I'm stating on the record that the Debtors are not purporting or attempting to assign any of the assets in which Avnet asserts a security interest at this time. And to the extent that we might need to further amend the schedules to the Asset Purchase Agreement, I've agreed with Avnet's counsel that will do that if necessary. That being said, we would be submitting, today, an order attaching the signed Avnet Purchase Agreement as was filed last night with a couple of revisions, which I'll also walk the court through, which has the revised schedules that we filed last night, and ask the Court to enter that Order. Again, understanding that if there's an issue of clarification that's require [sic] with respect to the Avnet asset, that we will make that by amendment to the APA or to the schedules. And that is acceptable to Avnet's counsel. |

. . .

| | |
|---|---|
| THE COURT: | All right. Anybody else? |
| MR. MELORO: | Good afternoon, Your Honor. Dennis Meloro from Greenberg, Traurig on behalf of Avnet, Inc. We're in agreement with what Mr. Grohsgal said. I just wanted to make one minor clarification to avoid an ambiguity down the road. Mr. Grohsgal stated that they're not seeking to assign any assets of Avnet. What I think he meant to say is just that they're not seeking to sell any assets of Avnet so-- |
| THE COURT: | Okay. |
| MR. GROHSGAL: | I confirm that, Your Honor. We're not seeking to transfer, dispose, sell, assign, etcetera. Thank you. |
| MR. MELORO: | That's fine. I understood that, Your Honor. I just wanted to make that clear. Thank you. |

April 2, 2009 Hearing Transcript, pp. 13, 23 (emphasis added). Counsel for Laurus was present

at this hearing and raised no objection to the Debtors' statement that the Avnet PMSI Collateral was excluded from the Purchased Assets. *See* April 2, 2009 Hearing Transcript, p. 1.  On that same day, this Court entered the Sale Order.

12.     The Sale Order Provides: "The Sale Motion is GRANTED by this Order and all objections thereto which have not been waived, withdrawn, or settled as reflected on the Docket of these cases or the record of the Sale Hearing are hereby overruled."  Sale Order ¶ 1.  The Avnet Limited Objection was one such objection that was settled on the record of the Sale Hearing where the Debtor clearly acknowledged that the Purchased Assets were to exclude all Avnet PMSI Collateral.  Furthermore, the Sale Order provides:

> This Court shall retain exclusive jurisdiction to implement and effectuate the provisions of this Order and the APA and to resolve any issue or dispute concerning the interpretation, implementation or enforcement of this Order and the APA and any subsequent agreement as required to be entered into between the Debtors and the Purchaser pursuant to this Order, or the rights and duties of the parties hereunder or thereunder, including, without limitation, any issue or dispute concerning the transfer of the Purchased Assets free and clear of liens, claims, interest or encumbrances.

Sale Oder ¶26.

13.     On April 16, 2009, counsel for Avnet transmitted changes to the APA to counsel for the Debtors.  These changes were intended to clarify the APA so that the term Purchased Assets did not include Avnet PMSI Collateral.  Contrary to the assurances made by the Debtors at the April 2, 2009 hearing, the changes requested by Avnet were never made to the APA.

### Avnet's Motion to Compel

14.     Between October and December 2009, representatives of Avnet and representatives of the Debtors communicated about: (a) reconciling the amounts owed to Avnet pursuant to the Avnet PMSIs; and (b) transferring the Avnet PMSI Collateral to Avnet.  In that process, Avnet and the Debtors reconciled the amount due to Avnet was at least $1.2 million.  In

addition, through those communications, Avnet learned that the Avnet PMSI Collateral: (a) was never segregated into the Debtor PMSI Account as required by the Stipulation; and (b) was apparently transferred to Laurus as part of the Purchased Assets in the Sale of the Debtors' estates, in contravention of the agreement with Avnet set forth on the record at the Sale Hearing.

15.     Thereafter, in January and February 2010, counsel for Avnet and counsel for Laurus traded communications in an attempt to resolve this matter and have the Avnet PMSI Collateral returned to Avnet.   Avnet provided copies of the PMSI documentation, hearing transcripts, relevant pleadings and email correspondence, and copies of the reconciliation of the amounts due to Avnet to counsel for Laurus.

16.     On February 24, 2010, Avnet filed its Motion to Compel after Laurus failed to return the Avnet PMSI Collateral to Avnet.

17.     On March 27, 2010, Laurus filed its *Objection of Laurus Master Fund, Ltd., Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, And/Or Psource Structured Debt Limited To Motion Of Secured Creditor Avnet, Inc., To Enforce Sale Order To Specifically Exclude Avnet PMSI Collateral From Sale Assets And To Compel Laurus Master Fund, Ltd., Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, And/Or Psource Structured Debt Limited, To Turn Over Avnet Collateral* (the "**Laurus Objection**").  [Docket No. 379].

18.     The hearing on Avnet's Motion to Compel was continued several times to May 19, 2010.  *In re Managed Storage*, 2012 WL 5921723 at *1, 6 (Bankr. D. Del. November 26, 2012).

### *The Stipulation and Release*

19.     On May 17, 2010, the *Notice of Agenda of Matters Scheduled for Hearing on May*

*19, 2010* (the "**Agenda**") "was served on all parties in interest, including the Committee." *Id.* at *6. The only contested matter scheduled as going forward at that hearing was Avnet's Motion to Compel. *Id.*  The Agenda clearly stated that Avnet's counsel had circulated a proposed stipulation which the parties were attempting to finalize prior to the hearing on Avnet's Motion to Compel. *Id.*

20.     Pursuant to the Stipulation and Release, rather than the $1.2 million outstanding amount that the parties had agreed on, Avnet agreed to accept the reduced amount of $975,000 from Laurus and Laurus, Avnet and the Debtors granted each other mutual general releases. Specifically, the Stipulation contained the following release:

> Debtors for themselves and their respective heirs, executors, administrators, representatives, officers, directors, agents, attorneys, subsidiaries, affiliates, divisions, parents, predecessors, successors and assigns hereby:
>
> > (a)     release and discharge Avnet and each of its heirs, representatives, officers, directors, employees, agents, attorneys, subsidiaries, affiliates, parents, predecessors, successors and assigns, from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, executions, claims and demands relating to the Debtors and their Chapter 11 cases only, in law or equity, including but not limited to any claims relating to the Avnet PMSI collateral; and

Stipulation and Release ¶4.

21.     On May 19, 2010, the Debtors served an *Amended Notice of Agenda of Matters Scheduled for Hearing on May 19, 2010* (the "**Amended Agenda**") "on all parties in interest." *In re Managed Storage*, 2012 WL 5921723 at *6.   The Amended Agenda stated that the parties were submitting a stipulation resolving the matter under certification of counsel and that the hearing had been cancelled as a result. *Id.*  Avnet filed a certification of counsel attaching the Stipulation and Release which requested that the Court enter the proposed form of Order approving the Stipulation and Release.  *Id.*

22. That same day, this Court entered the Order approving the Stipulation. *Id.* [Docket No. 400]. According to the affidavit of service, the Order was served on all parties in interest, including the Committee on May 20, 2010. *Id.* No one appealed or otherwise challenged the Order approving the Stipulation and Release.

### Conversion of the Debtors' Cases to Chapter 7 and the Trustee's Adversary Proceeding Against Avnet

23. On November 3, 2010, this Court converted the Debtors' cases to Chapter 7 of the Bankruptcy Code and appointed Jeoffrey L. Burch as the Chapter 7 Trustee.

24. Despite the fact that the Debtors had released Avnet from any and all claims "relating to the Debtors and their Chapter 11 cases," Stipulation and Release ¶4, on January 12, 2012, the Trustee filed an adversary proceeding to avoid and recover $5,444,541.11, allegedly paid to Avnet within 90 days of the Debtors' bankruptcy filing, as a preference pursuant to Sections 547 and 550 of the Bankruptcy Code, in the case styled *Burch v. Avnet, Inc.*, United States Bankruptcy Court for the District of Delaware Adversary Proceeding No. 12-50026-MFW. *See* Adversary Complaint ¶¶ 15-34 and Exhibit A thereto.

26. On March 30, 2012, Avnet moved to dismiss the Adversary Complaint based on the releases contained in the Stipulation and Release pursuant to FED. R. CIV. P. 12(b)(6). The Trustee filed his opposition to Avnet's Motion to Dismiss on April 4. 2012.

27. On November 26, 2012, this Court granted Avnet's Motion to dismiss and ruled that: (1) the Stipulation and Release was binding on the Trustee; (2) the release covered preference claims under Sections 547 and 550 of the Bankruptcy Code; and (3) there was nothing defective in the notice pursuant to which this Court issued its order approving the Stipulation and Release. *In re Managed Storage*, 2012 WL 5921723 at * 3-8.

28. On December 10, 2012, the Trustee appealed this Court's decision to the United

States District Court for the District of Delaware (the "**District Court**"). The parties completed appellate briefing in the District Court on August 13, 2013.

29.     On January 16, 2015, the District Court issued its decision reversing and remanding the adversary proceeding back to this Court. The District Court affirmed this Court's conclusions that: (1) the Trustee is bound by the terms of the Stipulation and Release, and (2) and that the release included preference actions under Sections 547 and 550 of the Bankruptcy Code. *Burtch v. Avnet*, 2015 WL 243183 at \*4-5. However, the District Court ruled that this Court "committed clear error of fact" and "legal error" [because …] and ordered that this Court "assess the Stipulation and Release by the standards of *In re Martin*, [91 F.3d 389, 393 (3d Cir. 1996)]." *Id.*

### *Avnet's First 9019 Motion*

30.     Accordingly, on February 23, 2015, Avnet filed the *Motion of Avnet, Inc., Pursuant to FED. R. BANKR. P. 9019 To Approve Stipulation And Releases Among The Debtors, Secured Creditor Avnet, Inc., And Laurus Related Parties Regarding Purchase Money Security Interest In Collateral* [Docket No. 399] Resolving Motion Of Secured Creditor Avnet, Inc., To Enforce Sale Order To Specifically Exclude Avnet PMSI Collateral From Sale Assets And To Compel Laurus Master Fund, Ltd., Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, And/Or Psource Structured Debt Limited, To Turn Over Avnet Collateral [Docket no. 371]. [Docket No. 663] ("**Avnet's First 9019 Motion**").

31.     On March 11, 2015, the Trustee filed the *Objection Of Chapter 7 Trustee To Avnet's Rule 9019 Motion To Approve Stipulation And Releases Among The Debtors, Secured Creditor Avnet, Inc., And Laurus Related Parties* [Docket No. 665] (the "**Objection**"). In its Objection, the Trustee specifically contends that Stipulation and Release are not fair, reasonable

and in the best interests of the Debtors Estates.  Objection, pp. 12-21.

32.    On March 18, 2015, this Court denied Avnet's First 9019 Motion without prejudice.

***The Parties' 9019 Discovery and This Dispute***

33.    Since then, Avnet and the Trustee have been engaging in discovery.   Avnet answered the Trustee's interrogatories and produced over 3000 pages of documents in response to the Trustee's document requests.

34.    Avnet also propounded discovery in an attempt to discover the evidence which supports the Trustee's allegation that the Stipulation and Release were not fair, reasonable and in the best interests of the Debtors' Estates and that the Debtors were not authorized to enter into the Stipulation and Release.   In response to Avnet's interrogatories, the Trustee identified the following people responsible for negotiating and approving the Stipulation and Release:

**Interrogatory No. 2.**    Identify all individuals, and provide their last known contact information, who participated in the negotiation of the Stipulation and Release on behalf of the Debtors.

**Response:**  Subject to and without waiving the objections detailed above, Defendant responds as follows:    The Trustee objects to Avnet Interrogatory No. 2 to the extent that it seeks the mental impressions and legal conclusions of either the Trustee's counsel, or the Debtors' counsel, which are beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b).   The Trustee further objects on the basis that the information requested is protected by the attorney-client privilege or the attorney work product doctrine.   As such, any identification of Debtors' counsel, counsel to the Committee, or Trustee's counsel are for identification purposes only and should not be viewed as a waiver of any privilege.   The Trustee objects to Avnet Interrogatory No. 2 on the basis that the Trustee is not the Debtor and has no personal knowledge as to the events for which Avnet Interrogatory No. 2 relates.   Furthermore, the Trustee objects to Avnet Interrogatory No. 2 to the extent Avnet Interrogatory No. 2 requests information not available to the Trustee.    Without waiving these objections, the Trustee responds as follows:

The Debtors did not negotiate the Stipulation and Release.  The Motion to

Compel was a dispute between Avnet and Laurus. The Motion to Compel did not seek relief from the Debtors. The ultimate terms of settlement between Avnet and Laurus did not involve the Debtors. Accordingly, the Stipulation and Release was the result of negotiation between Avnet and the Laurus Parties, or counsel thereto. However, individuals that Laurus or Avnet may have consulted regarding the negotiation of the Stipulation and Release may include:

Tony DiPaolo: (See Trustee's response to Avnet Interrogatory No. 1)

George Vareldzis: (See Trustee's response to Avnet Interrogatory No. 1)

Counsel to Debtors: (See Trustee's response to Avnet Interrogatory No. 1)

Counsel to Laurus: (See Trustee's response to Avnet Interrogatory No. 1)

Counsel to Avnet: (See Trustee's response to Avnet Interrogatory No. 1)

The Trustee reserves the right to change, amend, or update this response.

. . .

**Interrogatory No. 4.** Identify all individuals, and provide their last known contact information, who authorized the Debtors to enter into the Stipulation and Release.

**Response:** Subject to and without waiving the objections detailed above, Defendant responds as follows: The Trustee objects to Avnet Interrogatory No. 4 to the extent that it seeks the mental impressions and legal conclusions of either the Trustee's counsel, or the Debtors' counsel, which are beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b). The Trustee further objects on the basis that the information requested is protected by the attorney-client privilege or the attorney work product doctrine. As such, any identification of Debtors' counsel, counsel to the Committee, or Trustee's counsel are for identification purposes only and should not be viewed as a waiver of any privilege. The Trustee objects to Avnet Interrogatory No. 4 on the basis that the Trustee is not the Debtor and has no personal knowledge as to the events for which Avnet Interrogatory No. 4 relates. Furthermore, the Trustee objects to Avnet Interrogatory No. 4 to the extent Avnet Interrogatory No. 4 requests information not available to the Trustee. Without waiving these objections, the Trustee responds as follows:

It is unclear from the records available to the Trustee whether the Debtors properly authorized the Stipulation and Release. Non-attorney individuals

that may have reviewed the Stipulation and Release prior to submission to the Bankruptcy Court include:

Tony DiPaolo

By way of further response, Debtors' Corporate Counsel, Reed Guest, served as corporate counsel and might have information on the Debtors' board contemporaneous with the entry into the Stipulation and Release.

The Trustee reserves the right to change, amend, or update this response.

Trustee's Responses and Objections to the First Set Of Interrogatories Directed at the Chapter 7 Trustee by Avnet, Inc., attached hereto as Exhibit A.

35.     The Trustee also produced documents.  None of the documents produced in any way indicate that the Debtors did not have authority to enter into the Stipulation and Release. Moreover, none of the documents reflect that the Debtors were not in favor of entering into the Stipulation and Release.

36.     On January 5 and 6, 2017, Avnet took the depositions of George Vareldsiz ("**Vareldsiz**") and Anthony DiPaolo ("**DiPaolo**"), respectively, the individuals the Trustee identified as having participated in the negotiation of and having the authority to enter into the Stipulation and Release on behalf of the Debtors.  Though, contrary to the Trustee's assertions, neither participated in the negotiation of or had any authority with respect to the Stipulation and Release.  Howeverm, Vareldsiz testified that he was not involved and did not have authority to bind the Debtors:

Q.     Were you ever informed that the settlement was reached, between Laurus, Avnet, and the debtors, with respect to the amount Avnet was claiming under the PMSI?

A.     It sounds familiar that that was mentioned at some point, but I don't know how that might have been manifested.

Q.     Do you know who was involved in making that decision?

13

A.    I don't.  That would have been after I was not involved.  I was not involved in that.

Q.    Did anyone have any discussions with you about that decision?

A.    No, other than I heard it happened.

. . .

Q.    Okay.  It's dated May 19th, 2010.  I believe you testified before, but correct me if I'm wrong, you were not involved with ManagedStorage at that point?

A.    Not with any of these matters, no.

Vareldsiz Deposition, pp. 51-53, attached hereto as Exhibit B.  DiPaolo similarly testified that he was not involved with the Stipulation and Release:

Q.    Okay.  Did you have any authority to direct a position that would be taken, by either the debtors or Laurus, in response to Avnet's motion?

A.    No.

Q.    Who would have had that authority?

A.    It would have been somebody at Laurus.

. . .

Q.    Were you involved in the negotiation of that settlement in any way?

A.    I was not.

. . .

Q.    And I think you answered this before, but well, let me ask you, who gave authority to Mr. Grohsgal to enter into this agreement on behalf of the debtors?

A.    It would have come from Laurus.  And who specifically, I don't know.  . . .

. . .

Q.    Did you have any authority with respect to agreeing to the terms of this settlement?

A.    None whatsoever.  My authority was zero.

Q.    Did you discuss the scope of the releases that were given, in this document, with anybody?

A.    No.

Q.    Do you know what factors Laurus considered in coming to the decision to enter into this agreement?

A.    I don't.  . . .

DiPaolo Deposition, pp. 58-61, attached hereto as <u>Exhibit C</u>.  So, despite the fact that the Trustee identified (under oath) both of these witnesses as having participated in negotiating and/or having authority on behalf of the Debtors to enter into the Stipulation and Release, neither did. Accordingly, Avnet has not been able to discover the evidence that supports the Trustee's allegations.

37.    Avnet also subpoenaed documents from counsel for Laurus and counsel for Debtors.  Like the Trustee's production, the production from counsel for Debtors, Pachulski Stang contained no documents indicating that the Debtors did not have authority to enter into the Stipulation and Release or that the Debtors did not think that the Settlement and Release was in the best interests of their estates.  The same is true of the production from Cole Schotz, counsel for Laurus.  In fact, that production makes it clear that, contrary to the Trustee's allegations contained in its answers to interrogatories, Debtors, through their counsel, clearly participated in the negotiation of the Stipulation and Release. And agreed to its terms.

38.     Avnet served two FED. R. CIV. P. 30(b)(6) Notices of Deposition on the Trustee

on March 4, 2016 and December 20, 2016, attached hereto as Exhibits D and E, respectively.

Specifically, Avnet requested that the Trustee identify witness(es) with the most knowledge of

the following topics:

### TOPICS FOR EXAMINATION

1.     With respect to all products and/or services Avnet provided to the Debtors
       from January 1, 2006 through the Petition Date, the following:
       (a)     the date(s) on which the Debtors received the products and/or
               services and the value of each such shipment or services;
       (b)     the terms of any agreement, whether oral or written, between the
               Debtors and Defendant pursuant to which Defendant provided
               products and/or services to Debtors; and
       (c)     the dates on which the Debtors sent, and Defendant received,
               payment for any such products and/or services, the method and
               amount of the payment and the due date for the invoice(s) to which
               such payment was applied.
2.     The terms and conditions of any agreement between the Debtors and
       Avnet with respect to the delivery of any products and/or services
       provided to the Debtors by Avnet.
3.     The course of business or dealing between the Debtors and Avnet.
4.     The course of business or dealing between the Debtors and others in the
       Debtors' industry.
5.     All other companies or entities within Defendant's industry with which
       you do or did business, including the nature of the Debtor's business
       relationship and the payment terms of the relationship.
6.     The terms of credit that were extended in writing or otherwise to the
       Debtor by Avnet during the period from January 1, 2006 through the
       Petition Date.
7.     The terms of credit that were extended in writing or otherwise by any
       other companies or entities within Defendant's industry with which the
       Debtors did business during the period from January 1, 2006 through the
       Petition Date.
8.     The Trustee's contention that any of the alleged transfers identified in the
       Adversary Proceeding were not intended by the parties to and did not
       constitute a contemporaneous exchange for new value given by
       Defendant.
9.     The Trustee's contention that any of the alleged transfers identified in the
       Adversary Proceeding were not made in the ordinary course of business or
       financial affairs of the parties.
10.    The Trustee's contention that any of the alleged transfers identified in the
       Adversary Proceeding were not made in accordance with the ordinary

business terms prevailing in Defendant's industry.

11. The Trustee's contention that any of the alleged transfers identified in the Adversary Proceeding were not made in accordance with the ordinary business terms prevailing in the Debtors' industry.

12. The Trustee's contention that any of the transfers identified in the Adversary Proceeding resulted from unusual or extraordinary debt collection practices.

13. The Trustee's contention that any of the transfers identified in the Adversary Proceeding were made while the Debtors were insolvent.

14. The negotiation of the Stipulation and Release.

15. The indented scope of the release contained in the Stipulation and Release.

16. All communications between and among Debtors, Avnet and Laurus, including but not limited to their counsel, concerning the Stipulation and Release.

17. Al communications between and among Debtors, Avnet, the Committee and Laurus, including but not limited to their counsel, concerning the Stipulation.

18. All communications between and among Debtors, Avnet, the Committee and Laurus, including but not limited to their counsel, concerning the Agenda.

19. All communications between and among Debtors, Avnet, the Committee and Laurus, including but not limited to their counsel, concerning the Amended Agenda.

20. The disposition of the Avnet PMSI Collateral.

21. The Debtors' PMSI Account.

22. All communications between Avnet and the Debtors from January 1, 2006 through the Petition Date.

23. All agreements or contracts between any of the Debtors and Avnet between January 1, 2006 and the Petition date.

24. Any payments made to Avnet by the Debtors during the period from January 1, 2006 through the Petition Date.

25. The credit terms pursuant to which Avnet and any of the Debtors did business from January 1, 2006 to the Petition Date.

26. The Debtors' reasoning for entering into the Stipulation and Release and for resolving the Motion to Compel.

27. The Trustee's analysis regarding Avnet's preference liability if any under 11 U.S.C. § 547.

Exhibit E. Topics 3, 4, 6, 14, 15, 16, 18, 19, 20, 21, and 26 are all directed at the factual basis

behind the Trustee's assertion that the Stipulation and Release were not fair, equitable or in the

best interests of the Debtors' estates and that the Debtors did not have authority to enter into the

Stipulation and Release.   Since March 2016, counsel for Avnet and counsel for the Trustee

engaged in discussions both telephonically and in writing to see if they could reach an agreement with respect to the Trustee's deposition. *See, e.g.,* Exhibit F hereto. Unfortunately, the Trustee has refused to designate a witness, *see* Exhibit G hereto, necessitating this Motion to Compel. This Court should not allow the Trustee to evade the requirements of FED. R. CIV. P. 30(b)(6) and should compel it to designate and produce witnesses on the topics requested.

**RELIEF REQUESTED AND BASIS THEREFOR**

I.     **THIS COURT SHOULD COMPEL THE TRUSTEE TO DESIGNATE WITNESS(ES) PURSUANT TO FED. R. CIV. P. 30(b)(6) AND 37.**

    A.     **LEGAL STANDARDS.**

39.     FED. R. CIV. P. 37(a)(1) and (3)(B) permit a party to move to compel a corporation or entity to designate a witness pursuant to FED. R. CIV. P. 30(b)(6). "A party seeking discovery may move for an order compelling an answer, designation, production or inspection. This motion may be made if: (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6)." FED. R. CIV. P. 37(a)(3)(B)(ii). A party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). "Furthermore, the scope of discovery permitted by Rule 26 embraces all 'relevant information,' a concept which is defined in the following terms: 'Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *Rivera v. Rendell*, 2017 WL 1036471 at *1 (M.D. Penn. March 17, 2017) (quoting FED. R. CIV. P. 26). *See also Delaware Display Group LLC et al v. Lenovo Group Ltd., et al*, 2016 WL 720977 at *2 (D. De. February 26, 2016). Finally, "[r]ulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are committed to the sound discretion of the

18

district court.  Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court." *Pulchalski v. Franklin County*, 2017 WL 57143 at *2 (M.D. Penn January 5, 2017) (citing *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987) and *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 788 (3d Cir. 1974)).

40.    FED. R. CIV. P. 30(b)(6) allows a party to name a corporation or entity as a deponent to seek the organizations knowledge of designated topics.  *Crawford v. George & Lynch, Inc.*, 19 F.Supp.3d 546, 555 (D. Del. 2013); FED. R. CIV. P. 30(b)(6).

> A Rule 30(b)(6) witness's testimony is binding on the corporation. A corporation has an affirmative duty to produce a representative who can answer questions that are within the scope of the matters described in the notice. The duty of preparation goes beyond the designee's personal knowledge and matters in which the designee was personally involved. If necessary, the deponent must use documents, past employees, or other resources to obtain responsive information.

*Crawford*, 19 F. Supp. 3d. at  554 (citing *Harris v. New Jersey,* 259 F.R.D. 89, 92 (D.N.J.2007)). Moreover, "difficulty identifying a knowledgeable individual or individuals to testify on the company's behalf does not excuse the obligation to produce a witness."  *Clientron Corp. v. Devon IT, Inc.*, 310 F.R.D. 262, 266-67 (E.D. Pa. 2015) (citations omitted).

41.    Moreover, it is undisputed that a bankruptcy trustee is a proper subject of a FED. R. CIV. P. 30(b)(6) notice of deposition and is not relieved of the duty to designate and prepare witnesses.  *In re Travelstead*, 212 B.R. 505, 509-510 (Bankr. D. Md. 1997) (in response to a properly noticed deposition, a trustee "could be required to designate a person or persons competent to testify on the requested matters").

42.    The acts of a debtor-in-possession are generally binding upon a subsequently-appointed trustee.  *In re Cybridge Corp.*, 312 B.R. 262, 267 (D. N.J. 2004) (citing *Armstrong v. Norwest Bank, Minneapolis, N.A.*, 964 F.2d 797, 801 (8th Cir. 1992) ("[I]t is axiomatic that the Trustee is bound by the acts of the debtor-in-possession."); *In re Great N. Paper, Inc.*, 299 B.R.

19

1, 5 (D. Me. 2003); *In re Phila. Athletic Club, Inc.*, 17 B.R. 345, 347 (Bankr. E.D. Pa. 1982) ("Upon conversion [from Chapter 11 to Chapter 7] and appointment, a trustee steps into the shoes of the debtor-in-possession with respect to all rights, responsibilities and liabilities.")). "Congress intended the trustee to stand in the shoes of the debtor and take no greater rights than the debtor himself had." *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co et al.*, 267 F.3d. 340, 357-58 (3d Cir. 2001).  As a corollary, if a debtor would be subject to FED. R. CIV. P. 30(b)(6), so too is a chapter 7 trustee.

43.    Avnet is entitled to the deposition of the Trustee's designee on issues relating to its objection to Avnet's First 9019 Motion and the evidence that the Trustee bases its allegations that the Stipulation and Release were not fair, equitable or in the best interests of the Debtors' estates and that the Debtors did not have authority to enter into it.  Accordingly, this Court should compel the Trustee to designate a witness or witnesses in response to Avnet's Fed. R. Civ. P. 30(b)(6) Notice of Taking Deposition.

**B.    THE DISCOVERY AVNET SEEKS FROM THE TRUSTEE IS WELL WITHIN THE SCOPE PERMITTED BY FED. R. CIV. P. 26(B).**

44.    Avnet is entitled to a FED. R. CIV. P. 30(b)(6) deposition of the Trustee.  The trustee is challenging the Stipulation and Release to which the Debtors are a party, which previously approved by this Court, and was never appealed by any party.  In particular, the Trustee has alleged that the Stipulation and Release does not meet requirements of *In re Martin*, 91 F.3d. 389, 393 (3d Cir. 1996) – specifically that it is not fair or equitable or in the best interests of the Estates.  Trustee's Objection, pp. 11-12.  It made this allegation despite the fact that the Debtors, into whose shoes the Trustee stepped, are a party to that very Stipulation and Release.  The Trustee has also alleged that the Estates received no benefit from the Stipulation and Release.  Trustee Objection, p. 20.  Finally, and remarkably, the Trustee has also alleged that

the Debtors did not authorize the Stipulation and Release, despite the fact that Debtors' counsel was a signatory to the agreement. Answers to Interrogatories 2, 4. FED. R. CIV. P. 11 requires that all factual contentions have evidentiary support. FED. R. CIV. P. 11(b)(3); *Hawk Mountain LLC et al. v. Mirra et al.*, 2016 WL 3182778 at *21-22 (D. Del. June 3, 2016). Yet, to date, the Trustee has refused to produce a witness that binds him to provide the evidence that supports these allegations. In addition, depositions of two third parties identified by the Trustee shed no light on the evidence supporting these allegations as both testified that they did not participate in the negotiation of the Stipulation and Release and did not have any authority on behalf of the Debtors. Vareldsiz Deposition, pp. 51-53; DiPaolo Deposition, pp. 58-61. In addition, Avnet subpoenaed documents from both counsel for Debtors and counsel for Laurus and no documents within those productions provide the evidence on which the Trustee is relying.

45.    Furthermore, there is no legal authority the Trustee can cite to preclude the inquiry Avnet seeks. Indeed, the Trustee has not even sought a protective order to prevent the deposition. In its letter announcing its refusal to designate a witness, the Trustee cites *Smithkline Beecham Corp. v. Aptex Corp.*, 2000 WL 116082 (N.D. Ill. January 24, 2000) and *FDIC v. Wachovia Insurances Services, Inc.*, 2007 WL 2460685 (D. Conn. August 27, 2007) as examples where protective orders have been granted where other forms of discovery may be more appropriate than a deposition. These cases are distinguishable from the present case. Notably, the Trustee in this case has entirely failed to seek a protective order from this Court. In *Smithkline* the court issued a protective order to prevent a deposition because it sought privileged information and the court concluded that the same information could be obtained from interrogatories. *Smithkline*, 2000 WL 116082 at *9-10. In *FDIC* the court issued a protective order as well to prevent a deposition where considerable discovery had already taken place,

issues of privilege were implicated, no employee of the FDIC had firsthand knowledge of the issues at stake, and other sources of discovery are available. *FDIC*, 2007 WL 2460685 at *3-4. Both of these cases present circumstances that are not present here. The Trustee has identified no privilege issues. In addition, there is no way that Avnet can thoroughly explore the Trustee's evidentiary support for its allegations that the Settlement and Release were not in the best interests of the Debtors' estates or that the Debtors were not authorized to enter into the Stipulation and Release in simple interrogatories; follow up questions will undeniably be necessary. Avnet has also taken discovery of the individuals and entities the Trustee identified as having participated and given authority for the Stipulation and Release; there was no testimony or documents supporting the Trustee's allegations. Accordingly, the evidentiary support which the Trustee must have had in making its allegations cannot be gleaned from another source than a deposition of the Trustee's designee(s).

46. The Trustee has alleged:

- the Debtors were not authorized to enter into the Stipulation and Release,

- the Stipulation and Release is not fair, equitable or in the best interests of the Estates,

- the Debtors received no benefit from the Stipulation ad Release,

- the Debtors were not authorized to enter into the Stipulation and Release; and

- the Debtors did not participate in the negotiation of the Stipulation and Relase.

Avnet is entitled to the evidence that the Trustee must have had to support these allegations. Under the circumstances of this case, the only way Avnet can obtain this information is a deposition which binds the Trustee. Interrogatories are simply not sufficient and will not be efficient as there will certainly be follow up questions that will precipitate from the Trustee's initial answers. The Trustee is a proper subject of a FED. R. CIV. P. 30(b)(6) notice, contrary to

the Trustee's contention. *In re Travelstead*, 212 B.R. at 509-510. There is no legal justification for the Trustee's refusal to respond to Avnet's FED. R. CIV. P. 30(b)(6) notice of deposition. Accordingly, this Court should compel the Trustee to identify the witness(es) responsive to Avnet's Notice, provide dates for availability, and any other relief available under FED. R. CIV. P. 37 that this Court deems appropriate.

### FED. R. CIV. P. 37(a) CERTIFICATION

47.    The undersigned hereby certifies that both co-counsel Annapoorni R. Sankaran and I have had numerous communications with counsel for the Trustee by email, written correspondence and telephone calls in an attempt to resolve this issue, in good faith and without court intervention, but were unsuccessful. The Trustee's final position is attached hereto as Exhibit G.

### NOTICE

48.    Notice of this Motion has been given to the Chapter 7 Trustee.

### CONCLUSION

WHEREFORE, Avnet respectfully requests that this Court grant the relief requested in this Motion and such other and further relief as the Court deems just and proper.

Dated: April 12, 2017          GREENBERG TRAURIG, LLP

*/s/ Dennis A. Meloro*
Dennis Meloro (DE Bar No. 3488)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: melorod@gtlaw.com

-and-

Annapoorni R. Sankaran, *pro hac vice*
1000 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone:  (713) 374-3500
Facsimile:  (713) 374-3505
Email:sankarana@gtlaw.com

AVT Technology Solutions LLC