**EXHIBIT A**

## I. PROCEDURAL HISTORY

1.      On February 4, 2009 (the "Petition Date"), ManagedStorage International, Inc. and its related affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") [Main Case 09-10368, D.I. 1].

2.      On December 29, 2017, AVT filed the Renewed AVT 9019 Motion.  [D.I. 724]

3.      AVT served the Renewed AVT 9019 Motion on all creditors.  AVT Affidavit of Service [D.I. 726]; July 31, 2018 Hearing Transcript, p. 19 [D.I. 741].

4.      On March 14, 2018, the Trustee filed his Chapter 7 Trustee's Objection to the Renewed AVT Motion [D.I. 727] and submitted a brief in support thereof [D.I. 728] (together the Objection and brief in support are referred to as the "Trustee's Objection").

5.      Other than the Trustee, no other party objected to the Renewed AVT 9019 Motion.

## II.    REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  The October and December Purchase Money Security Interests Granted to Avnet

6.      On or about September 22, 2005, Avnet, Inc. ("Avnet") and debtor Incentra Solutions, Inc. ("Incentra Solutions"), entered into the Avnet Partner Solutions U.S. Partner Agreement (the "Avnet Partner Agreement"). The Avnet Partner Agreement sets forth the terms and agreements under which Avnet would provide products as a distributor to Incentra Solutions. AF6; TE17, ¶ 3.

7.      On or about April 21, 2006, Avnet and Incentra Solutions entered into an amendment of the Avnet Partner Agreement (the "Amended Avnet Partner Agreement"), which added certain provisions to the Avnet Partner Agreement. AF7; TE17, ¶ 4.

1

8.      On October 24, 2008, Avnet, Inc., through its Avnet Technologies Solutions division, and Debtor Incentra Solutions, Inc., entered into the Avnet Technology Solutions Partner Agreement Receivable Services Attachment (the "Receivable Services Attachment"). AF8; TE17, ¶ 5.

9.      The Receivable Services Attachment amended the Amended Avnet Partner Agreement to provide Avnet with an interest in certain of Incentra Solutions' accounts receivable. AG9; JTE17, ¶ 5.

10.     Pursuant to the Receivable Services Attachment, Incentra Solutions granted a purchase money security interest (generally, a "PMSI") in favor of Avnet in certain products provided and the payments by the end-users for the products. AF10; TE17, ¶ 5.

11.     Specifically, Incentra Solutions assigned to Avnet "all of its right, title and interest in the Assigned Payment and in the Products represented by the Assigned Payment (including the right to any Products returned by the End User), with all rights and remedies of an unpaid seller, but with none of [Incentra's] obligations to the end user" (the "October PMSI"). AF11, TE17, ¶ 5.

12.     The Receivable Services Attachment granted Avnet the right to file a UCC-1 financing statement pursuant to the Uniform Commercial Code to protect its right, title, and interest in the assigned payments. AF12; TE17, ¶ 5.

13.     On or about October 28, 2008, a UCC-1 Financing Statement, File Number 2008033286-1, was filed with the State of Nevada Secretary of State listing Incentra as the debtor. AF13; TE17, ¶ 9.

14.     On December 15, 2008, Scott Bluestein ("Bluestein"), of Laurus sent email correspondence to Matthew Richman ("Richman"), Chief Corporate Development Officer and

2

Treasurer of Incentra Solutions, authorizing Incentra Solutions to grant an additional PMSI in favor of Avnet during the month of December 2008 (the "December 15, 2008 Email"). TE17, ¶ 11. The December 15, 2008 Email provides:

> Laurus understands that Incentra desires to grant to Avnet (one of your product distributors) the right to file a PMSI on new orders (up to $3.0mm) that Incentra will be processing with Avnet for the balance of the month of December 2008. Laurus authorizes Incentra to grant those PMSI's as needed during the month of December and will not contest the filing of PMSI's by Avnet, during December 2008. No PMSI's shall be granted or filed after December 31, 2008. The resulting AR will be deemed ineligible.

*Id.*

15.    Richman forwarded a copy of the December 15, 2008 Email to Kathy Kagay at Avnet with the following explanation:

> 1) Although the note states that "No PMSI's shall be granted or filed after December 31, 2008" this is meant to mean that there will be no new PMSI's for any orders processed with Avnet after 12/31/08 and thus the actual perfection point of the PMSI would be at that time (of shipment). It is the intention of both Incentra and Laurus that the authorization to file PMSI (which will be filed in December, but may not perfect until after that) is for all orders placed in December 2008, regardless of when the actually ship. There will be no PMSI's granted for orders placed with Avnet after 12/31/08.

*Id.*

16.    In reliance on the December 15, 2008 Email, Avnet and the Debtors entered into a Security Agreement – Purchase Money dated December 17, 2008 (the "Security Agreement"). AF16; TE17, ¶ 12.

17.    Pursuant to the Security Agreement, the Debtors granted Avnet a PMSI and continuing lien on the Debtors' rights, title, and interests in the following collateral:

> The goods, software and inventory sold by AVNET to debtor, including chattel paper, deposit accounts, accounts, accounts receivable, rights to payment of every kind derived therefrom, together with all related proceeds, attachments, additions and substitutions as each of those terms are defined by the Uniform Commercial Code of the State of Arizona in effect as of the date of this [Security] Agreement, now existing or hereafter arising out of the business of the Debtor and regardless

3

as to whether such collateral is in the possession of the Debtor, warehouseman, bailee, or any other third party (the "Collateral").

(the "December PMSI"). AF17; TE17, ¶ 13.

18.     On or about December 18, 2008, UCC-1 Financing Statements (the "December 2008 UCC-1 Financing Statements") were filed with the Secretaries of State for Nevada, Delaware, Illinois, New Jersey, and Oregon, listing several of the Debtors as parties to the December PMSI and Security Agreement. AF18; TE17, ¶¶ 14-19.

19.     Subsequent to filing the December 2008 UCC-1 Financing Statements, Avnet provided formal notice to the Laurus parties. AF18; TE17, ¶¶ 20-25.

20.     Notice to the Laurus entities as provided by Avnet was adequate for perfection purposes under the Uniform Commercial Code and any applicable state or federal law.  AF20.

21.     Pursuant to the Partner Agreement, Amended Partner Agreement, the Security Agreement, the December 2008 UCC-1 Financing Statements, and the December PMSI, Avnet fulfilled purchase orders of the Debtors placed pursuant to the December PMSI.

22.     The following invoices (the "December PMSI Products") were issued by Avnet for the Debtors' benefit and secured under the December PMSI.  AF22; TE17, ¶ 26, and Exhibit 21.

| Invoice # | Date | Arrear | Invoice Amount | Invoice # | Date | Arrear | Invoice Amount |
|---|---|---|---|---|---|---|---|
| 15274766 | 12/19/2008 | 30 | $10,851.36 | 1524665 | 12/19/2008 | 30 | $1,584.56 |
| 15275405 | 12/19/2008 | 30 | $1,868.16 | 15279023 | 12/19/2008 | 30 | $3,140.14 |
| 15279742 | 12/19/2008 | 30 | $14,000.00 | 15280277 | 12/19/2008 | 30 | $9,545.56 |
| 15280287 | 12/19/2008 | 30 | $40,048.85 | 15295646 | 12/22/2008 | 27 | $1,235.40 |
| 15295761 | 12/22/2008 | 27 | $19,996.80 | 15295766 | 12/22/2008 | 27 | $15,879.74 |
| 15296526 | 12/22/2008 | 27 | $4,436.71 | 15297273 | 12/22/2008 | 27 | $6,352.48 |
| 15297322 | 12/22/2008 | 27 | $22,987.29 | 15297428 | 12/22/2008 | 27 | $17,443.93 |
| 15297509 | 12/22/2008 | 27 | $5,760.48 | 15297511 | 12/22/2008 | 27 | $27,460.82 |
| 15297961 | 12/22/2008 | 27 | $35,569.49 | 15311681 | 12/23/2008 | 26 | $37,269.01 |
| 15313653 | 12/23/2008 | 26 | $27,247.01 | 15314541 | 12/23/2008 | 26 | $16,547.60 |

4

| Invoice # | Date | Arrear | Invoice Amount | Invoice # | Date | Arrear | Invoice Amount |
|-----------|------|--------|----------------|-----------|------|--------|----------------|
| 15319131 | 12/24/2008 | 25 | $31,921.96 | 15321119 | 12/24/2008 | 25 | $1,533.17 |
| 15321288 | 12/24/2008 | 25 | $11,522.10 | 15323412 | 12/24/2008 | 25 | $7,248.62 |
| 15323419 | 12/24/2008 | 25 | $1,724.64 | 15323946 | 12/24/2008 | 25 | $76,731.42 |
| 15326313 | 12/26/2008 | 23 | $43,218.50 | 15326871 | 12/26/2008 | 23 | $167,612.21 |
| 15327006 | 12/26/2008 | 23 | $22,847.25 | 15327094 | 12/26/2008 | 23 | $30,456.76 |
| 15327297 | 12/26/2008 | 23 | $95,724.70 | 15329347 | 12/26/2008 | 28 | $26,084.08 |
| 15335951 | 12/29/2008 | 20 | $8,683.35 | 15335956 | 12/29/2008 | 20 | $22,847.31 |
| 15335958 | 12/29/2008 | 20 | $58,126.48 | 15335970 | 12/29/2008 | 20 | $51,177.85 |
| 15336944 | 12/29/2008 | 20 | $4,161.24 | 15342246 | 12/30/2008 | 19 | $42,285.78 |
| 15342307 | 12/30/2008 | 19 | $159,556.56 | 15342442 | 12/30/2008 | 19 | $69,706.50 |
| 15342488 | 12/30/2008 | 19 | $72,733.16 | 15349077 | 12/31/2008 | 18 | $85,405.15 |
| 15349350 | 12/31/2008 | 18 | $53,641.63 | 15350439 | 12/31/2008 | 18 | $96,497.52 |
| 15350719 | 12/31/2008 | 18 | $57,127.76 | 15351063 | 12/31/2008 | 18 | $14,000.00 |
| 15360777 | 01/05/2009 | 13 | $10,759.32 | 15372526 | 01/06/2009 | 12 | $123,079.34 |
| 15375876 | 01/06/2009 | 12 | $1,092.48 | 15375944 | 01/06/2009 | 12 | $28,829.54 |
| 15376023 | 01/06/2009 | 12 | $588.00 | 15376070 | 01/06/2009 | 12 | $4,775.02 |
| 15376225 | 01/06/2009 | 12 | $72,956.00 | 15378392 | 01/06/2009 | 12 | $57,025.34 |
| 15378400 | 01/06/2009 | 12 | $9,333.91 | 15384956 | 01/09/2009 | 9 | $55,076.43 |
| 15396687 | 01/08/2009 | 10 | $12,118.64 | 15397003 | 01/08/2009 | 10 | $54,944.18 |
| 15400054 | 01/08/2009 | 10 | $1,757.98 | 15407432 | 01/09/2009 | 9 | $9,479.32 |
| 15408201 | 01/09/2009 | 9 | $4,717.32 | 15422858 | 01/12/2009 | 6 | $17.26 |
| 15427623 | 01/13/2009 | 5 | $35,013.03 | 15441004 | 01/14/2009 | 4 | $40,679.90 |
| 15465946 | 01/16/2009 | 2 | $36,924.17 | 15466141 | 01/16/2009 | 2 | $72,575.10 |
| 15472780 | 01/19/2009 | -1 | $26,487.58 | 15497484 | 01/21/2009 | -3 | $8,400.00 |
| 15499685 | 01/21/2009 | -3 | $10,900.00 | 15510767 | 01/22/2009 | -4 | $6,768.62 |
| 15511061 | 01/22/2009 | -4 | $11,880.00 | 15525589 | 01/23/2009 | -5 | $4,059.50 |
| 15526566 | 01/23/2009 | -5 | $9,000.00 | 15566629 | 01/29/2009 | -11 | $1,120.00 |

23.     Under the December PMSI, Avnet supplied the Debtors with December PMSI Products totaling $2,342,159.07. AF23; TE17, ¶ 27.

**Procedural History in the Bankruptcy Cases Regarding the PMSI Stipulation**

**The DIP Financing Motion**

24.     On February 4, 2009, the Debtors filed their *Motion to Approve Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing Pursuant to 11 U.S.C. Section 364, (II) Authorizing the Debtors' Use of Cash Collateral Pursuant to 11 U.S.C. Section*

5

*363, (III) Granting Adequate Protection to Prepetition Lenders Pursuant to 11 U.S.C. §§ 361,*

*362, 363, and 364, and  (IV) Scheduling the Final Hearing Pursuant to Bankruptcy Rule 4001*

(the "DIP Motion") [D.I. 14].  AF24; TE2.

25.    In the DIP Motion, the Debtors acknowledge that the Debtors and Avnet are parties to a purchase money security agreement pursuant to which Avnet obtained a PMSI in certain products provided by Avnet to the Debtors for resale to the Debtors' customers. DIP Motion, ¶ 14. In the DIP Motion, the Debtors also acknowledge that the Avnet PMSI is secured against the receivables generated from the sale of the Avnet products for $2,912,648.69, which amounts are senior to the amounts owed to Laurus under the Laurus loan documents. AF25, TE2, ¶ 14.

26.    On February 17, 2009, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee" or "Committee").  AF26.

27.    On March 3, 2009, the Creditors' Committee filed its *Objection of the Official Committee of Unsecured Creditors to the Debtors' Motion to Approve Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing Pursuant to 11 U.S.C. Section 364, (II) Authorizing the Debtors' Use of Cash Collateral Pursuant to 11 U.S.C. Section 363, (III) Granting Adequate Protection to Prepetition Lenders Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and  (IV) Scheduling the Final Hearing* (the "Committee DIP Objection") [D.I. 104.] AF27; TE5.

28.    In the Committee DIP Objection, the Committee made certain allegations and raised certain legal and factual questions concerning two purchase money security agreements entered into between the Debtors and Avnet dated October 24, 2008 (the "October PMSI") and

December 17, 2008 (the "December PMSI") through which Avnet alleged that Avnet has a perfected security interest in certain assets of the Debtors. AF28; TE11, ¶¶ D, E.

29.     At the March 5, 2009, Final DIP Financing Hearing, this Court explicitly rejected extending a lien or other security interest in the proceeds from causes of action under Sections 542, 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code. *See March Hearing Transcript*, pp. 119-120 [D.I. 135.] AF29; TE28.

30.     At that same time, counsel for the Laurus Parties and counsel for Debtors were considering Avnet's preference liability.   Anthony DiPaolo, the former CFO of the Debtors testified:

> Q.     So would it be fair to say, as of March 3rd, 2009, the lawyers for Laurus and the lawyers for the debtors were considering preferences as it relates to Avnet?
>
> A.     Yes.

TE128, p. 34.

31.     Additionally, the record shows that counsel for Debtors and Laurus exchanged email correspondence concerning all preference liability as early as at least March 4, 2009. TE39.

32.     On March 23, 2009, the Court entered its *Final Order (I) Authorizing (A) Secured Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, and 364(c) and (d); (B) Granting Security Interests, Superpriority Claims and Adequate Protection; and (C) Use of Cash Collateral* [D.I. 142] (the "Final DIP Order"). The Final DIP Order excluded any liens in favor of the Laurus Parties against the estates' avoidance actions [D.I. 142, ¶ 7.] AF30; TE6.

### Cash Management Motion

33.     On March 4, 2009, the Debtors filed their *Motion of Debtors for Order under 11 U.S.C. §§ 105, 363, 503(b), 1107 and 1108 Authorizing (I) Maintenance of Existing Bank*

7

*Accounts, (II) Continued Use of Existing Business Forms, (III) Continued Use of Existing Cash Management System, (IV) Providing Administrative Priority Status to Postpetition Intercompany Claims and (V) the Waiver of Section 345(b) Deposit and Investment Requirements* [D.I. 9] (the "Cash Management Motion"). AF31; TE1.

34.     Through the Cash Management Motion, the Debtors stated that Debtors' cash management system consists of approximately twenty-three (23) bank accounts, with thirteen (13) accounts and six (6) lockboxes maintained at Wells Fargo Bank, N.A. ("Wells Fargo") and the balance of accounts maintained at Comerica Bank, Key Bank, PNC Bank, and Lloyds TSB [D.I. 9]. AF32; TE1

35.     Most customer payments were received at one of six lockboxes maintained at Wells Fargo. All funds received in these lockboxes were automatically swept into a sweep account at Wells Fargo xxxxxxx1442 (the "Sweep Account"). Each business day, the monies in this Sweep Account were in turn swept to a separate account of the Debtors' lenders and the amounts are applied to pay down the Debtors' obligations under the prepetition loan documents [D.I. 9, p. 6]. AF33; TE1.

36.     Pursuant to the Debtors and lenders' credit arrangements, the Debtors' lenders advanced funds, on as-needed basis, into the Debtors' main operating account no. 494-5056281 maintained at Wells Fargo. Most disbursements are made out of this account by the Debtors for operating and other expenses, including payments to most of the Debtors' suppliers and vendors [D.I. 9]. AF34; TE1.

37.     On February 6, 2009, the Court entered an Order approving the Debtors' cash management system as set forth in the Cash Management Motion [D.I. 26.] AF35.

*DEL 408362827v2*

**Section 363 Sale Motion**

38.     On February 4, 2009, the Debtors filed their *Debtors' Motion For An Entry Of An Order (A) Approving Bid Procedures for the Sale of the Debtors' Assets, (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts, and (D) Granting Related Relief* (the "Bid Procedures Motion") [D.I. 15].  AF36; TE3.

39.     On February 4, 2009, the Debtors also filed their *Debtors' Motion for and Order: (1) Approving Asset Purchase Agreement And Authorizing The Sale Of Certain Of Its Assets Outside The Ordinary Course Of Business To Laurus Master Fund, Ltd. (In Liquidation) Or A Higher And Better Bidder; (II) Authorizing The Sale of Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests Pursuant To Sections 363(a), (f) and (m) Of The Bankruptcy Code (III) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Lease; And (IV) Granting Related Relief* (the "Sale Motion") [D.I. 16] seeking approval of the sale of substantially all of the Debtors' assets to the Debtors' pre-petition and post-petition lenders, the Laurus Parties.[1] AF37; TE4.

40.     On February 26, 2009, this Court held a hearing on the Bid Procedures Motion. At that hearing, counsel for Avnet appeared and made clear for the record that the Avnet PMSIs covered not only the Avnet Products, but also the Avnet PMSI accounts receivable and proceeds related thereto. *February 26, 2009 Hearing Transcript*, pp. 12-15.  Counsel for Laurus was present at this hearing and raised no objection to the points raised by Avnet. *February 26, 2009 Hearing Transcript*, pp. 1-3.  AF38; TE27.

---

[1] The Laurus Parties include: Laurus Master Fund, Ltd., Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, And/Or Psource Structured Debt Limited.

9

41.     On March 24, 2009, Avnet filed its *Limited Objection of Secured Creditor Avnet, Inc., to Debtor's Motion for an Order: (i) Approving Asset Purchase Agreement and Authorizing the Sale of Certain of Its Assets Outside the Ordinary Course of Business to Laurus Master Fund, Ltd. (In Liquidation) or a Higher and Better Bidder; (ii) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(a), (f) and (m) of the Bankruptcy Code, (iii) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (iv) Granting Related Relief* (the "Avnet Sale Objection") [D.I. 145.]  AF39; TE7.

42.     On April 1, 2009, the Debtors, the Committee, and Avnet entered the *Stipulation Between Debtors, The Official Committee of Unsecured Creditors, and Secured Creditor, Avnet, Inc., Regarding Purchase Money Security Interest* (the "PMSI Stipulation"). The PMSI Stipulation was filed with the Court on April 2, 2009 [D.I. 195.]  AF40; TE11.

43.     The PMSI Stipulation provides as follows:

1.     Avnet agrees to maintain any and all funds it receives from accounts receivable that are subject to the October PMSI in a segregated internal Avnet account (the **"October PMSI Account"**).

2.     Avnet agrees to maintain any and all funds it receives from accounts receivable that are subject to the December PMSI in a second separate segregated internal Avnet account (the **"December PMSI Account"**).

3.     Avnet agrees that it will not apply or otherwise use the funds in the October and December PMSI Accounts until its dispute with the Committee has been resolved.

4.     The Debtors agree that they will maintain any and all funds they receive from accounts receivable that are subject to the December PMSI in a segregated account (the **"Debtor PMSI Account"**).

5.     The Debtors agree that they will not use the funds contained in the Debtor PMSI Account.

AF41; TE11, ¶¶ 1-5.

44.     The PMSI Stipulation applies to all December PMSI collateral. TE11.

45.      Pursuant to the PMSI Stipulation, if the Committee seeks to file a motion, lawsuit, or other process against Avnet related to either the October PMSI or the December PMSI, the Committee was required to do so no later than March 30, 2009 (the "Committee Challenge Deadline"). AF42; TE11.

46.     On April 1, 2009, Bruce Grohsgal, Esq., counsel for the Debtors, sent an email to counsel for Laurus as follows: "This stip. Sets forth the Agreement between Avnet and the committee set forth at the 3/5 hearing that you and I attended, which essentially preserves the status quo on the Avnet payments."  AF43; TE40.

47.     On April 14, 2009, the Court entered its *Order Approving Stipulation Between Debtors, The Official Committee of Unsecured Creditors, and Secured Creditor, Avnet, Inc., Regarding Purchase Money Security Interest* (the "PMSI Stipulation Order") [D.I. 213.]  AF44; TE12.

48.     On March 31, 2009, the Committee Challenge Deadline passed without further action by the Debtors or the Committee. Pursuant to the Debtors' representations in the DIP Motion, the Debtors did not intend to challenge the validity of the October or December PMSI's. As such, effective March 31, 2009 and without a further order of this Court to the contrary, the October and December PMSI's could be considered valid.  AF45.

49.     On April 2, 2009, the Court entered its *Order (SALE) Approving (I) Asset Purchase Agreement (II) Sale of Substantially All of Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests (III) Waiver of Stay Provisions Under Bankruptcy Rules 6004 and 6006 (IV) Authorizing the Assumption and Assignment of Executory Contracts and*

11

*Unexpired Leases and (V) Granting Other Related Relief* (the "Sale Order") [D.I. 192]. AF46;

TE8.

50.     The Sale Order approved the Asset Purchase Agreement (the "APA") among the

Laurus Parties and the Debtors and was attached to the Sale Order as Exhibit A [D.I. 192-1].

AF47; TE8.

51.     Section 2.1 of the APA defines Purchased Assets to include: (g) all Inventory; (h)

all accounts receivable of the Sellers, except to the extent an Excluded Asset; and (j) all

lockboxes and bank accounts and all cash and cash equivalents [D.I. 192-1].  AF47.

52.     Section 2.3 of the APA defines Assumed Liabilities to include: (a) all Liabilities

relating to the Business acquired hereunder that arise from events, facts or circumstances that

occur on or after the Closing; (c) all Liabilities (whether known or unknown) arising from the

sale of Products and Services or Inventory after the Closing; (g) all other Liabilities with respect

to the Business or the Purchased Assets arising, created and incurred after the Closing. AF49.

53.     Section 5.4 of the APA, subject to the entry of the Sale Order, on the Closing

Date, Purchaser will acquire all of each Seller's right, title and interest in the Purchased Assets,

free and clear of all Interests. . . other than Permitted Exceptions.  AF50.

54.     On or about April 15, 2009, the sale of assets closed.  AF51.

55.     On June 4, 2009, the Debtors filed a *Notice of Filing Further Amended Set of*

*Revised Schedules to the Asset Purchase Agreement* [D.I. 274]. The amended schedules were

attached as Exhibit 1 (the "Amended Schedules") [D.I. 274-1]. AF52.

56.     Schedule 5.4(a) (Encumbrances) of the Amended Schedules provides that Avnet

has a PMSI security interest in proceeds from certain receivables.  AF53.

DEL 408362827v2

57.     Schedule 5.15(a) (Material Contracts) of the Amended Schedules provides that an Avnet Partner Solutions distributor agreement dated January 1, 2007 and an Avnet Amendment dated July 1, 2008 were Material Contracts.  AF54.

58.     Schedule 5.20(d) (Encumbrance of Purchased Assets) of the Amended Schedules provides that there is an Avnet PMSI (if there is a remaining balance covered by PMSI position at APA closing.)  AF55.

**The Reconciliation of PMSI Invoices and Payments Received by Debtors and Avnet Thereunder**

59.     Subsequent to the PMSI Stipulation Order and expiration of the Committee Challenge Deadline, on May 1, 2009, Bruce Grohsgal, Esq., as counsel to the Debtors, forwarded a "PMSI Summary." AF56; TE41.

60.     There was a telephone conversation between counsel to Debtors and Avnet on October 12, 2009 and an email dated October 14, 2009 from Avnet counsel to Debtors' counsel regarding amounts owed under the PMSI. AF57; TE46.

61.     On October 27, 2009, after follow-up requests from Avnet's counsel, Debtors' counsel emailed Tony DiPaolo, former CFO of the Debtors, instructing him to contact Kathy Kagay, Senior Director of Credit at Avnet to reconcile payments. AF58; TE48.

62.     Between October 27, 2009 and December 4, 2009, Tony DiPaolo, George Vareldzis, and Kaoly Kiatoukaysy attempted to reconcile the PMSI invoice and payment information with the Debtors' records and communicated with Kathy Kagay and Jolea Kidd at Avnet about the reconciliation. AF59; TE61.

63.     Via email dated December 4, 2009, Kathy Kagay transmitted the substantially complete reconciliation of the PMSI invoices (the "Final Reconciliation").  AF60; TE 61, 62.

64.     On December 11, 2009, Tony DiPaolo emailed Kathy Kagay stating:

There are two items that we are still reviewing. I understand they total $43k, so I think we are close. George has the ball on one item, the other is a bit difficult as we are working with our Chicago staff to dig out records—after centralizing the back-office we are left with sales reps and a couple of insider sales people in that office. Involving sales staff in research of old items is a challenge. One of my staff will be heading to Chicago next week for some internal audit work and I expect to be able to resolve this item no later than then.

AF61; TE66.

65.     On December 11, 2009, Kathy Kagay requested from Tony DiPaolo that "Incentra wire the undisputed balance while you continue to work out the rest of the reconciliation." AF62; TE66.

66.     On December 11, 2009, Tony DiPaolo emailed Debtors' counsel Grohsgal, Pomerantz, and Fiero, as well as Kathy Kagay and George Vareldzis, informing Debtors' counsel that:

> We have reconciled with Avnet all but a few small items (about $43k out of more than $1MM). I am not sure what the next step would be for Avnet or us to resolve this.
>
> I spoke with Kathy Kagay, Avnet's Senior Director of Credit today and am copying here on this email. I explained that the agreement with Avnet did not attach to the assets that were sold to Incentra LLC, but beyond that I could not shed any light on the situation.

AF63; TE66.

67.     On December 14, 2009, Kathy Kagay emailed a response to Debtors' counsel stating:

> Of the $2.9m secured we have reconciled and are in agreement with Incentra all except $43k (still working on). The net result is a payment due to Avnet for approximately $1.3m, leaving the $43k to be reconciled. The bottom line is who makes this payment to Avnet.

AF64; TE66.

68.     The end result of the reconciliation prepared by Tony DiPaolo and Kathy Kagay showed as follows (the "Reconciliation"):

14

| | |
|---|---:|
| Total December PMSI Invoices: | $2,347,559.07 |
| Total November PMSI Invoices: | $542,375.82 |
| **Total Invoices:** | **$2,889,934.89** |
| December PMSI Invoice Payments to Avnet: | ($973,828.00) |
| November PMSI Invoice Payments to Avnet: | ($601,363.00) |
| **Subtotal Due Avnet:** | **$1,312,743.89** |
| Credit Due Debtor for tax, Invoice 15329347: | ($1,763.26) |
| **Total Due Avnet:** | **$1,312,980.63** |
| Invoices Unresolved: | ($42,166.16) |
| **Minimum Payment Due Avnet:** | **$1,270,814.47** |

AF65; TE17, Exhibit 22; TE127, pp 73-74; TE128, p. 53.

69.     It is undisputed that Avnet had a valid perfected purchase money security interest in the Debtors' December PMSI Collateral; Avnet was owed $1.3 million under the December PMSI; and it the Debtors violated the PMSI Stipulation by filing to segregate these amounts.

**The Resolution of the Motion to Compel and the Stipulation and Release**

70.     In January and February 2010, counsel for Avnet, counsel for Debtors, and counsel for Laurus exchanged communications in an attempt to resolve the PMSI dispute and have the Avnet PMSI monies returned to Avnet. Avnet provided copies of the PMSI documentation, hearing transcripts, relevant pleadings and email correspondence, and copies of the reconciliation of the amounts due to Avnet to counsel to Laurus.  AF66.

71.     On January 26, 2010, counsel for Avnet emailed counsel for Laurus and counsel for Debtor regarding Avnet's valid PMSI. AF67; TE74.

15

72.     On January 27, 2010, counsel to Laurus requested via email to counsel for Avnet, the Debtors, and the Committee, confirmation that there were no objections to the provision to the Laurus Parties of any accounting regarding the PMSI information. On January 27, 2010, counsel to the Debtors confirmed that the accounting information could be shared with the Laurus Parties.  AF68.

73.     Since both the Debtors and Laurus Parties did not turn over Avnet's PMSI Collateral, on February 24, 2010, Avnet filed its *Motion Of Secured Creditor Avnet, Inc., To Enforce Sale Order To Specifically Exclude Avnet PMSI Collateral From Sale Assets And To Compel Laurus Master Fund, Ltd., Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, And/Or Psource Structured Debt Limited, To Turn Over Avnet Collateral* (the "Avnet Motion to Compel") [D.I. 371]. AF69; TE13.

74.     Avnet could have sought a contempt order against the Debtors for violating the PMSI Stipulation and Order.  That would have required Debtors to incur fees and expenses to seek relief from the Laurus Parties. Regardless of which method of enforcement Avnet Sought, Debtors had liability for violating the PMSI Stipulation.

75.     The Debtors did not object or otherwise respond to the Avnet Motion to Compel. Nor did the Debtors object to the information contained in the Reconciliation, which was based on the agreed upon information exchanged from the records of Avnet and the Debtors between October 27, 2009 and December 31, 2009.  AF71.

76.     On March 27, 2010, Laurus filed its *Objection to Motion of Secured Creditor Avnet, Inc. to Enforce Sale Order* [D.I. 379.]  AF72; TE15.

16

77.    On April 7, 2010, counsel for Laurus had a call with his client to get settlement authority with respect to Avnet's Motion to Compel.  Specifically, counsel for Laurus asked Laurus for authority of $1 million to settle the Motion to Compel.  TE90, 107.

78.    On April 9, 2010, Avnet filed its *Reply to Objection of Laurus Master Fund, Ltd., Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, and/or Psource Structured Debt Limited to Motion to Enforce Sale Order to Specifically Exclude Avnet PMSI Collateral from Sale Assets and to Compel Laurus Master Fund, Ltd., Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, and/or PSource Structured Debt Limited, To Turn Over Avnet Collateral* [D.I. 387] and the 2010 Kagay Declaration. AF73; TE 16-17.

79.    On April 13, 2010 at 6:51 a.m. CDT Laurus' counsel, via email (the "Settlement Email") informed all parties, including Avnet's counsel, Debtors' counsel, Laurus representatives, and Committee counsel, that the Laurus parties and Avnet have agreed to settle the Avnet Motion to Compel and the dispute regarding the Avnet PMSI's for $975,000 plus the parties' exchange of general releases (the "Settlement").  AF74; TE111.

80.    In discussing the settlement with his client, counsel for Laurus explained to his client, "I believe that the savings of $300,000, the time value of the use of the money that the funds had, and avoidance of further legal expense is a *very good result*." TE107 (emphasis added).

81.    Anthony DiPaolo, former CFO of the Debtors, also agreed that the terms of the settlement were good based on "how big a discount Avnet was willing to take." TE128, p. 61.

82.    After the Laurus Settlement Email, Avnet's counsel expressed via email to Debtors' counsel and counsel to the Laurus Parties Avnet's desire to incorporate Debtor releases

17

into the Settlement. AF75; TE113. Without such a release, the Debtors still faced liability for the deficiency between the settlement and the agreed $1.3 million, in addition to any potential additional liability that could have been imposed by the Court.

83.     In the Seventh Monthly Fee Application for Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP, As Counsel to the Debtors and Debtors in Possession, for the Period From August 1, 2009 Through April 30, 2010 [DI 402] ("PSZJ Seventh Fee Application"), Pachulski Stang Ziehl & Jones LLP ("PSZJ") billed time to the estate for matters relating to the dispute raised by Avnet in its Motion to Compel and the settlement between October 21, 2009 through April 14, 2010. PSZJ Seventh Fee Application. In addition, PSZJ billed time to "telephone conferences and correspondence with client regarding Avnet settlement." *Id*. At p. 20. AF76; TE22.

84.     In the Eighth (Combined) Application for Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP, as Counsel to the Debtors and Debtors in Possession, for the Period From May 1, 2009 Through June 30, 2010 [DI 422] ("PSZJ Eighth Fee Application"), PSZJ billed time relating to the issues Avnet's Motion to Compel and the settlement between May 11, 2010 through May 19, 2010. PSZJ Eighth Fee Application. The PSZJ Eighth Fee Application contains at least six time entries for reviewing and/or revising the settlement. Id. In addition, the PSZJ Eighth Fee Application accounts for numerous telephone conferences and correspondence counsel for Debtors had "regarding Avnet resolution" and also includes "[f]urther revisions to Avnet Stipulation." *Id.* AF77; TE22.

85.     In the Final Application for Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP, as Counsel to the Debtors and Debtors in Possession, for the Period from February 4, 2009 Through June 30, 2010 (D. I. 423-10] ("PSZJ Final Fee

Application"), counsel for the Debtors billed time for reviewing and revising the Stipulation and Release between May 11, 2010 through May 18, 2010.  AF78; TE22.

86.     Pachulski Stang Ziehl & Jones LLP billed time to reviewing and editing the Stipulation and Release and executed the Stipulation and Release on behalf of the Debtors.  TE 21-22.

87.      Pachulski Stang Ziehl & Jones LLP was compensated for the services it rendered to the Debtors to resolve the Avnet Motion to Compel.

88.     While counsel for Laurus was negotiating a settlement with Avnet, counsel for the Laurus parties was in regular contact with counsel for Debtors about the status of negotiations. TE 69, 75, 77, 79, 80, 82, 86, 87, 90, 109, 110.

89.     In addition, the Debtors estates were required to compensate Laurus' counsel for fees and expenses they incurred defending against the Avnet Motion to Compel.  TE6, ¶5.

**Conversion and the Preference Action**

90.     Six months later, on November 3, 2010, this Court converted the Debtors' cases to Chapter 7 of the Bankruptcy Code and appointed Jeoffrey L. Burch as the Chapter 7 Trustee (the "**Trustee**").

91.     On January 12, 2012, the Trustee filed an adversary proceeding to avoid and recover $5,444,541.11, allegedly paid to Avnet within 90 days of the Debtors' bankruptcy filing, as a preference pursuant to Sections 547 and 550 of the Bankruptcy Code, in the case styled *Burch v. Avnet, Inc.*, United States Bankruptcy Court for the District of Delaware Adversary Proceeding No. 12-50026-MFW.

*DEL 408362827v2*

92.     On March 30, 2012, Avnet moved to dismiss the Adversary Complaint based on the releases contained in the Stipulation and Release pursuant to FED. R. CIV. P. 12(b)(6).  The Trustee filed his opposition to Avnet's Motion to Dismiss on April 4. 2012.

93.     On November 26, 2012, this Court granted Avnet's Motion to dismiss and ruled that: (1) the Stipulation and Release was binding on the Trustee; (2) the release covered preference claims under Sections 547 and 550 of the Bankruptcy Code; and (3) there was nothing defective in the notice pursuant to which this Court issued its order approving the Stipulation and Release.  *In re Managed Storage*, 2012 WL 5921723 at * 3-8.

94.     On December 10, 2012, the Trustee appealed this Court's decision to the United States District Court for the District of Delaware (the "**District Court**").

95.     On January 16, 2015, the District Court issued its decision reversing and remanding the adversary proceeding back to this Court.  The District Court affirmed this Court's conclusions that: (1) the Trustee is bound by the terms of the Stipulation and Release, and (2) and that the release included preference actions under Sections 547 and 550 of the Bankruptcy Code.  *Burch v. Avnet*, 2015 WL 243183 at *4-5.  However, the District Court remanded this matter back to this court to review the issues of notice to the Committee (and creditors) and to "assess the Stipulation and Release by the standards of *In re Martin*, [91 F.3d 389, 393 (3d Cir. 1996)]."  *Id.*

**The Alleged Preferential Transfers**

96.     The 90-day period prior to the Petition Date, hereinafter referred to as the "Preference Period," ranges from November 6, 2008 to February 4, 2009.  AF79.

97.     Within the Preference Period, the Debtors made eight (8) wire transfers (the "Preference Transfers") totaling $5,110,049.40, each from the Incentra Solutions, Inc. Wells Fargo Operating Account, Account No. 494-5056281 and to Avnet, Inc. AF80.  The date,

20

amount, and identification number for each Preference Transfer, as well as the invoices (the "Preference Invoices") closed by each of the Preference Transfers according to Avnet's records is as follows:

| Transfer Date 11/7/2008 | Transfer Amount $224,841.99 | Debtor Trans. ID 81107080238 | Avnet Trans ID 2700343304 |
|---|---|---|---|
| | Invoice Date | Invoice No. | Invoice Amount |
| | 9/17/2008 | 14482641 | $12,044.64 |
| | 9/17/2008 | 14481520 | $3,000.00 |
| | 9/17/2008 | 14482609 | $18,498.11 |
| | 9/18/2008 | 14493582 | $70,035.24 |
| | 9/19/2008 | 14505609 | $1,694.45 |
| | 9/22/2008 | 14515467 | $8,903.96 |
| | 9/22/2008 | 14512256 | $956.25 |
| | 9/22/2008 | 14519895 | $936.76 |
| | 9/22/2008 | 14515474 | $4,781.81 |
| | 9/22/2008 | 14515471 | $10,361.59 |
| | 9/22/2008 | 14515446 | $20,101.50 |
| | 9/22/2008 | 14515456 | $2,125.27 |
| | 9/23/2008 | 14532506 | $21,744.20 |
| | 9/23/2008 | 14526084 | $32,228.65 |
| | 9/23/2008 | 14528428 | $19,079.64 |

| Transfer Date 11/18/2008 | Transfer Amount $1,275,956.96 | Debtor Trans. ID 81118072920 | Avnet Trans ID 2700351984 |
|---|---|---|---|
| | Invoice Date | Invoice No. | Invoice Amount |
| | 9/24/2008 | 14545826 | $24,281.01 |
| | 9/24/2008 | 14547368 | $131.55 |
| | 9/24/2008 | 14542523 | $1,910.67 |
| | 9/24/2008 | 14547419 | $2,673.60 |
| | 9/25/2008 | 14561300 | $4,851.38 |
| | 9/25/2008 | 14558105 | $2,098.52 |
| | 9/25/2008 | 14560391 | $129,927.09 |
| | 9/26/2008 | 14579747 | $607,604.95 |
| | 9/26/2008 | 14575001 | $3,337.82 |
| | 9/26/2008 | 14576049 | $4,106.31 |

21

| Invoice Date | Invoice No. | Invoice Amount |
|---|---|---|
| 9/26/2008 | 14574736 | $3,891.83 |
| 9/26/2008 | 14580103 | $21,062.80 |
| 9/26/2008 | 14580258 | $13,504.89 |
| 9/26/2008 | 14574976 | $190,320.00 |
| 9/26/2008 | 14574631 | $190,320.00 |
| 9/26/2008 | 14573142 | $17,524.24 |
| 9/26/2008 | 14580157 | $19,923.35 |
| 9/26/2008 | 14576181 | $8,843.05 |
| 9/26/2008 | 14578372 | $14,520.14 |
| 9/26/2008 | 14572467 | $5,430.75 |
| 9/29/2008 | 14587839 | $9,250.55 |
| 9/29/2008 | 14587697 | $1,200.74 |
| 9/30/2008 | 14601394 | $8,014.44 |
| 9/30/2008 | 14600933 | $15,114.05 |

| Transfer Date | Transfer Amount | Debtor Trans. ID | Avnet Trans ID |
|---|---|---|---|
| 11/21/2008 | $349,330.98 | 81121076471 | 2700352957 |

| Invoice Date | Invoice No. | Invoice Amount |
|---|---|---|
| 10/1/2008 | 14618098 | $471.84 |
| 10/1/2008 | 14618026 | $17,039.98 |
| 10/1/2008 | 14618122 | $101,900.43 |
| 10/1/2008 | 14618116 | $63,950.16 |
| 10/1/2008 | 14610715 | $7,162.72 |
| 10/1/2008 | 14614207 | $84,597.03 |
| 10/2/2008 | 14627710 | $8,883.96 |
| 10/2/2008 | 14628524 | $244.10 |
| 10/2/2008 | 14627266 | $2,335.50 |
| 10/3/2008 | 14642151 | $28,640.76 |
| 10/7/2008 | 14664943 | $11,192.95 |
| 10/7/2008 | 14662216 | $31,770.50 |
| 10/7/2008 | 14660961 | $2,920.65 |

| Transfer Date | Transfer Amount | Debtor Trans. ID | Avnet Trans ID |
|---|---|---|---|
| 12/17/2008 | $1,199,627.34 | 81217042433 | 2700369128 |

| Invoice Date | Invoice No. | Invoice Amount |
|---|---|---|

22

| Invoice Date | Invoice No. | Invoice Amount |
|---|---|---|
| 6/4/2008 | 13545589 | $10,432.31 |
| 10/8/2008 | 14678916 | $2,585.87 |
| 10/8/2008 | 14678068 | $3,075.37 |
| 10/8/2008 | 14675284 | $35,167.77 |
| 10/9/2008 | 14688963 | $4,613.00 |
| 10/9/2008 | 14691748 | $125,246.50 |
| 10/10/2008 | 14700800 | $663.94 |
| 10/10/2008 | 14699430 | $1,399.24 |
| 10/10/2008 | 14704767 | $18,932.95 |
| 10/13/2008 | 14715303 | $6,364.02 |
| 10/13/2008 | 14711554 | $75,367.72 |
| 10/14/2008 | 14727148 | $3,776.00 |
| 10/14/2008 | 14727502 | $12,199.00 |
| 10/14/2008 | 14722475 | $31,105.38 |
| 10/15/2008 | 14741717 | $880,813.61 |

| Transfer Date | Transfer Amount | Debtor Trans. ID | Avnet Trans ID |
|---|---|---|---|
| 12/18/2008 | $930,212.75 | 81218045279 | 2700370652 |

| Invoice Date | Invoice No. | Invoice Amount |
|---|---|---|
| 10/8/2008 | 14675303 | $65,570.43 |
| 10/14/2008 | 14727913 | $23,846.28 |
| 10/14/2008 | 14727904 | $4,701.27 |
| 10/15/2008 | 14737172 | $92,013.98 |
| 10/16/2008 | 14753206 | $4,800.00 |
| 10/16/2008 | 14749521 | $26,787.60 |
| 10/16/2008 | 14746959 | $2,930.26 |
| 10/17/2008 | 14764149 | $37,052.36 |
| 10/20/2008 | 14770266 | $3,853.52 |
| 10/20/2008 | 14771952 | $69,288.63 |
| 10/20/2008 | 14770633 | $16,672.79 |
| 10/21/2008 | 14787164 | $12,201.60 |
| 10/21/2008 | 14789424 | $2,012.00 |
| 10/21/2008 | 14785978 | $15,131.55 |
| 10/22/2008 | 14802636 | $152,471.72 |
| 10/22/2008 | 14798371 | $7,349.58 |
| 10/22/2008 | 14798064 | $1,841.89 |
| 10/22/2008 | 14802440 | $4,108.14 |
| 10/22/2008 | 14800236 | $4,320.00 |
| 10/22/2008 | 14800224 | $1,795.50 |
| 10/23/2008 | 14812981 | $4,480.00 |

23

| Invoice Date | Invoice No. | Invoice Amount |
|---|---|---|
| 10/23/2008 | 14815673 | $26,963.58 |
| 10/24/2008 | 14831398 | $152,137.22 |
| 10/24/2008 | 14822501 | $18,294.75 |
| 10/24/2008 | 14829542 | $1,120.00 |
| 10/24/2008 | 14831499 | $37,103.56 |
| 10/27/2008 | 14842420 | $5,329.20 |
| 10/28/2008 | 14853607 | $6,262.42 |
| 10/28/2008 | 14848172 | $12,475.42 |
| 10/28/2008 | 14848509 | $50,342.86 |
| 10/28/2008 | 14848176 | $35,070.54 |
| 10/28/2008 | 14848717 | $20,187.98 |
| 10/28/2008 | 14849011 | $2,887.01 |
| 10/29/2008 | 14868457 | $13,372.15 |
| 10/29/2008 | 14868374 | $841.09 |
| 10/30/2008 | 14880343 | $5,166.35 |

| Transfer Date | Transfer Amount | Debtor Trans. ID | Avnet Trans ID |
|---|---|---|---|
| 12/29/2008 | $492,273.97 | 81229079753 | 2700375115 |

| Invoice Date | Invoice No. | Invoice Amount |
|---|---|---|
| 10/29/2008 | 14868458 | $32,996.86 |
| 10/30/2008 | 14876011 | $19,751.39 |
| 10/30/2008 | 14877077 | $22,358.48 |
| 11/5/2008 | 14925399 | $128,259.96 |
| 11/5/2008 | 14925649 | $106,587.80 |
| 11/6/2008 | 14942405 | $50,732.82 |
| 11/7/2008 | 14952642 | $8,172.45 |
| 11/7/2008 | 14947861 | $2,288.88 |
| 11/7/2008 | 14952726 | $8,004.27 |
| 11/10/2008 | 14965733 | $154,938.99 |
| 11/10/2008 | 14964504 | $6,414.05 |
| 11/10/2008 | 14964750 | $1,865.90 |
| 11/10/2008 | 14964777 | $2,063.72 |
| 11/11/2008 | 14970999 | $42,987.35 |

DEL 408362827v2

| Transfer Date | Transfer Amount | Debtor Trans. ID | Avnet Trans ID |
|---|---|---|---|
| 1/12/2009 | $54,610.98 | 90112077593 | 2700384365 |

| | Invoice Date | Invoice No. | Invoice Amount |
|---|---|---|---|
| | 4/21/2008 | 13136985 | $8,816.11 |

| Transfer Date | Transfer Amount | Debtor Trans. ID | Avnet Trans ID |
|---|---|---|---|
| 1/16/2009 | $583,192.43 | 90116059065 | 270038680 |

| | Invoice Date | Invoice No. | Invoice Amount |
|---|---|---|---|
| | 10/28/2008 | 14849081 | $21,137.50 |
| | 10/30/2008 | 14878975 | $114,788.50 |
| | 10/31/2008 | 14890471 | $64,011.68 |
| | 11/3/2008 | 14898696 | $5,942.60 |
| | 11/4/2008 | 14912057 | $42,570.37 |
| | 11/4/2008 | 14912179 | $1,485.45 |
| | 11/6/2008 | 14938883 | $25,794.58 |
| | 11/7/2008 | 14953457 | $401.65 |
| | 11/12/2008 | 14984887 | $8,994.87 |
| | 11/13/2008 | 14998018 | $5,792.18 |
| | 11/14/2008 | 15012232 | $4,209.93 |
| | 11/14/2008 | 15012229 | $5,144.76 |
| | 11/18/2008 | 15038525 | $149,845.46 |
| | 11/18/2008 | 15034174 | $5,183.78 |
| | 11/18/2008 | 15034219 | $1,478.39 |
| | 11/19/2008 | 15047000 | $3,515.01 |
| | 11/19/2008 | 15043319 | $2,790.31 |
| | 11/20/2008 | 15055391 | $1,347.00 |
| | 11/20/2008 | 15057927 | $18,167.81 |
| | 11/20/2008 | 15058263 | $2,904.71 |
| | 11/20/2008 | 15057307 | $7,701.90 |
| | 11/21/2008 | 15074016 | $33,288.64 |
| | 11/21/2008 | 15077368 | $20,302.19 |
| | 11/25/2008 | 15101443 | $13,673.19 |
| | 11/25/2008 | 15097322 | $570.64 |
| | 11/25/2008 | 15099761 | $66,106.35 |
| | 11/25/2008 | 15101868 | $16,307.88 |
| | 11/25/2008 | 15094986 | $213,482.89 |
| | 11/26/2008 | 15113337 | $23,043.08 |

25

| | | |
|---|---|---|
| 12/1/2008 | 15121509 | $23,194.54 |
| 12/1/2008 | 15121383 | $1,492.64 |
| 12/2/2008 | 15134650 | $1,927.18 |
| 12/2/2008 | 15134712 | $2,340.01 |

98.     At the time of the Preference Transfers, Avnet was a creditor of the Debtors. AF81.

99.     None of the Preference Invoices paid by the Preference Transfers was subject to either the October PMSI or December PMSI. As such, each of the Preference Invoices were issued to the Debtors, and paid by the Debtors, on an unsecured basis.  AF82.

**Invoices Issued by Avnet to Debtors During Preference Period**

100.     The following invoices were issued by Avnet during the Preference Period. AF83.

| Invoice # | | Date | | Invoice Amount | | Invoice # | | Date | | Invoice Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 14912057 | | 11/04/2008 | | $42,570.37 | | 14912179 | | 11/04/2008 | | $1,485.45 |
| 14925399 | | 11/05/2008 | | $128,259.96 | | 14925649 | | 11/05/2008 | | $106,587.80 |
| 14938883 | | 11/06/2008 | | $25,794.58 | | 14942405 | | 11/06/2008 | | $50,732.82 |
| 14953457 | | 11/07/2008 | | $401.65 | | 14952642 | | 11/07/2008 | | $8,172.45 |
| 14947861 | | 11/07/2008 | | $2,288.88 | | 14952726 | | 11/07/2008 | | $8,004.27 |
| 14964777 | | 11/10/2008 | | $2,063.72 | | 14964750 | | 11/10/2008 | | $1,865.90 |
| 14964504 | | 11/10/2008 | | $6,414.05 | | 14965733 | | 11/10/2008 | | $154,938.99 |
| 14970999 | | 11/11/2008 | | $42,987.35 | | 14984887 | | 11/12/2008 | | $8,994.87 |
| 14998018 | | 11/13/2008 | | $5,792.18 | | 15012229 | | 11/14/2008 | | $5,144.76 |
| 15012232 | | 11/14/2008 | | $4,209.93 | | 15023471 | | 11/17/2008 | | $9,906.40 |
| 15034219 | | 11/18/2008 | | $1,478.39 | | 15034174 | | 11/18/2008 | | $5,183.78 |
| 15038525 | | 11/18/2008 | | $149,845.46 | | 15047000 | | 11/19/2008 | | $3,515.01 |
| 15043319 | | 11/19/2008 | | $2,790.31 | | 15057307 | | 11/20/2008 | | $7,701.90 |
| 15058263 | | 11/20/2008 | | $2,904.71 | | 15057927 | | 11/20/2008 | | $18,167.81 |
| 15055391 | | 11/20/2008 | | $1,347.00 | | 15077368 | | 11/21/2008 | | $20,302.19 |
| 15074016 | | 11/21/2008 | | $33,288.64 | | 15074922 | | 11/21/2008 | | $29,890.00 |
| 15094986 | | 11/25/2008 | | $213,482.89 | | 15101868 | | 11/25/2008 | | $16,307.88 |
| 15099761 | | 11/25/2008 | | $66,106.35 | | 15097322 | | 11/25/2008 | | $570.64 |
| 15101443 | | 11/25/2008 | | $13,673.19 | | 15113337 | | 11/26/2008 | | $23,043.08 |
| 15121383 | | 12/01/2008 | | $1,492.64 | | 15121509 | | 12/01/2008 | | $23,194.54 |
| 15134712 | | 12/02/2008 | | $2,340.01 | | 15134650 | | 12/02/2008 | | $1,927.18 |
| 15174411 | | 12/05/2008 | | $191,400.88 | | 15183127 | | 12/08/2008 | | $5,566.40 |

DEL 408362827v2

| Invoice # | | Date | | Invoice Amount | Invoice # | | Date | | Invoice Amount |
|---|---|---|---|---|---|---|---|---|---|
| 15180278 | | 12/08/2008 | | $2,124.24 | 15197717 | | 12/09/2008 | | $17,089.00 |
| 15206544 | | 12/10/2008 | | $14,003.28 | 15219156 | | 12/11/2008 | | $31,727.75 |
| 15218862 | | 12/11/2008 | | $23,245.38 | 15219291 | | 12/11/2008 | | $7,292.89 |
| 15229697 | | 12/12/2008 | | $1,184.40 | 15279742 | | 12/19/2008 | | $14,000.00 |
| 15280277 | | 12/19/2008 | | $9,545.56 | 15280287 | | 12/19/2008 | | $40,048.85 |
| 15275405 | | 12/19/2008 | | $1,868.16 | 15274766 | | 12/19/2008 | | $10,851.36 |
| 15279023 | | 12/19/2008 | | $3,140.14 | 15280337 | | 12/19/2008 | | $10,691.07 |
| 15297509 | | 12/22/2008 | | $5,760.48 | 15297428 | | 12/22/2008 | | $17,443.93 |
| 15297322 | | 12/22/2008 | | $22,987.29 | 15295766 | | 12/22/2008 | | $15,879.74 |
| 15295761 | | 12/22/2008 | | $19,996.80 | 15296526 | | 12/22/2008 | | $4,436.71 |
| 15297273 | | 12/22/2008 | | $6,352.48 | 15297511 | | 12/22/2008 | | $27,460.82 |
| 15297961 | | 12/22/2008 | | $35,569.49 | 15295646 | | 12/22/2008 | | $1,235.40 |
| 15311681 | | 12/23/2008 | | $37,269.01 | 15313653 | | 12/23/2008 | | $27,247.01 |
| 15314541 | | 12/23/2008 | | $16,547.60 | 15319131 | | 12/24/2008 | | $31,921.96 |
| 15323412 | | 12/24/2008 | | $7,248.62 | 15323419 | | 12/24/2008 | | $1,724.64 |
| 15321119 | | 12/24/2008 | | $1,533.17 | 15321288 | | 12/24/2008 | | $11,522.10 |
| 15323946 | | 12/24/2008 | | $76,731.42 | 15329347 | | 12/26/2008 | | $26,084.08 |
| 15327297 | | 12/26/2008 | | $95,724.70 | 15326871 | | 12/26/2008 | | $167,612.21 |
| 15327006 | | 12/26/2008 | | $22,847.25 | 15327094 | | 12/26/2008 | | $30,456.76 |
| 15326313 | | 12/26/2008 | | $43,218.50 | 15336944 | | 12/29/2008 | | $4,161.24 |
| 15335958 | | 12/29/2008 | | $58,126.48 | 15335970 | | 12/29/2008 | | $51,177.85 |
| 15335951 | | 12/29/2008 | | $8,683.35 | 15335956 | | 12/29/2008 | | $22,847.31 |
| 15342488 | | 12/30/2008 | | $72,733.16 | 15342442 | | 12/30/2008 | | $69,706.50 |
| 15342307 | | 12/30/2008 | | $159,556.56 | 15342246 | | 12/30/2008 | | $42,285.78 |
| 15350719 | | 12/31/2008 | | $57,127.76 | 15349077 | | 12/31/2008 | | $85,405.15 |
| 15351063 | | 12/31/2008 | | $14,000.00 | 15350439 | | 12/31/2008 | | $96,497.52 |
| 15349350 | | 12/31/2008 | | $53,641.63 | 15360777 | | 01/05/2009 | | $10,759.32 |
| 15375944 | | 01/06/2009 | | $28,829.54 | 15378392 | | 01/06/2009 | | $57,025.34 |
| 15372526 | | 01/06/2009 | | $123,079.34 | 15378400 | | 01/06/2009 | | $9,333.91 |
| 15375876 | | 01/06/2009 | | $1,092.48 | 15376023 | | 01/06/2009 | | $588.00 |
| 15376070 | | 01/06/2009 | | $4,775.02 | 15376225 | | 01/06/2009 | | $72,956.00 |
| 15397003 | | 01/08/2009 | | $54,944.18 | 15396687 | | 01/08/2009 | | $12,118.64 |
| 15400054 | | 01/08/2009 | | $1,757.98 | 15407432 | | 01/09/2009 | | $9,479.32 |
| 15384956 | | 01/09/2009 | | $55,076.43 | 15408201 | | 01/09/2009 | | $4,717.32 |
| 15422858 | | 01/12/2009 | | $17.26 | 15246655-1 | | 1/13/2009 | | $1,584.56 |
| 15427623 | | 01/13/2009 | | $35,013.03 | 15441004 | | 01/14/2009 | | $40,679.90 |
| 15466141 | | 01/16/2009 | | $72,575.10 | 15465946 | | 01/16/2009 | | $36,924.17 |
| 15472780 | | 01/19/2009 | | $26,487.58 | 15499685 | | 01/21/2009 | | $10,900.00 |
| 15497484 | | 01/21/2009 | | $8,400.00 | 15510767 | | 01/22/2009 | | $6,768.62 |

DEL 408362827v2

| Invoice # | | Date | | Invoice Amount | Invoice # | | Date | | Invoice Amount |
|---|---|---|---|---|---|---|---|---|---|
| 15511061 | | 01/22/2009 | | $11,880.00 | 15526566 | | 01/23/2009 | | $9,000.00 |
| 15525589 | | 01/23/2009 | | $4,059.50 | 15566629 | | 01/29/2009 | | $1,120.00 |

**Ordinary Course of Business (11 U.S.C. § 547(c)(2))**

101.   The business dealings between Avnet and the Debtors dates back at least since Avnet and Incentra Solutions entered into the Avnet Partner Agreement on September 22, 2005. AF84.

102.   Avnet provided a one-year (February 2008 through February 2009) invoice and payment history between the Debtors and Avnet (the "Avnet Ordinary Course Analysis ") via the Avnet 547 Defense Analysis. AF85, TE121.

103.   On October 30, 2008, the Debtors' unsecured credit limit with Avnet was set at $4 million. AF86; TE 125, pp. 21-23.

104.   On or around October 30, 2008, the Debtors were at or had exceeded their unsecured credit limit of $4 million. AF87, TE125 pp. 21-23.

105.   On or around October 30, 2008, Avnet was requiring payment from Debtors to bring the Debtors within the $4 million credit limit prior to issuing any additional invoices. AF88; TE125, pp. 21-23.

106.   Upon a review of the Debtors' financial performance, Avnet instituted the October and December PMSI's. AF89; TE125, pp. 24-25

107.   Contemporaneously with, or upon the institution of, the December PMSI, Avnet ceased doing business with the Debtors on an unsecured basis. AF90; TE125, pp. 27-28.

108.   By the Petition Date, the Debtors had mostly paid down their $4 million unsecured credit line with Avnet. On May 20, 2009, Avnet filed proof of claim 186 in these cases reflecting an unsecured balance in the amount of $298,699.86 owed to Avnet. Avnet also

28

filed proof of claim number 187 reflecting a secured claim in the amount of $1,322,473.60 under the December PMSI invoices.  AF91.

### NOTICE AND STANDING

109.    The evidence in the record shows that the Committee of Unsecured Creditors was informed of the Stipulation and Release by counsel for Laurus on April 13, 2010, before it was presented to this Court for approval.  TE100

110.    In addition, AVT properly served Debtors' creditors with the Renewed AVT 9019 Motion.  [D.I. 726].

111.    No creditor objected to the Renewed AVT 9019 Motion.

112.    Debtors are a party to the Stipulation and Release.

113.    The Trustee steps into the shoes of the Debtors.  I*n re Carolina Fluid Handling Intermediate Holding Corp*, 467 B.R. 743, 756 n. 67 (Bankr. D. Del. 2012); *Armstrong v. Norwest Bank, Minneapolis, N.A.*, 964 F.2d 797, 801 (8th Cir. 1992).

114.    The trustee has no standing to object to the Renewed AVTs 9019 Motion.  *In re Managed Storage*, 2015 WL 243183 at *3.

### APPROVAL OF THE STIPULATION AND RELEASE UNDER FED. R. BANKR. 9019

115.    For purposes of evaluating the Renewed AVT 9019 Motion, the decision whether to approve a settlement is within the sound discretion of the Court.  *In re Nortel Networks, Inc.*, 522 B.R. 491, 510 (Bankr. D. Del. 2014).  The court need not be convinced that the settlement is the best possible compromise; instead, the Court need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness.  *Id*.  Moreover, the Court need not conduct a mini-trial or a full evidentiary hearing.  *In re Capmark Financial Group Inc.*, 438 B.R. 471, 515 (Bankr. D. Del.

DEL 408362827v2

2010).   The Court must only find that the settlement falls within the reasonable range of litigation possibilities.  *In re Coram Healthcare Corp.*, 315 B.R. 321, (Bankr. D. Del. 2004).

116.    In making this determination, the Third Circuit has provided four criteria that a bankruptcy court must consider. Specifically, the bankruptcy court must examine: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *Martin,* 91 F.3d at 393.

117.    In addition to these criteria, courts have also scrutinized additional factors, such as: the competency and experience of counsel who support the settlement; the relative benefits to be received by individuals or groups within the class; the nature and breadth of releases to be obtained by the parties to the settlement; and the extent to which settlement is the product of arm's length bargaining. *In re Spielfogel,* 211 B.R. 133, 144 (Bankr. S.D.N.Y. 1997); *In re 47-49 Charles Street, Inc.,* 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Dow Corning Corp.,* 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

118.    In making this determination, the bankruptcy court should not substitute its decision for that of the debtor.  *See Martin,* 91 F.3d at 395 ("Indeed, under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification.").  Subject to undertaking the inquiries described above, the decision to approve or deny a particular compromise or settlement involving a bankruptcy estate lies within the sound discretion of the court. *See In re World Health Alt.,* 344 B.R. at 296; *see also In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798, 803 (E.D. Pa. 1986); *Nellis v. Shugrue,* 165 B.R. 115, 122–23 (S.D.N.Y.1994). In addition, the Court should exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.,* 217 B.R. 41, 46 (Bankr.

S.D.N.Y. 1998); *see also Martin,* 91 F.3d at 393; *Shugrue,* 165 B.R. at 123 (noting that "the general rule [is] that settlements are favored and, in fact, encouraged by the approval process....")

### *Probability of Success on the Merits*
### *(Motion to Compel)*

119.    Testimony from Debtors' CFO and Controller show that it is likely that Debtors were never informed of their obligations under the PMSI Stipulation.  TE127, pp. 32, 26; TE128, p. 55.

120.    Avnet was owed $1.3 million under the December PMSI.

121.    Debtors violated the PMSI Stipulation.

122.    Debtors, the Laurus Parties and their respective counsel all had potential liability to Avnet.

123.    The Debtors' and Laurus' lock box sweeping arrangements are immaterial to the Debtors' obligations under the PMSI Stipulation.  With full knowledge of their lending arrangements, the Debtors entered into the stipulation, which its counsel characterized as preserving "the status quo," promising this Court that it would segregate the December PMSI Collateral.  That was Debtors' obligation to comply with that provision.

124.    Sanctions are not just limited to monetary amounts at issue.  Rather, it is within the discretion of the Court to decide how to remedy violations of its orders.  *Robin Woods, Inc. v. Woods*, 28 F.3d 396, 401 (3d Cir. 1994)

125.    Although the Enforcement Motion sought relief against Laurus, the Debtors were front and center of the dispute regarding the missing December PMSI Collateral.  When it became apparent that the Debtors did not follow the terms of the PMSI Stipulation and that the December PMSI collateral had gone to the Laurus Parties, Avnet sought relief in what it thought was an efficient way.  Avnet could have simply moved for an order of contempt and for

31

sanctions forcing the Debtors to seek relief from the Laurus parties.  There was no dispute that the Debtors violated the PMSI stipulation.  Furthermore, without receiving a release from Avnet, the Debtors could have still faced a claim for the deficiency owed under the December PMSI as well as other sanctions Avnet could have sought against Debtors and their counsel.

126.    The Debtors participated during the negotiation of the settlement and Stipulation and Release.  Indeed, PSZJ billed time to reviewing and revising it and conferring with its client about it.  *See* TE22.  In addition, and subject to the FED. R. CIV. P. 11 and other rules of professional conduct, PSZJ signed the Stipulation and Release on behalf of the Debtors.

127.    Counsel for Laurus raised several issues in dispute with respect to Avnet's Motion to Compel.  TE 100.

128.    Counsel for Laurus had authority to settle Avnet's Motion to Compel for $1,000,000 and it settled for $975,000.

129.    Counsel for Laurus recommended the settlement to his client.

130.    AVT was likely to succeed on the merits on its Motion to Compel.

*(Preference Action)*

131.    The Trustee's Adversary Complaint alleges a $5.4 million preference.  In its Objection and its Disputed Issue of Facts, the Trustee alleges preference liability in various amounts: $3.9 million, 3.259 million, and $2 million.

132.    After a reasonable applicable of possible defenses, potential preference exposure for AVT is likely far less than $1 million.

133.    In order to establish an ordinary course of business defense, Avnet must demonstrate that the debt was incurred in the ordinary course of business or financial affairs of the parties; and either the transfer was made in the ordinary course of business or financial affairs

DEL 408362827v2

of the parties; or the transfer was made according to ordinary business terms.  See 11 U.S.C. § 547(c)(2)(A)-(B).

134.    With respect to whether the transfers were made in the ordinary course of business or financial affairs of the parties, courts generally compare the actual "payment after invoice" range during the pre-preference period (the "Historical Period") with the actual "payment after invoice" range during the preference period to determine if the payments were sufficiently similar.  *In re American Home Mortgage Holdings, Inc.*, 476 B.R. 124, 138 (Bankr. D. Del. 2012) (comparing actual range of days' outstanding on invoices paid during Historical Period to actual days' outstanding on invoices paid during preference period); *In re Archway Cookies*, 435 B.R. 234, 243 (Bankr. D. Del. 2010) (same).  For example, in *In re American Home Mortgage Holdings, Inc.*, this Court found that payments made during the Historical Period were received between 7 and 67 days after invoice and that payments made during the preference period were received between 34 and 62 days, squarely within the historic range and sufficient for the defendant to successfully assert an ordinary course of business defense.  Variations in credit terms between parties that routinely adjusted or modified over the course of a lengthy business relationship does not constitute extraordinary business practice.  *In re Montgomery Ward, LLC*, 348 B.R. 662, 679 (Bankr. D. Del. 2006). Similarly, efforts to obtain payment within the terms of the parties' credit agreement and/or maintain an existing credit limit do not negate an ordinary course of business defense.  *In re Sierra Concrete Design, Inc.*, 2015 WL 4381571, at *9-10 (Bankr. D. Del. July 16, 2015).

135.    Moreover, courts do not require rigid similarity to prior dealings between the parties.  *In re Cherrydale Farms, Inc.*, 2001 WL 1820323, at *3 (Bankr. D. Del. Feb. 20, 2001) (citing *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.*, 96 B.R. 474, 476–77 (D. N.J. 1998),

DEL 408362827v2

aff'd, 891 F.2d 66 (3d Cir. 1989)).  Rather, "some consistency" is required.  *See In re Schick*, 234 B.R. 337, 348 (Bankr. S.D.N.Y. 1999); *In re Lan-Yik Foods Corp.*, 185 B.R. 103, 111 (Bankr. E.D.N.Y. 1995) (inquiry into "ordinariness" suggests "some consistency" with other business transactions between the parties, rather than a rigid similarity to past transactions); *see also In re Conex Holdings, LLC*, 522 B.R. 480, 490 (Bankr. D. Del. 2014) (holding that a 7 day change in the average days to pay is not sufficient to take preferential transfers outside the ordinary course of business); *Archway*, 435 B.R. at 244 (holding that a 4.9 day difference in average days to pay is "not material."); *In re Radnor Holdings Corp.*, 2009 WL 2004226, at * 5 (Bankr. D. Del. July 9, 2009) (noting that "small deviations in payment timing may not be so significant as to defeat the ordinariness of such payments.").

136.    Finally, the transaction need not have been common; it need only be ordinary. *In re Stone & Webster, Inc.*, 547 B.R. 588, 600 (Bankr. D. Del. 2016); *In re Valley Steel Corp.*, 182 B.R. 728, 735 (Bankr. W.D. Va. 1995) (holding that an extensive showing that such transactions occurred often, or even regularly, is not necessary. The transaction need not have been common; it need only be ordinary).

137.    Here, a review of the parties' history reflects that payments in the pre-preference period were made to Avnet in a general range of a few days before their due date to 15-16 days after their due date, while payments in the preference period were made to Avnet generally within the same window, carving out certain payments beyond the 20+ days late range (which are themselves not wholly inconsistent with the parties' prior dealings, but arguably outside the ordinary course of business).

DEL 408362827v2

138.    Application of this ordinary course defense, with payments made more than 19 days late[2] considered outside the ordinary course of business, which Avnet submits is consistent with applicable Third Circuit and Delaware authority, reduces potential exposure from $5 million to roughly $652,000 (and includes 24 payments arguably outside the ordinary course of business, set forth in the Avnet Non-OCOB Table below).[3]

**Avnet Non-OCOB Table**

| Invoice Number | Invoice Date | Amount | Payment Days in Arrears |
|---|---|---|---|
| 14675303 | 10/8/2008 | $65,570.43 | 26 |
| 14678916 | 10/8/2008 | $2,585.87 | 25 |
| 14678068 | 10/8/2008 | $3,075.37 | 25 |
| 14675284 | 10/8/2008 | $35,167.77 | 25 |
| 14688963 | 10/9/2008 | $4,613.00 | 24 |
| 14691748 | 10/9/2008 | $125,246.50 | 24 |
| 14700800 | 10/10/2008 | $663.94 | 23 |
| 14699430 | 10/10/2008 | $1,399.24 | 23 |
| 14704767 | 10/10/2008 | $18,932.95 | 23 |
| 14715303 | 10/13/2008 | $6,364.02 | 20 |
| 14711554 | 10/13/2008 | $75,367.72 | 20 |
| 14727913 | 10/14/2008 | $23,846.28 | 20 |
| 14727904 | 10/14/2008 | $4,701.24 | 20 |
| 14830891 | 10/24/2008 | $4.89 | 109 |
| 14849081 | 10/28/2008 | $21,137.50 | 35 |
| 14878975 | 10/30/2008 | $114,788.50 | 33 |
| 14889456 | 10/31/2008 | $4.89 | 102 |

---

[2] As noted in the Trustee's Objection, 93.9% of invoices were historically paid by the 14th day in arrears.

[3] This is prior to application of any subsequent new value or any other potential defenses.

| 14890471 | 10/31/2008 | $64,011.68 | 32 |
| 14898696 | 11/3/2008 | $5,942.60 | 29 |
| 14912057 | 11/4/2008 | $42,570.37 | 28 |
| 14912179 | 11/4/2008 | $1,485.45 | 28 |
| 14938883 | 11/6/2008 | $25,794.58 | 26 |
| 14953457 | 11/7/2008 | $401.65 | 25 |
| 14984887 | 11/12/2008 | $8,994.87 | 20 |

139.    What is obvious from the colloquy at oral argument and all the preference analyses presented in this case is that, there is no reasonable certainty that the Trustee would have prevailed in its preference action for an amount as great at $2 million to $5.4 million. Moreover, any potential recovery would be after significant litigation and appeal cost, as well as the passage of time.

### *Difficulties in Collection*

140.    In 2010, the Debtors identified that the Laurus Parties took $1.3 million which belonged to AVT.  At that time, the entities still existed and were regularly before this Court. However, it was still not clear if the funds were recoverable, leaning this factor in AVT's favor.

141.    Now, the Laurus Parties no longer exists, so there is no way to put AVT back into the position it was before the settlement of its Motion to Compel.  It would be forever prejudiced in an irreparable way.

142.    If AVT disgorges the $975,000, it still has an undisputed super priority claim of $1.3 million.  Therefore, without a release, AVT would still be entitled to that amount, plus an additional unsecured claim of $325,000 (plus any 502(h) claim).

143.    This factor weighs in AVT's favor.

DEL 408362827v2

## Complexity, Inconvenience, Delay and Expense

144.    Both in 2010 and now, this factor weights in AVT's favor.

145.    In 2010, litigating the Avnet Motion to Compel would have caused the Debtors, and other parties, including Laurus, whose fees and expenses were required to be paid by Debtors, expense and uncertainty.  Without a release, the Debtors and their counsel would have been liable for any deficiency of the $1.3 million, in addition to Laurus' fees and costs, and any other sanction the court imposed under its discretion to address the intentional violation of the court's order.

146.    With potential preference liability ranging between $5.4 million to $652,000, with an ordinary course of business defense at issue, litigating the preference action would have been expensive and caused significant delay.  Experts would have been required.  Moreover, the disparity in liability ranges would likely have caused numerous appeals, delaying the resolution of this case for years.

147.    Furthermore, any preference liability Avnet could have incurred would have translated into a Section 502(h) claim, potentially turning Avnet into the largest unsecured creditor and diverting a large percentage of any recovery for unsecureds right back to it.

148.    A level of complexity which cannot be ignored is that, if the settlement is undone, at this time, there simply is no way to restore AVT to the *status quo* it was at on the eve of trial on its Motion to Compel.  Most of the Laurus parties no longer exist.  So there is no way to restore AVT's collateral for what was an undisputed super priority secured $1.3 million claim.

149.    This factor to weighs in favor of approving the Stipulation and Release.

*DEL 408362827v2*

*Interest of the Creditors*

150.    The settlement of the Avnet Motion to Compel achieved finality and certainty for the Debtors' estates for litigating both the Motion to Compel and any preference action.

151.    It saved the estate money undisputedly owed to Avnet, plus fees and expenses, for Debtors and Laurus, in litigating any contempt and the several levels of litigating the preference.

152.    Furthermore, it could have been an entire wasted effort for the creditors to endure the preference litigation as Avnet's 502(h) claim counsel may have turned a majority of any recovery back to Avnet, making that litigation an expensive and futile exercise.

153.    This factor also weighs in favor of approving the Stipulation and Release.

154.    The Stipulation and Release is well within the zone of reasonable.

155.    Pursuant to FED. R. BANKR. P. 9019 and the factors set forth in *Martin,* 91 F.3d at 393, the Stipulation and Release should be approved.

Dated: August 14, 2018

<div style="margin-left:40%">

GREENBERG TRAURIG, LLP

*/s/ Dennis A. Meloro*
Dennis A. Meloro (No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, Delaware  19801
Telephone:  (302) 661-7000
Facsimile:  (302) 661-7360
Email: melorod@gtlaw.com

-and-

Annapoorni R. Sankaran, *pro hac vice*
HOLLAND & KNIGHT LLP
1100 Louisiana Street, Suite 4200
Houston, TX 77002
Telephone:  (713) 244-8158
Facsimile:  (713) 713.821.7001
Email: anna.sankaran@hklaw.com

*Counsel for AVT Technologies LLC
formerly part of Avnet, Inc.*

</div>